**IN THE UNITED STATES
COURT OF INTERNATIONAL TRADE**

CAMEL GROUP CO., LTD.,

   *Plaintiff*,

v.

UNITED STATES OF AMERICA;
DEPARTMENT OF HOMELAND
SECURITY; UNITED STATES
CUSTOMS AND BORDER
PROTECTION; FORCED LABOR
ENFORCEMENT TASK FORCE;
ALEJANDRO MAYORKAS, *in his
official capacity as the Secretary of the
Department of Homeland Security*;
TROY A. MILLER, *in his official
capacity as the Senior Official Performing
the Duties of the Commissioner for
U.S. Customs and Border Protection*;
ROBERT SILVERS, *in his official capacity
as Under Secretary for Office of Strategy,
Policy, and Plans and Chair of the Forced
Labor Enforcement Task Force*;

   *Defendants*.

Case No.:  25-00022

---

Mark V. Heusel
Jacob L. Clark (*admission pending*)
Dickinson Wright PLLC
350 S. Main Street, Ste. 300
Ann Arbor, MI 48104
(734) 623-1908
mheusel@dickinsonwright.com
jlclark@dickinsonwright.com
*Attorneys for Plaintiff*

---

**EXHIBIT 6 - CAMEL GROUP REMOVAL PETITION**

---



350 S Main Street, Suite 300
Ann Arbor, MI 48104-2131
Telephone: 734-623-7075
Facsimile: 844-670-6009
http://www.dickinsonwright.com

Mark V Heusel



November 7, 2023

**VIA E-MAIL**

United States Forced Labor Enforcement Task Force
Attn: Robert Silvers, Under Secretary for Strategy, Policy, and Plans
Chair, Forced Labor Enforcement Task Force
Office of the Secretary, Office of Strategy, Policy, and Plans
MS 0525 Department of Homeland Security
2707 Martin Luther King Jr. Ave SE
Washington, DC 20528-0525

> **Re:** *Camel Group Co. Ltd. UFLPA Entity List Removal Request Petition*

Dear Secretary Silvers and Honorable Members of the Task Force:

The law firm of Dickinson Wright, PLLC represents Camel Group Co. Ltd. ("Camel Group") with respect to its Petition Requesting Removal ("Petition") from the Entity List in accordance with the Uyghur Forced Labor Prevention Act ("UFLPA"). The United States Forced Labor Enforcement Task Force ("FLETF" or "Task Force") added Camel Group to the UFLPA Entity List on August 2, 2023, pursuant to UFLPA Section 2(d)(2)(B)(ii). Federal Register, 88 FR 50902, No. 147, Aug. 2, 2023 ("8/2/23 FR"). Because neither the 8/2/23 FR nor FLETF[1] provide specific reasons describing why Camel Group was added to the Entity List, Camel Group was

---

[1] Prior to filing its Petition, Camel Group made multiple communications to better understand the removal process and basis for its inclusion on the UFLPA Entity List, including: On August 3, 2023, through present counsel, Camel Group sent an email to FLETF's public contact U.S. Department of Homeland Security ("DHS") Office of Strategy, Policy, and Plans Director of Trade Policy, Trade and Economic Security, Cynthia Echeverria, seeking guidance on the removal process. Aug. 3rd Email to Echeverria, Ex. 1. On August 8, 2023, Camel Group's present counsel contacted the U.S. Customs and Border Protection ("CBP") Center of Excellence and Expertise ("CEE") Officer ███████ to inquire about removal procedures. ████████ Correspondence, Ex. 2. On August 9, 2023, CBP CEE Officer ███ responded, advising that Camel Group contact Director Echeverria to inquire about the removal process and reasons for Camel Group's inclusion. *Id.* On August 18, 2023, Camel Group submitted a FOIA request to the DHS Office of Privacy seeking, *inter alia*, the information, reasoning, or supporting evidence explaining its inclusion on the UFLPA Entity List. *See* FOIA Request, Ex. 3. Camel Group's FOIA Request is still pending as of the date of this Petition. On August 30, 2023, Camel Group submitted a formal letter to the FLETF public contact seeking the information, reasoning, or supporting evidence explaining its inclusion on the UFLPA Entity List. *See* Aug. 30th Letter, Ex. 4. On September 7, 2023, Director Echeverria sent an email confirming that the Aug. 30th Letter would be shared with the FLETF, encouraging Camel Group to submit a removal petition pursuant to the process outlined in the Federal Register, and provided general information on the removal petition procedures. Sept. 7th Email from Echeverria, Ex. 5. At no point in these communications did the FLETF provide Camel Group with the specific reasons or other administrative record supporting its inclusion on the UFLPA Entity List. Camel Group reserves the right to supplement this Petition to address any other unknown or unraised allegations against it if and when the FLETF discloses the specific reasons and evidence for Camel Group's addition to the UFLPA Entity List.

---

DICKINSON WRIGHT PLLC

Sec. Robert Silvers
U.S. Forced Labor Enforcement Task Force
November 7, 2023
Page 2

compelled to investigate the alleged underlying reasons as to why it may have been added to the Entity List from publicly available resources. The Petition addresses only those allegations that Camel Group has learned of from these publicly available sources.[2]  In particular, Camel Group has reason to believe FLETF was influenced by a report from Sheffield Hallam University, which falsely accused Camel Group of participation in a labor transfer program in China that allegedly relied on the forced labor of ethnic minorities from the Xinjiang Uyghur Autonomous Region ("XUAR").   After initiating its due diligence process and then conducting a thorough internal investigation of those allegations, Camel Group now submits this Petition to the FLETF for consideration and relief. Consequently, Camel Group respectfully requests removal from the UFLPA Entity List for the reasons specifically described herein and pursuant to the procedures described in the Federal Register dated August 4, 2022.  Federal Register, 87 FR 47777, No. 149, at p. 47778 ("8/4/22 FR").

## I.    Introduction, Factual Background, and Timeline

### a.  Introduction of Camel Group

Camel Group was founded in 1980 and is headquartered in Xiangyang, Hubei, China. Camel Group specializes in green lead-acid battery and new energy lithium-ion battery technology, with a particular focus on low-voltage batteries and energy storage for automobiles.  Camel Group and its subsidiaries and affiliates have more than 7,200 employees world-wide,

Camel Group has established 51 subsidiaries worldwide since its founding. Currently, Camel Group offers a diverse range of over 400 products

Camel Group supplies these products to over 80 countries around the world. Camel Group's extensive product line of batteries is widely used across a variety of applications and industries,

Camel Group's production and sales volume continues to be a benchmark for the battery field.  Camel Group has been selected as one of the "Top 500 Private Enterprises in China" for 10 consecutive years.   Camel Group is presently one of the largest and most respected automotive battery manufacturers in Asia, and is listed on the Shanghai Stock Exchange (Stock No: SH601311).  Its presence, products, and contributions are integral to the global market, making Camel Group a key

---

[2] Presently, Ninestar Corporation, another Chinese company, who is also included on the UFLPA Entity List pursuant to UFLPA Section 2(d)(2)(B)(ii), is engaged in litigation with DHS seeking the information, reasoning, or supporting evidence explaining its listing.  See Ninestar Corp., et al. v. U.S. Dep't of Homeland Security, et. al., Case No. 1:23-cv-00182 (C.I.T.) (Aug. 22, 2023) ("Ninestar Litigation").  In response to Ninestar's August 22, 2023 Motion for a Preliminary Injunction (ECF No. 9), on October 3, 2023, DHS produced the Administrative Record that was recorded and explained the basis for Ninestar's inclusion on the Entity List.  See Ninestar Corp., et. al., ECF Nos. 24-1 and 25-1.  Therefore, Camel Group believes it is also entitled to the Administrative Record accumulated against it and any other evidence relied on by the Task Force, which was considered in adding Camel Group to the Entity List.

DICKINSON WRIGHT PLLC

Sec. Robert Silvers
U.S. Forced Labor Enforcement Task Force
November 7, 2023
Page 3

player in the future development of the automotive industry in the United States, Asia, and around the world.

> b.   *Camel Group's History in the United States*

Since 2012, Camel Group has been selling lead-acid and lithium-ion batteries in the United States market. In order to solidify its North American presence and continue its positive impact on the U.S. automotive industry and consumers, Camel Group established its U.S. subsidiary, Camel Energy Inc. ("Camel Energy"), in July 2016.  Camel Energy is based in Ann Arbor, Michigan and primarily engages in the R&D, production, distribution, and recycling of advanced lead-acid storage batteries for automobile starters. Camel Energy's customers include major automobile companies, ████████████████████████████  In February 2022, Camel Energy opened a manufacturing facility in Battle Creek, Michigan, through its wholly owned subsidiary, Camel Energy Manufacturing Michigan, LLC ("Camel Manufacturing"). Camel Energy has invested $4.6 million in its R&D center in Ann Arbor, and in August 2022, its subsidiary broke ground on a new $20+ million battery production facility in Battle Creek that will start production this year.  In July 2023, a pilot production of an enhanced flooded battery line was launched at Camel Manufacturing. This first phase production will include both an enhanced flooded battery production line as well as a lead acid battery production line. After both production lines are put into operation, Camel Manufacturing is expected to have a maximum output of one million batteries per year that are made in the United States. Through its investment, time and energy, Camel Group and Camel Energy have brought significant jobs and economic growth to the state of Michigan, and its battery and clean energy products have been indispensable to the continued strong performance of the American automotive industry. Camel Energy alone currently employs 16 employees at its facility in Ann Arbor, and anticipates employing 48 employees at its future production facility in Battle Creek. In 2022, Camel Energy conducted over $100 million in business in the U.S. market alone. The gross sales of Camel Energy in 2022 exceeded $75 million. Camel Group, through its subsidiaries Camel Energy and Camel Manufacturing, has become a significant contributor to the U.S. economy and automotive industry, and remains an important asset in supporting the U.S. automotive OEMs as they continue to provide affordable vehicles to American consumers.

> c.   *Camel Group in the Xinjiang Uyghur Autonomous Region*

Camel Group expanded its operations in XUAR in 2015.   In September 2015, Camel Group Xinjiang Renewable Resources Co., Ltd. ("Camel Renewable") was established in Toksun County, XUAR. Camel Group holds 82% of the shares in Camel Renewable. Camel Renewable Corporate Record, Ex. 6.[3]  Camel Renewable's business includes the recycling and sales of used batteries, lead slag, lead mud and lead-containing waste; recycling and sales of recycled crude lead, refined lead, alloy lead and lead oxide; the purchase and sale of scrap metal, waste plastics,

---

[3] This corporate record was extracted from "Qichacha" (企查查), which is a Chinese website that compiles and creates corporate records and public information about companies in China.

DICKINSON WRIGHT PLLC

Sec. Robert Silvers
U.S. Forced Labor Enforcement Task Force
November 7, 2023
Page 4

sulfuric acid (industrial) operation with storage facilities; and the import and export trade of goods (except for goods and technologies prohibited from export by Chinese law). Camel Renewable Business License, Ex. 7. Despite being founded in 2015, Camel Renewable did not begin operations until September 2019. This is because it spent the first four years applying for and obtaining the proper certifications to begin and then commence construction of the plant to comply with Chinese laws and regulations. In particular, pursuant to Chinese law, production could not begin for operations like Camel Renewable until a fire safety inspection certificate of approval was applied for and obtained. *See* PRC Fire Prevention Law, Art. 13, Ex. 8. Camel Renewable did not obtain this certification until August 25, 2019 and was, therefore, not able to begin production until September 2019. *See* Camel Renewable Fire Certificate, Ex. 9.

In February 2017, Camel Group Xinjiang Storage Battery Co., Ltd. ("Camel Xinjiang Battery") was established in Toksun County, XUAR. Camel Group holds 82% of the shares in Camel Xinjiang Battery. Camel Xinjiang Battery Corporate Record, Ex. 10. Camel Xinjiang Battery's business includes the production and sales of batteries and their components as well as automobile parts; the sales of plastic products; battery technology development and services; and trade and import and export of technology (projects that require approval according to Chinese law can only be carried out after approval by relevant Chinese government departments). Camel Xinjiang Battery Business License, Ex. 11. Camel Xinjiang Battery did not begin operations until the second quarter of 2018. This is because, like Camel Renewable, it spent its first year applying for and obtaining the proper certifications to begin and then commence construction of its plant to comply with Chinese laws and regulations. Also like Camel Renewable, it was necessary for Camel Xinjiang Battery to apply for and obtain a fire safety inspection certificate of approval before beginning production. *See* PRC Fire Prevention Law, Art. 13, Ex. 8. Camel Xinjiang Battery did not obtain this certification until February 2, 2018 and was, therefore, not able to begin production until later in the second quarter of 2018. *See* Camel Xinjiang Battery Fire Certificate, Ex. 12.

Neither of Camel Group's Xinjiang operations support trade with North America, either directly or indirectly. In addition, none of Camel Group's supply chains into North America have any connection to Xinjiang Province. Moreover, Camel Group was added to the Entity List for its alleged conduct related to recruiting, transporting, transferring, *et. al.* ethnic minorities "*out of Xinjiang.*" Therefore, Camel Group's manufacturing operations within Xinjiang are not likely the source of concern with respect to its inclusion on the Entity List.

   *d. Camel Group's History with the UFLPA*

In order to supply the United States and greater North American market with battery products, Camel Group utilized its U.S. subsidiary Camel Energy as the "importer of record" to assist with the importation of Camel Group products, including ██████████████ and ██████████████████████. Since February 16, 2023, U.S. Customs and Border Protection ("CBP") has issued 77 detentions on Camel Energy's ███████████████████ and 5 detentions on ████████████████████ under the UFLPA.

ARIZONA  CALIFORNIA  COLORADO  FLORIDA  ILLINOIS  KENTUCKY  MICHIGAN  NEVADA  OHIO  TENNESSEE  TEXAS  WASHINGTON DC  TORONTO

Sec. Robert Silvers
U.S. Forced Labor Enforcement Task Force
November 7, 2023
Page 5

██████████████

Commencing in March 2023, Camel Energy, through present counsel, began regularly communicating with individual Ports of Entry and CBP, as well as CBP's Centers of Excellence and Expertise. To date, Camel Energy has responded to all 82 of the notices it received for detentions based on the UFLPA, resulting in the release of all goods, constituting 183 shipping containers in total. Camel Energy has continued to cooperate with CBP in a transparent and fulsome matter by disclosing information regarding its entire supply chain with respect to the detained goods, the employees involved in manufacturing those goods, and activities in XUAR. For each of these detention notices, Camel Energy has cooperated with CBP at every step of the process and fully complied with all requirements of the UFLPA in demonstrating the detained goods were not subject to the UFLPA.

With respect to the detentions regarding ████████████ Camel Energy submitted responses to all 77 notices, with CBP granting release of all of those detained goods by the end of July 2023. In fact, with respect to ████████████ detentions in the ██████████ CBP confirmed in writing that its analysis of documentation submitted by Camel Energy, "*supports the importer assertion that materials used in the manufacturing for these entries listed above were not sourced from the Uyghur Autonomous Region of Xinjiang, China.*" July 14th CBP Decision Letter, Ex. 13. For the detentions regarding ██████████ Camel Energy submitted responses to all 5 detention notices, which resulted in CBP granting the release of all of those detained goods. The goods were released over a period of several weeks, and by mid-September 2023, all detained ██████████ had been released. CBP Centers of Excellence and Expertise and ██████████ released the last detained shipment on September 13, 2023, stating that "*Camel Energy has provided sufficient documentation to support their claim that shipment was not manufactured with forced labor.*" Sept. 13th CBP Decision Email, Ex. 14.

A sample package of the type submitted to CBP that includes supply chain mapping and other detailed information demonstrating that Camel Group's products are not manufactured in whole or in part with forced labor is attached as Exhibit 15. Additional evidence regarding Camel Group's and Camel Energy's interactions with CBP with respect to UFLPA-related detentions is attached as Exhibit 16 for your reference. To date, Camel Energy continues to import batteries into the United States as the "importer of record" on behalf of Camel Group. After establishing to the satisfaction of CBP by "clear and convincing" evidence that Camel Energy's imports are not subject to the UFLPA, no further detention notices have been issued against Camel Energy with respect to ██████████ since August 2023 and no such notice has been issued against Camel Energy with respect to ██████████ under the UFLPA since September 2023.

*e. Factual Background and Timeline*

Despite Camel Group's and Camel Energy's stellar record of successfully seeking (and obtaining) CBP UFLPA-detention releases, on August 2, 2023 Camel Group was added to the

Sec. Robert Silvers
U.S. Forced Labor Enforcement Task Force
November 7, 2023
Page 6

DICKINSON WRIGHT PLLC

UFLPA Entity List pursuant to UFLPA Sec. 2(d)(2)(B)(ii).  8/2/23 FR, at p. 50904.  UFLPA Sec. 2(d)(2)(B)(ii) provides for the creation of a list of entities "*working with the government of Xinjiang Uyghur Autonomous Region to recruit, transport, transfer, harbor or receive forced labor or Uyghurs, Kazakhs, Kyrgyz, or members of other persecuted groups out of Xinjiang.*"  The Uyghur Forced Labor Prevention Act, Pub. L. 117-78 (Dec. 23, 2021), at Sec. 2(d)(2)(B)(ii). Camel Group denies these allegations as untrue, unfounded and not supported by the evidentiary record.  Given the weight of the FLETF's determination and the impact the Listing has had and will continue to have in the United States, Camel Group immediately launched an internal investigation to ascertain the veracity of these allegations.

As noted above, in the absence of the FLETF providing any specific information, reasoning, evidence, administrative record or other supporting documents it relied on in making its determination, Camel Group has had to rely solely upon its own investigative findings in attempting to identify the possible reasons for its addition to the UFLPA Entity List under Sec. 2(d)(2)(B)(ii).  In its investigation, Camel Group identified *only one* allegation that had any relationship to the charge under UFLPA Sec. 2(d)(2)(B)(ii). Specifically, Sheffield Hallam University alleges Camel Group participated in and benefitted from a 2017 labor transfer program, which was operated by a local XUAR government and known as the "**Three-year Plan for the Autonomous Prefecture to Promote the Organized Transfer and Employment of Urban and Rural Surplus Labor Forces in Kashgar, Hotan Region (2017-2019)**" (《自治州推进喀什和田地区城乡富余劳动力有组织转移就业三年规划 (2017-2019 年)》) (herein after referred to as the "Labor Transfer Program").  Sheffield Hallam University has made this same allegation in multiple reports that were published over the span of one year.  Furthermore, Camel Group has reason to believe that the FLETF may have been influenced by these Sheffield Hallam University reports and could be the basis of the FLETF's decision to add Camel Group to the UFLPA Entity List.  Therefore, this Petition will specifically address the facts and timeline surrounding that Labor Transfer Program.

i. Sheffield Hallam University Reports

In February 2022, Sheffield Hallam University, Helena Kennedy Center for International Justice ("SHU"), in partnership with the Atlantic Council and NomoGaia, issued "**Financing & Genocide Development Finance and the Crisis in the Uyghur Region**" ("SHU Feb. 2022 Report"; attached as Exhibit 17).[4]  The SHU Feb. 2022 Report made multiple allegations against Camel Group with respect to its investment in Toksun County, XUAR. *See, e.g.* SHU Feb. 2022 Report, Ex. 17, at pp. 28-37.  Most relevant to this Petition, the SHU Feb. 2022 Report alleges that Camel Group participated in the Labor Transfer Program where laborers were "dispatched to companies, including Camel Group" and that "workers were bussed to their assigned employers,

---

[4] The SHU Feb. 2022 Report is available at https://www.shu.ac.uk/helena-kennedy-centre-international-justice/research-and-projects/all-projects/financing-and-genocide and https://www.shu.ac.uk/-/media/home/research/helena-kennedy-centre/projects/pdfs/funding-genocide-pdfs/murphy-salcito--elima--financing-and-genocide.pdf

Sec. Robert Silvers
U.S. Forced Labor Enforcement Task Force
November 7, 2023
Page 7

which included Camel Group."  SHU Feb. 2022 Report, Ex. 17, at. p. 30.  In support of these allegations, the SHU Feb. 2022 Report only cites two supporting documents:

> i) The "Notice of the Three-year Plan for the Autonomous Prefecture to Promote the Organized Transfer and Employment of Urban and Rural Surplus Labor Forces in Kashgar, Hotan Region (2017-2019)" ("Labor Transfer Program Regulations"; attached as Exhibit 18), which were the governing regulations for the Labor Transfer Program and issued by the People's Government of Bayingolin Mongol Autonomous Prefecture, XUAR;[5]  and

> ii) A single WeChat[6] article titled "Toksun County holds the handover ceremony for the urban and rural surplus labor enterprises in Kashgar and Hotan areas" ("WeChat Article"; attached as Exhibit 19)[7] published by the official WeChat account, "Toksun Employment Service," which is the official WeChat account for the Toksun County, XUAR Bureau of Social Security and Human Resources ("Toksun County SSHR").

> *See* SHU Feb. 2022 Report, Ex. 17, at. p. 30, fns. 140 and 141.

The SHU Feb. 2022 Report also includes multiple photos taken directly from the WeChat Article, but the authors added their own captions that erroneously state that those photos show Camel Group's participation.  *See* SHU Feb. 2022 Report, Ex 17, at pp. 30-31; *see also* WeChat Article, Ex. 19.  This is an incorrect statement and there is no actual evidence of Camel Group's participation in the photos or otherwise.

In December 2022, SHU, in partnership with NomoGaia, issued "**Driving Force: Automotive Supply Chains and the Forced Labor in the Uyghur Region**" ("SHU Dec. 2022 Report"; attached as Exhibit 20).[8]  In the SHU Dec. 2022 Report, SHU makes the same allegations against Camel Group with respect to the Labor Transfer Program, citing the same Labor Transfer Program Regulations and incorrect WeChat Article as support, and even including the same photos

---

[5] The original Labor Transfer Program Regulations are available at https://archive.vn/F3iHz#selection-97.0-97.9 and http://www.iic21.com/iic-zxbtz%20/index.php?m=Home&c=Articles&a=showart&artid=154564&areaid=212&artcid=60

[6] "WeChat" (微信) is a popular Chinese social media app.  It allows for communication with others through instant messaging, phone call, and video call.  It also provides a function to allow users to write and post articles, post pictures, and engage with other users content.  It is prominently used by all levels of Chinese society, including government offices, as a mechanism to disseminate information and connect directly with other users.

[7] The WeChat Article is available at https://archive.ph/nC4Xt and https://mp.weixin.qq.com/s?src=11&timestamp=1626799213&ver=3202&signature=UdXHio*A4s-X8WUB4*k5KWO4TT-d2*ZwQoR4TlkWSmWPLsrYT8sexrkYontyqNU*rmZoZmpE1Oukuy3Dsw*8RwS2-YJfLWl7dKK-kx5sVFDBrPoeruSl7PyNAcI3qvic&new=1

[8] The SHU Dec. 2022 Report is available at https://www.shu.ac.uk/helena-kennedy-centre-international-justice/research-and-projects/all-projects/driving-force and https://www.shu.ac.uk/-/media/home/research/helena-kennedy-centre/projects/driving-force/driving-force-auto-supply-chains-and-ufl-apr23.pdf

DICKINSON WRIGHT PLLC

Sec. Robert Silvers
U.S. Forced Labor Enforcement Task Force
November 7, 2023
Page 8

and incorrect captions as the SHU Feb. 2022 Report.  SHU Dec. 2022 Report, Ex. 20, at pp. 33-34, fns. 348 and 349.

In May 2023, SHU issued another report "**Products Made with Forced Labor in the Uyghur Region**" ("SHU May 2023 Report"; attached as Exhibit 21).[9] The SHU May 2023 Report made the exact same allegations against Camel Group as the SHU Feb. 2022 Report and SHU Dec. 2022 Report with respect to the Labor Transfer Program, stating that "Camel Group is directly involved in and benefits from state-sponsored labor transfer programs and is complicit in the cultural repression of ethnic and religious minorities."  SHU May 2023 Report, Ex. 21, at p. 7. Once again, SHU only supported these allegations by citing the same Labor Transfer Program Regulations and the erroneous WeChat Article.  SHU May 2023 Report, Ex. 21, at p. 7, in-text citations and links.  The SHU May 2023 Report does not include the same pictures and false captions as the SHU Feb. 2022 Report and SHU Dec. 2022 Report.  Importantly, SHU has never cited any other verifiable evidence of Camel Group's participation in the Labor Transfer Program.

The SHU Feb. 2022 Report, SHU Dec. 2022 Report, and SHU May 2023 Report (collectively, the "SHU Reports") do not cite any other articles, documents, information, or other material to support its allegations against Camel Group.  Furthermore, to the best of Camel Group's knowledge and belief, despite being indirectly contacted by SHU regarding other unrelated allegations, Camel Group was never contacted by SHU, or any other organization, government or individual to confirm the SHU Reports' allegations concerning the Labor Transfer Program. █████
Declaration, Ex. 22.  Despite this, Camel Group believes that the SHU Reports may have influenced FLETF's decision, and thus Camel Group focused its investigation and this Petition on these allegations.

     ii.  <u>Camel Group and the Labor Transfer Program in 2017</u>

Camel Group's internal investigation revealed that the allegations in the SHU Reports described above were inaccurate and falsely attribute Camel Group's association with the Labor Transfer Program described in the SHU Reports.  During Camel Group's investigation, it discovered that in early 2017, Camel Group manager ███████████████ did receive a phone call from an official that was purportedly from the Toksun County SSHR.  The official inquired whether Camel Renewable and Camel Xinjiang Battery had any need for labor. ████
Declaration, Ex. 22; *see also* Toksun County SSHR Letter, Ex. 23.  Camel Group had not yet obtained all its proper approvals for its Camel Renewable or Camel Xinjiang Battery facilities (particularly with respect to fire safety as described above) and, therefore, informed the Toksun County SSHR official that Camel Group was not able to begin hiring and had no need for labor at that time. ████ did not have further contact with the Toksun SSHR regarding the Labor Transfer Program after that call. ████ Declaration, Ex. 22; *see also* Toksun County SSHR Letter, Ex. 23.

---

[9] The SHU May 2023 Report is available at https://www.shu.ac.uk/helena-kennedy-centre-international-justice/research-and-projects/all-projects/evidence-briefs and https://www.shu.ac.uk/-/media/home/research/helena-kennedy-centre/projects/evidence-briefs/shu-brief-3-products-made-with-forced-labor-in-the-uyghur-region.pdf

Sec. Robert Silvers
U.S. Forced Labor Enforcement Task Force
November 7, 2023
Page 9

On June 15, 2017, the People's Government of Bayingolin Mongol Autonomous Prefecture, XUAR issued the Labor Transfer Program Regulations. Labor Transfer Program Regulations, Ex. 18; *see also* SHU May 2023 Report, Ex. 21, at p. 7, SHU Dec. 2022 Report, Ex. 20, at p. 33 and SHU Feb. 2022 Report, Ex. 17, at p. 30.

On July 10, 2017, the Toksun Bureau SSHR organized and held the "Handover Ceremony for the Urban Rural Surplus Labor Enterprises in Kasgar and Hotan Areas" as part of the Labor Transfer Program. Toksun County SSHR Letter, Ex. 23; *see also* WeChat Article, Ex. 19. On the same day, the Toksun County SSHR, through its official WeChat[10] account "Toksun Public Employment Service" published the WeChat Article that <u>mistakenly</u> identified Camel Group as a participant. Toksun County SSHR Letter, Ex. 23; WeChat Article, Ex. 19. It did so despite Camel Group having previously informed the Toksun County SSHR that it did not have labor needs, and without advanced notice to or consent from Camel Group or any evidence that Camel Group participated. *See* ███ Declaration, Ex. 22. In fact, the photos included in the WeChat Article do not show any Camel Group representatives or other evidence of its participation. *See* Wechat Article, Ex. 19; Sina Article, Ex. 24; ███ Declaration, Ex. 22. Upon seeing the erroneous WeChat Article, Camel Group immediately contacted the Toksun County SSHR on July 11, 2017 (the very next day), and informed it of the error in the report. Toksun County SSHR Letter, Ex. 23; ███ Declaration, Ex. 22. The Toksun County SSHR conducted a review to verify Camel Group's assertion that it did not participate in the ceremony. Toksun County SSHR Letter, Ex. 23. On July 12, 2017, Toksun County SSHR confirmed that Camel Group had not participated and immediately corrected the article by removing all mention of Camel Group's name. Toksun County SSHR Letter, Ex. 23. The corrected article was published that same day through Yaxin Network News, a subsidiary of national Chinese State media outlet Sina (新浪), entitled "Toksun County, Xinjiang holds a handover ceremony for surplus labor entities" ("Sina Article").[11] Sina Article, Exhibit 24.

For nearly 6 years from July 2017 until August 2023, Camel Group did not make or receive any other communication from the Toksun County SSHR regarding the Labor Transfer Program, WeChat Article, or Sina Article. ███ Declaration, Ex. 22.

iii. <u>Camel Group's Internal Investigation Findings</u>

Immediately after Camel Group was added to the UFLPA Entity List, Camel Group launched its internal investigation to ascertain the veracity of the FLETF's determination, identify what specific event might have caused Camel Group to be listed, and determine whether Camel

---

[10] "WeChat" (微信) is a popular Chinese social media app made by Tencent. It allows for directly communication with other users through instant messaging, phone call, and video call. It also provides a function to allow users to write and post articles, post pictures, and engage with other users content. It is prominently used by all levels of Chinese society, including government offices, as a mechanism to disseminate information and connect directly with other users.

[11] The Sina Article is available at https://news.sina.com.cn/o/2017-07-12/doc-ifyhwehx5724865.shtml

Sec. Robert Silvers
U.S. Forced Labor Enforcement Task Force
November 7, 2023
Page 10

Group meets the criteria for removal from the UFLPA Entity List. ███████ Declaration, Ex. 25.

Camel Group conducted a thorough review of financial records, communications, and employment records pertaining to its activities in XUAR. With the exception of communications involving ███████ in 2017, Camel Group did not find any evidence of its participation in the Labor Transfer Program. Camel Group verified the statements of ████ and the communication between ████ on behalf of Camel Group, and the Toksun County SSHR. ████ Declaration, Ex 22. Moreover, in mid-August 2023, Camel Group contacted the Toksun County SSHR to verify statements made by ████ and the veracity of the WeChat Article. ████ Declaration, Ex. 22.

In response, on August 29, 2023, the Toksun County SSHR issued a letter that confirmed, *inter alia*, i) Camel Group did not participate in the Labor Transfer Program handover ceremony; ii) the WeChat Article was incorrect; and iii) a corrected, updated article was published on July 12, 2017 (the Sina Article). Toksun County SSHR Letter, Ex. 23; ████ Declaration, Ex. 22.

## II.   Neither Camel Group nor its subsidiaries participated in the Labor Transfer Program in XUAR

According to the 8/4/22 FR the 8/2/23 FR:

> "Any listed entity may submit a request for removal (removal request) from the UFLPA Entity List along with supporting information to the FLETF Chair at FLETF.UFLPA.EntityList@hq.dhs.gov. In the removal request, the entity (or its designated representative) should provide information that demonstrates that the entity no longer meets or does not meet the criteria described in the applicable clause ((i), (ii), (iv), or (v)) of section 2(d)(B) of the UFLPA."

> 8/4/22 FR, at p. 47778; 8/2/23 FR, at p. 50904.

Accordingly, Camel Group submits its Petition in support of its request that it be removed from the Entity List as it does not meet or no longer meets the criteria under UFLPA Sec. 2(d)(2)(B)(ii). Specifically, Camel Group did not participate in the Labor Transfer Program and, therefore, should not be included on the Entity List for the reasons alleged by SHU. Alternatively, to the extent that the Task Force does not find Camel Group's evidence convincing, Camel Group should still be removed from the Entity List because the Labor Transfer Program no longer exists and Camel Group does not participate in the Labor Transfer Program today.

As noted above and emphasized here, in the absence of the FLETF providing Camel Group with the specific reasons, evidence, information, administrative record, and other information supporting its inclusion on the UFLPA Entity List, Camel Group, through its own internal

DICKINSON WRIGHT PLLC

Sec. Robert Silvers
U.S. Forced Labor Enforcement Task Force
November 7, 2023
Page 11

investigation and public research, has focused this Petition and grounds for removal on addressing the allegations related to the Labor Transfer Program falsely spread in the SHU Reports.

### a. Camel Group Never Participated in the Labor Transfer Program Identified in the SHU Reports

Camel Group never participated in the Labor Transfer Program identified in the SHU Reports. First, the single WeChat article relied upon in the SHU Reports to "substantiate" its allegations against Camel Group is an unofficial and inaccurate draft, and the SHU Reports ignore the official, updated article (the Sina Article) that does not name Camel Group.[12] Second, there are no written, financial, employment or other records of Camel Group's participation in this Labor Transfer Program. Third, Camel Group does not employ and has not employed anyone at Camel Renewable, Camel Xinjiang Battery, or Camel Group who was recruited through the Labor Transfer Program. Lastly, Camel Group has set up internal policies to ensure that its employees and suppliers are not subject to or using forced labor in any form.

### i. The Article Relied Upon in the SHU Reports is an Unofficial, Inaccurate Draft and There Exists an Updated, Official Accurate Report That Does Not Name Camel Group And Was Verified by the Toksun County SSHR

The only support provided in the SHU Reports that alleges links between Camel Group and the Labor Transfer Program is the single WeChat Article published on July 10, 2017 by the WeChat Account "Toksun Employment Service" (托克逊就业服务).[13] WeChat Article, Ex. 19. The WeChat Article incorrectly identifies Camel Group as a participant in the handover ceremony for the Labor Transfer Program. The WeChat Article relied upon by SHU, however, is inaccurate and outdated, and does not include any evidence of Camel Group's actual participation. Camel Group was not aware of and did not consent to its name being included in the WeChat Article.

When Camel Group employee ███████████████ ███████ █ received a call from a representative allegedly from the Toksun County SSHR asking if Camel Group had any labor needs, ███ responded that Camel Group and its entities in Xinjiang were not in need of any labor. ███ Declaration, Ex. 22; see also Toksun County SSHR Letter, Ex. 23. Despite the conversation

---

[12] The fact that SHU chose to rely on an older and incorrect version of the WeChat Article is not only misleading, it completely undermines the credibility of SHU's fact finding and reporting. Camel Group intends to demand a retraction from SHU for its misleading and inaccurate reporting.

[13] Camel Group understands that the WeChat account "Toksun Employment Service" (托克逊就业服务) is the official WeChat account for the Toksun County Bureau of Social Security and Human Resources, which is responsible for, inter alia, assisting local individuals in securing employment in the Toksun County area of the XUAR. Toksun County SSHR Letter, Exhibit 23. Upon review, this WeChat account appears to publish job opportunities and articles about employment and labor events in the Toksun County area.



DICKINSON WRIGHT PLLC

Sec. Robert Silvers
U.S. Forced Labor Enforcement Task Force
November 7, 2023
Page 12

and response, the Toksun County SSHR subsequently published an incorrect WeChat Article on July 10, 2017, and erroneously included Camel Group's name without any advanced notice or consent from Camel Group. ███ Declaration, Ex. 22; WeChat Article, Ex. 19.  After seeing the erroneous WeChat Article, ███ immediately contacted the Toksun County SSHR on July 11, 2017, to notify it of the error and requested a retraction. ███ Declaration, Ex. 22; Toksun County SSHR Letter, Ex. 23.  One day later, on July 12, 2017, the Toksun County SSHR was able to verify that Camel Group did not participate in the Labor Transfer Program, and Yaxin Network News and Sina published a corrected version of the article. ███ Declaration, Ex. 22; Toksun County SSHR Letter, Ex. 23; Sina Article, Ex. 24.  None of the SHU Reports mention the Sina Article and neither SHU nor any other entity or individual contacted Camel Group about the Sina Article. ███ Declaration, Ex. 22.

Moreover, pictures included in both the WeChat Article and Sina Article do not show Camel Group representatives or any other evidence of its presence or participation.  *See* WeChat Article, Ex. 19 and Sina Article, Ex. 24; *see also* ███ Declaration, Ex. 22.  In fact, the SHU Feb. 2022 Report and SHU Dec. 2022 Report included photos taken directly from the WeChat Article but the SHU Reports authors added misleading and false captions implying that those persons in the photos were employees hired by Camel Group through the Labor Transfer Program or representatives from Camel Group.  *See* SHU Feb. 2022 Report, at pp. 30-31, Figure 8 and Figure 9, Ex. 17 and SHU Dec. 2022 Report, at. p. 34, Figure 19 and Figure 20, Ex. 20.  The Figure 8 caption reads "*Migrant workers from southern Xinjiang swear an oath before being taken to work at Camel Group and other Turpan Companies.*"



FIGURE 8: Migrant workers from southern Xinjiang swear an oath before being taken to work at Camel Group and other Turpan companies.
Source: Weixin

The Figure 9 caption reads "*Migrant workers from southern Xinjiang in 'handover ceremony' to Camel Group and other Turpan companies.*"

DICKINSON WRIGHT PLLC

Sec. Robert Silvers
U.S. Forced Labor Enforcement Task Force
November 7, 2023
Page 13



FIGURE 9: Migrant workers from southern Xinjiang in "handover ceremony" to Camel Group and other Turpan companies.
Source: Weixin

These photos also appear in the SHU Dec. 2022 Report as "Figures 19 and 20" with the caption "Migrant workers from the southern XUAR swear an oath in a 'handing over' ceremony before being taken to work at Camel Group and other Turpan companies" for both photos. SHU Dec. 2022 Report, Ex. 20, at p. 34. The pictures, however, do not depict Camel Group or anyone associated with Camel Group participating in the ceremony. ████ Declaration, Ex. 22. And, the individuals in these pictures were not future employees of Camel Group or its subsidiaries. ████ Declaration, Ex. 22. Further, there is absolutely no evidence to substantiate the allegations that these individuals are in fact to be transferred to Camel Group for employment. There are no Camel Group representative employees in the pictures, and none of the red company signs that are visible include Camel Group's name. ████ Declaration, Ex. 22. The signs do include names of other companies, however. SHU simply made this false and conclusory statement without any evidence based on its assumptions from the outdated WeChat Article. SHU did not include these pictures and captions in its SHU May 2023 Report; however, it repeated the same (false) allegations against Camel Group without the pictorial reference.

Additionally, the Toksun County SSHR issued a letter to Camel Group on August 29, 2023 confirming:

- The inaccuracy of the WeChat Article;
- That Camel Group did not participate in this Labor Transfer Program ceremony;
- At the time of the Labor Transfer Program, Camel Group had not begun production at its facilities, had not begun hiring, and had no demand for labor; and
- That it corrected its report to remove Camel Group's name, which was reflected in the Sina Article published only two days after the WeChat Article.

Toksun County SSHR Letter, Ex. 23.

The Toksun County SSHR Letter was obtained through a formal administrative approval process under Chinese law initiated by Camel Group in China after Camel Group became aware

DICKINSON WRIGHT PLLC

Sec. Robert Silvers
U.S. Forced Labor Enforcement Task Force
November 7, 2023
Page 14

that erroneous article was connected to the SHU Reports. ████ Declaration, Ex. 25. The letter, which is a verified and sealed official statement from the Toksun County SSHR, together with the Sina Article, not only directly refute the *only* alleged evidence cited in the SHU Reports linking Camel Group to this Labor Transfer Program, but also clearly demonstrates that Camel Group's involvement in XUAR does not meet and never has met the criteria under UFLPA Sec. 2(d)(2)(B)(ii). The lone citation of the WeChat Article in the SHU Reports to "support" its contention that Camel Group participated in the Labor Transfer Program cannot be considered reliable in the face of Camel Group's evidence. It further demonstrates that the WeChat Article and the SHU Reports themselves cannot be considered credible evidence to support Camel Group's inclusion on the UFLPA Entity List. Accordingly, this new evidence makes clear that Camel Group did not participate in this Labor Transfer Program, does not meet the criteria under UFLPA Sec. 2(d)(2)(B)(ii), and should immediately be removed from the UFLPA Entity List.

        ii.   <u>There are No Records of Camel Group's Participation in This Labor Transfer Program</u>

Because Camel Group did not participate in the Labor Transfer Program, there is no written, oral, or other tangible record evidencing Camel Group's participation in the Labor Transfer Program. While this conclusion is commonsensical, as part of Camel Group's investigation, it undertook efforts to determine whether any records existed that would evidence any involvement in the Labor Transfer Program.

        1.   No records exist of communications regarding Camel Group's participation in this particular Labor Transfer Program or coordination with the local XUAR authorities

Other than the single phone call from Toksun County SSHR to ████ inquiring into the need for any laborers, there is no other evidence of any connection between Camel Group and the local XUAR authorities regarding the Labor Transfer Program. *See* ███ Declaration, Ex. 22. No other Camel Group, Camel Xinjiang Battery or Camel Renewable employee was contacted regarding the Labor Transfer Program. This is the only known communication or record discovered and it shows that Camel Group did not participate in the Labor Transfer Program. To the best of Camel Group's knowledge and belief, no other records exist between the XUAR authorities and Camel Group regarding this Labor Transfer Program.

        2.   There are no financial records of Camel Group's participation in this particular program or coordination with local XUAR authorities

In addition to searching for contacts and communications regarding whether Camel Group communicated with Toksun officials (or any governmental officials) regarding the Labor Transfer Program, Camel Group also investigated whether any financial records of Camel Group, Camel Renewable, or Camel Xinjiang Battery would establish that these entities received economic incentives from the local government for their participation in the Labor Transfer Program.

DICKINSON WRIGHT PLLC

Sec. Robert Silvers
U.S. Forced Labor Enforcement Task Force
November 7, 2023
Page 15

Section 4 of the Labor Transfer Program regulations states:

Section Four: Policy Guarantees

(1)  Implement unified treatment. Enterprises that accept Labor Transfer from the Two Places[15] shall provide wages and benefits in accordance with the company standards for equivalent positions in our state (including social insurance) and sign labor contracts in accordance with the law. Labor-intensive enterprises can equally enjoy various benefits of textile and garment enterprises.

(2)  Implement social security subsidies. Enterprises that accept Labor from the Two Places[16] shall refer to the employment support policy for people with employment difficulties and provide social insurance subsidies based on the pension, medical, unemployment insurance and social insurance subsidies actually paid by the enterprise for the transferred personnel. Those employed in public welfare positions shall enjoy job subsidies and social insurance subsidies in accordance with regulations. The required funds are coordinated and arranged from state fiscal funds or employment funds.

(3)  Implement training subsidies. If the Labor from the Two Places[17] still needs to participate in skills training after arriving at the counties, cities and employment enterprises, each county and city will be responsible for organizing the training and providing training subsidies and living subsidies. The training subsidy is RMB 50 per person per day, and the living subsidy is RMB 15 per person per day. The number of training days shall not exceed 6 days.

(4)  Provide financial rewards. Enterprises that recruit Labor from the Two Places[18] and sign a labor contract and employ them for more than one year will be rewarded at the standard of RMB 1,000 per person; those who sign a labor contract and employ them for more than three years will be rewarded at the standard of RMB 5,000 per person.

---

[15] **TRANSLATORS NOTE:**  The original Chinese text of the Labor Transfer Program Regulations uses a defined term "两地劳动力" which has been translated as "Labor from the Two Places."  This term is defined at the beginning of the Labor Transfer Program Regulations as referring to laborers and workers (sometimes referred to as "surplus labor") from Kashgar and Hotan regions (both within the XUAR) who are participating in the Labor Transfer Program.  *See, e.g.,* Labor Transfer Program Regulations, Ex. 18.

[16] *See* fn. 15 above.

[17] *See* fn. 15 above.

[18] *See* fn. 15 above.

Sec. Robert Silvers
U.S. Forced Labor Enforcement Task Force
November 7, 2023
Page 16

DICKINSON WRIGHT PLLC

Labor Transfer Program Regulations, Ex. 18.

The Labor Transfer Program Regulations provide that participants in the Labor Transfer Program would earn financial incentives paid by government authorities for even the most modest participation. It would therefore follow that if Camel Group had in fact participated and hired workers through this Labor Transfer Program, it would have likely received financial subsidies and there would exist financial records of Camel Group's participation. *See* ▮ Declaration, Ex. 26.

However, no such records exist because Camel Group did not participate in this Labor Transfer Program. Despite conducting a thorough search, Camel Group did not and has never received any financial payment from any government entity in the XUAR with respect to this Labor Transfer Program. ▮ Declaration, Ex. 26. This fact further demonstrates that Camel Group did not participate in this Labor Transfer Program, and further establishes that there are no credible records connecting Camel Group to this Labor Transfer Program.

iii. <u>Camel Group Has Never and Does Not Currently Employ Any Employee That Was Hired Through the Labor Transfer Program</u>

Camel Group, Camel Xinjiang Battery and Camel Renewable maintain employee records following the hiring and termination of an employee in accordance with all applicable relevant laws and regulations. ▮ Declaration, Ex. 27; ▮ Declaration, Ex. 28. Camel Group, Camel Xinjiang Battery and Camel Renewable do not generally hire through labor transfer programs, and have never participated in a program using forced labor. ▮ Declaration, Ex. 27; ▮ Declaration, Ex. 28. Nonetheless, all employee records would be subject to the same internal record keeping requirements as all other employees. ▮ Declaration, Ex. 27; ▮ Declaration, Ex. 28. This means that if Camel Group, Camel Renewable or Camel Xinjiang Battery hired any employee through the Labor Transfer Program, that employee's records would be searchable and identifiable in its internal human resources system. ▮ Declaration, Ex. 27; ▮ Declaration, Ex. 28.

After performing a thorough search of its employee records, Camel Group and its subsidiaries Camel Xinjiang Battery and Camel Renewable do not have any records of employees hired through or as part of the Labor Transfer Program. ▮ Declaration, Ex. 27; ▮ Declaration, Ex. 28. Camel Group reviewed its employee records and found no such records of any employee recruited, transferred, received, or otherwise hired through the Labor Transfer Program. Camel Group Employee List, Ex. 29; ▮ Declaration, Ex. 27. Additionally, Camel Xinjiang Battery and Camel Renewable reviewed their employee records and found no such records of any employee recruited, transferred, received, or otherwise hired through the Labor Transfer Program. Camel Xinjiang Employee Lists, Ex. 30; ▮ Declaration, Ex. 28. Following a thorough search of these employment records, Camel Group, Camel Xinjiang Battery and Camel Renewable were not able to identify any employee hired from this Labor Transfer Program or any

DICKINSON WRIGHT PLLC

Sec. Robert Silvers
U.S. Forced Labor Enforcement Task Force
November 7, 2023
Page 17

employee or person who worked with or received support from the Toksun County SSHR in connection with the Labor Transfer Program. ▮ Declaration, Ex. 27; ▮ Declaration, Ex. 28.[19]

Camel Group, Camel Xinjiang Battery and Camel Renewable state that their employees are hired through a practice they refer to as "Social Hiring." *See* Camel Group Employee List, Ex. 29; Camel Xinjiang Employee Lists, Ex. 30; ▮ Declaration, Ex. 27; ▮ Declaration, Ex. 28. This refers to recruiting employees directly through multiple public channels such as posting on job search sites, attending job fairs, recruiting from universities, and advertising on social media, newspapers, and the Internet. ▮ Declaration, Ex. 27; ▮ Declaration, Ex. 28. This practice does not include the recruitment of employees through government-sponsored labor transfer programs. ▮ Declaration, Ex. 27; ▮ Declaration, Ex. 28. Presently, all such employees at Camel Group, Camel Xinjiang Battery and Camel Renewable were hired through these "Social Hiring" practices. *See* Camel Group Employee List, Ex. 29; Camel Xinjiang Employee Lists, Ex. 30; ▮ Declaration, Ex. 27; ▮ Declaration, Ex. 28.

iv. <u>Camel Group Treats All Employees Equally, Regardless of Ethnicity, Religion, Place of Origin, or any other factor, and Prohibits the Use of Forced Labor</u>

Camel Group implements internal policies that strictly prohibit the use of forced labor in any capacity within the company. ▮ Declaration, Ex. 27. In fact, Camel Group and Camel Energy have submitted detailed documentation and evidence that even CBP has determined was sufficient to prove Camel Group did not use forced labor in part or in whole to produce its products that are imported into the U.S. *See* July 14th CBP Decision Letter, Ex. 13 and Sept. 13th CBP Decision Email, Ex. 14; *see also* Sample Camel Energy CBP Package, Ex. 15. Moreover, Camel Group provides each of its employee's salary and benefits based on compliance with applicable regional laws, local market conditions, and the bedrock principle of equality, fair treatment, and safe and compliant labor practices, and without any regard for ethnicity, sex, gender, religion, or other similar factor. ▮ Declaration, Ex. 27; *see also* Camel Group Employee List, Ex. 29.

██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████ Camel Group could not have transferred any Uyghurs, Kazakhs, Kyrgyzs or other persecuted minority populations out of Xinjiang because Camel Group does not employ any Uyghurs, Kazakhs, or Kyrgyzs, and the ethnic minorities it does employ were not relocated from Xinjiang. Camel Group has also provided additional information about its workforce as part of its Sample Camel Energy CBP Package, which was initially provided to CBP

---

[19] The Camel Group Employee List and Camel Xinjiang Employee Lists have removed certain personal identifying information in compliance with Chinese data privacy and data export laws and regulations, including but not limited to the <u>PRC Personal Information Protection Law</u>. ▮ Declaration, Ex. 25.

Sec. Robert Silvers
U.S. Forced Labor Enforcement Task Force
November 7, 2023
Page 18

DICKINSON WRIGHT PLLC

on June 14, 2023 per CBP's request in response to detentions involving Camel Group battery products. *See* Sample Camel Energy CBP Package, Ex. 15.

Additionally, Camel Group's policy prohibits its suppliers from using forced labor. Camel Group Supplier Regulations, Art. 4.5.1, Ex. 31. Any potential and/or current supplier would be subject to the same requirements if it would like to contract with Camel Group. The complete absence of and prohibition on forced labor within Camel Group and its supply chain as well as its equal treatment of employees, as demonstrated by existing policies and practices, current employee data, and previous CBP submissions, all point to the conclusion that Camel Group did not participate in the Labor Transfer Program.

> b. *Even if the Task Force Finds the Allegations in the SHU Reports Credible, the Labor Transfer Program Has Ended*

Despite the overwhelming evidence provided above that Camel Group did not participate in the Labor Transfer Program, should this Task Force not be persuaded, then Camel Group submits that it still meets the standard for removal under UFLPA Section 2(d)(2)(B)(ii) because the Toksun SSHR confirmed that the Labor Transfer Program ended in 2019. ███ Declaration, Ex. 22. Thus, even if the Task Force is not convinced that Camel Group did not participate in the Labor Transfer Program (which it did not), the Labor Transfer Program concluded more than 4 years ago, and Camel's Xinjiang entities were not in need of any labor at that time. *See* ███ Declaration, Ex. 22. Therefore, not only has the Labor Transfer Program terminated, but Camel Group could not be benefitting from its prior existence. Because Camel Group does not presently have any employee hired through this Labor Transfer Program and the Labor Transfer Program has ended, it is clear that Camel Group could no longer be associated with the Labor Transfer Program in any capacity. All current employees at Camel Group, Camel Renewable and Camel Xinjiang Battery were hired through their typical "Social Hiring" practices, meaning that no such employee was recruited through the Labor Transfer Program. *See* Camel Group Employee List, Ex. 29; Camel Xinjiang Employee Lists, Ex. 30; ███ Declaration, Ex. 27; ███ Declaration, Ex. 28.

## III.    Camel Group Commitments and Statements

In order to demonstrate its good faith compliance with applicable U.S. laws, willingness to engage with the Task Force, and commitment to retaining a workforce free of forced labor, Camel Group has taken the following additional steps and commitments since its first contact with the CBP under the UFLPA:

1. Camel Group continues to fully cooperate and engage with the Task Force and its member agencies at all steps in this process, and will undertake its best efforts to be clear and transparent in communications with the Task Force. Camel Group intends to respond to any follow up questions or allegations the Task Force may have, investigate

Sec. Robert Silvers
U.S. Forced Labor Enforcement Task Force
November 7, 2023
Page 19

DICKINSON WRIGHT PLLC

those in a deliberate and reasonable manner and maintain compliance with the laws and regulations of all applicable countries and regions in which it operates;

2. Camel Group states that it did not participate in the Labor Transfer Program and commits to not participating in any similar program in the future. To the extent the Task Force is not persuaded by the overwhelming evidence presented in this Petition regarding the allegations raised in the SHU Reports, Camel Group states that it does not currently participate in or benefit from the Labor Transfer Program or any other forced labor program.

3. Camel Group states that it has been successful in obtaining the release of all its shipments detained by CBP pursuant to the UFLPA, in each case proving by *clear and convincing evidence* that its products were not manufactured in whole or in part using forced labor. Camel Group requests that the Task Force take Camel Group's successful record into account while reviewing this Petition.

4. Camel Group has a record of good performance and a low error rate in the delivery and safekeeping of cargo, as well as always promptly complying with CBP and CEE instructions in compliance with U.S. laws and regulations in the importation of its products.

5. Camel continues to grow a dedicated in-house supply chain team and trade specialists to handle logistics and customs issues to better prevent any risk of forced labor in its supply chain and ensure compliance with all U.S. import/export laws and regulations. To this end, it is working directly with its OEM customers in the US and Europe to insure that its products are not manufactured in whole or part with forced labor.

6. In order to further prevent forced labor anywhere in its supply chain or its participation in labor transfer programs that may involve forced labor, Camel Group has taken the following steps:

   (i)   Expanded its network of existing delivery agents, carriers, brokers, and logistics companies, and created a list of qualified back up entities for each transaction;

   (ii)  Began financial planning to allow Camel Group the ability to make direct payments of demurrage and rail storage fees without assistance of any third party to ensure no delays on payment;

   (iii) Began preparation to enroll in the CTPAT program, including by identifying eligibility requirements and working with experts to obtain proper certifications;

Sec. Robert Silvers
U.S. Forced Labor Enforcement Task Force
November 7, 2023
Page 20

(iv)  Committed to further internal risk prevention training and policy development to identify forced labor risks and prevent participation in any problematic labor program;

(v)  Began preparation of policies and training with respect to operations in XUAR in order to prevent risks of forced labor or participation in any problematic labor program; and

(vi)  Revised supplier agreements to include clear prohibitions on use or support of forced labor.

**IV.    Meeting Request**

According to the 8/2/22 FR and 8/4/23 FR:

"Listed entities may request a meeting with the FLETF after submitting a removal request in writing to the FLETF Chair at FLETF.UFLPA.EntityList@hq.dhs.gov. Following its review of a removal request, the FLETF may accept the meeting request at the conclusion of the review period and, if accepted, will hold the meeting prior to voting on the entity's removal request."

*Id*., at p. 50904.

Pursuant to this authority, Camel Group submitted this Petition and now formally requests a meeting with the FLETF.

**V.    Conclusion**

Camel Group states that this Petition includes sufficient information and documentation demonstrating that Camel Group does not, or, in the alternative, no longer meets the criteria under UFLPA Sec. 2(d)(2)(B)(ii).  Therefore, Camel Group respectfully requests that the FLETF remove Camel Group from the UFLPA Entity List immediately.  We look forward to engaging with you and Task Force Members to answer any questions and resolve any outstanding issues related to Camel Group.

Sec. Robert Silvers
U.S. Forced Labor Enforcement Task Force
November 7, 2023
Page 21

DICKINSON WRIGHT PLLC

Sincerely,

Mark V. Heusel