# IN THE UNITED STATES
# COURT OF INTERNATIONAL TRADE

CAMEL GROUP CO., LTD.,

        *Plaintiff*,

v.

UNITED STATES OF AMERICA;
DEPARTMENT OF HOMELAND
SECURITY; UNITED STATES
CUSTOMS AND BORDER
PROTECTION; FORCED LABOR
ENFORCEMENT TASK FORCE;
ALEJANDRO MAYORKAS, *in his
official capacity as the Secretary of the
Department of Homeland Security*;
TROY A. MILLER, *in his official
capacity as the Senior Official Performing
the Duties of the Commissioner for
U.S. Customs and Border Protection*;
ROBERT SILVERS, *in his official capacity
as Under Secretary for Office of Strategy,
Policy, and Plans and Chair of the Forced
Labor Enforcement Task Force*;

        *Defendants*.

Case No.:  25-00022

---

Mark V. Heusel
Jacob L. Clark (*admission pending*)
Dickinson Wright PLLC
350 S. Main Street, Ste. 300
Ann Arbor, MI 48104
(734) 623-1908
mheusel@dickinsonwright.com
jlclark@dickinsonwright.com
*Attorneys for Plaintiff*

---

## EXHIBIT 14 - DECEMBER 21ST LETTER

---



350 S. Main Street, Suite 300
Ann Arbor, MI 48104-2131
Telephone: 734-623-7075
Facsimile: 844-670-6009
http://www.dickinsonwright.com

Mark V. Heusel
MHeusel@dickinsonwright.com
734-623-1908

December 21, 2023

**VIA E-MAIL**

United States Forced Labor Enforcement Task Force
Attn: Robert Silvers, Under Secretary for Strategy, Policy, and Plans
Chair, Forced Labor Enforcement Task Force
Office of the Secretary, Office of Strategy, Policy, and Plans
MS 0525 Department of Homeland Security
2707 Martin Luther King Jr. Ave SE
Washington, DC 20528-0525

> **Re:    *Camel Group Co. Ltd. Removal Request Petition Reply***

Dear Secretary Silvers and Honorable Members of the Task Force:

I acknowledge receipt of the questions presented by the United States Forced Labor Enforcement Task Force ("Task Force") on December 14, 2023, in response to Camel Group Co. Ltd.'s ("Camel") Removal Request Petition ("Petition"), which was submitted on November 7, 2023. We appreciate the Task Force's questions with respect to those areas that are directly related to Camel's Petition and which may be relevant to the issue whether sufficient evidence exists to place Camel on the Entity List for ***"working with the government of Xinjiang to recruit, transport, transfer, harbor or receive forced labor or Uyghurs, Kazakhs, Kyrgyz, or members of other persecuted groups <u>out of Xinjiang</u>.***" (UFLPA Sec. 2(d)(2)(B)(ii)).    In the twenty-five (25) questions presented by the Task Force, our initial assessment is that 13 of the initial 15 questions are relevant follow-up questions to Camel's Petition and what we believe the scope of inquiry should be (*i.e.,* whether Camel recruited and transferred ethnic minorities <u>out of Xinjiang</u>). The remaining questions, however, appear to be overly broad and even introduce new areas of inquiry that could not have been the basis for adding Camel to the UFLPA Entity List. For example, questions pertaining to Camel's facilities in Xinjiang, such as how those facilities were constructed and how many security cameras exist on site today seem to have nothing to do with whether the presumed allegations that Camel recruited and transferred ethnic minorities out of Xinjiang six (6) years ago is, in fact, true.

As we continue to evaluate your questions in preparation for a formal response, we would like to take this opportunity to reiterate our previous requests to better understand the reasons that Camel was added to the UFLPA Entity List under UFLPA Sec. 2(d)(2)(B)(ii), the process in which any evidence was considered, and the standard in which that evidence and Camel's Petition will be reviewed. As you know, Camel has been provided no information as to why the Task Forced

United States Forced Labor Enforcement Task Force
December 21, 2023
Page 2

DICKINSON WRIGHT PLLC

placed Camel on the Entity List (other than identifying the sub-list to which Camel was under), what evidence was considered and what evidence proved decisive. In order for Camel to properly respond to those allegations and be afforded a fair and transparent process, we believe the Task Force should disclose the following information:

## I.    Camel's Administrative Record

We would like to again request the Task Force's Administrative Record regarding Camel that we understand likely exists and includes, *inter alia*, the Task Force's evidence and reasons supporting Camel's inclusion on the UFLPA Entity List pursuant to UFLPA Sec. 2(d)(2)(B)(ii).

On August 18, 2023, Mr. Zubo Zhang, on behalf of Camel Group and through counsel, submitted FOIA Request No. 2023-HQFO-02158 ("FOIA Request") that included requests to identify and produce, among other documents, Camel's Administrative Record as well as a description of the Task Force's process and procedures. Per the Freedom of Information Act ("FOIA"), an agency has 20 days (excluding weekends and Federal holidays) from the day it receives a FOIA request to determine if it will comply with the request. *See* 5 U.S.C. § 552(a)(6)(A). DHS's statutory deadline to respond was September 18, 2023. Mr. Zhang did not receive a response to the FOIA Request until November 24, 2023, more than one month after the 20-day statutory deadline. Moreover, in that response, DHS still did not provide a determination in response to the FOIA Request. Instead, ████████████ Senior Director, FOIA Operations and Management, Department of Homeland Security, issued a response letter notifying counsel that DHS has invoked a 10-day extension to respond to the request and stated that the appropriate components of DHS have been queried for responsive records. Assuming the 10-day extension began from the Nov. 24th date that Camel received DHS's letter, DHS's extended deadline to respond to Camel's FOIA Request was December 8, 2023. Unfortunately, despite its own extension, DHS did not respond by that date and has still failed to comply with its obligations under FOIA. On December 20, 2023, the DHS Privacy Office informed counsel that the FOIA Request is currently with DHS Office of Strategy, Policy, and Plans, and estimated an additional 3-4 months until Mr. Zhang can expect a determination. As you are undoubtedly aware, this lack of responsiveness is in violation of law, and Camel reserves all rights in law and equity to pursue DHS for its non-compliance with FOIA. Notwithstanding DHS's failure to adhere to the statutory deadlines and Mr. Zhang's rights to bring an action based on this failure, we would prefer DHS simply abide by its statutory obligations and produce the records that are readily at its disposal.

In addition to Mr. Zhang's FOIA request, on August 30, 2023, counsel sent the Task Force another letter requesting Camel's Administrative Record, citing legal precedent in Xiaomi Corp., et. al. v. U.S. Dept. of Defense, et. al., Case No. 1:21-cv-00280 (D.D.C.) and Luokang Tech. Corp., et. al., v. U.S. Department of Defense, et. al., Case No. 1:21-cv-00583 (D.D.C.). On September 7, 2023, the Task Force sent us an email confirming receipt of our August 30th letter and encouraging Camel to submit a removal petition, but did not provide a formal response to the August 30th letter itself. Camel proceeded to submit its Petition on November 7, 2023. To date, the Task Force has

United States Forced Labor Enforcement Task Force
December 21, 2023
Page 3

failed to provide Camel with its Administrative Record or indeed any formal response to the requests contained in our August 30th Letter.

Despite Camel making the above described multiple requests for the Administrative Record, the basis for Camel's addition to the UFLPA Entity List, and a more definitive understanding of the review process, the Task Force has still yet to provide any meaningful response. Even more troubling, the Task Force has provided at least one other entity on the UFLPA Entity List with their Administrative Record while at the same time failing to provide Camel with the same. In Ninestar Corp., et. al. v. U.S. Dep't of Homeland Security, et. al., Case No. 1:23-cv-00182 (C.I.T.), on October 3, 2023, the Task Force (through counsel) voluntarily and publicly produced a redacted version of Ninestar's Administrative Record, while also filing a confidential version with the court. See Ninestar Corp., et. al., ECF Nos. 24-1 and 25-1. Not only does this show disparate treatment by the Task Force of different entities seeking removal, but also sets a dangerous precedent that the only way for an entity to obtain its Administrative Record is through litigation rather than through the administrative process. See Invenergy Renewables LLC v. United States, 476 F. Supp. 3d 1323, 1347 (C.I.T. 2020) ("Requiring that the parties litigate a final agency decision in order to gain knowledge of and access to the agency's rationale wastes judicial resources and delays corrective agency action that would otherwise be addressed by the agency in the first instance.").

Thus, we once again request this Task Force to provide Camel with its Administrative Record and reasons supporting its inclusion on the UFLPA Entity List. Upon receiving the Administrative Record, we will consider the questions as appropriate; however, we do not intend to engage in a process that lacks basic due process and transparency. At the very least, that would require the Task Force to provide the Administrative Record to inform Camel of the charges and evidence that supported the decision to add Camel to the UFLPA Entity List. This is especially so since the Task Force's questions to Camel do not appear to reveal any other information relevant as to why Camel was added to the UFLPA Entity List in the first place. Without knowing the Task Force's charges, evidence, process and procedures, any entity, let alone Camel, will have a difficult time meaningfully engaging in this process without suffering a violation of fairness.

## II.     Dr. Laura Murphy's Role with the Task Force

On or around November 10, 2023, Dr. Laura Murphy was appointed as "Policy Advisor" to the Under Secretary for Strategy, Policy, and Plans, Office of the Secretary, Office of Strategy, Policy, and Plans, Department of Homeland Security and Chair of the Task Force. Dr. Murphy is best known as the Director of the Sheffield Hallam University Helena Kennedy Centre for International Justice and the author of the reports that appear to form the basis of Camel's addition to the UFLPA Entity List. Moreover, Dr. Murphy, in her written testimony to the U.S. Congressional-Executive Commission on China on April 18, 2023 stated: "*Congress should make clear to FLETF that it must presume that all state-sponsored labor transfers in the Uyghur Region constitute forced labor and thus add any company engaged in those coerced transfers of laborers onto the lists.*" While we do not question Dr. Murphy's expertise on forced labor issues in

United States Forced Labor Enforcement Task Force
December 21, 2023
Page 4

D I C K I N S O N   W R I G H T   P L L C

Xinjiang, we do believe her past work and recent statements are a cause for concern given her new "Policy Advisor" role with DHS.  Therefore, we request the Task Force provide an explanation of Dr. Murphy's role as a "Policy Advisor," and particularly her involvement on any decision making regarding Camel.

### III.    UFLPA Entity List Additions and Removals Standard of Proof

Lastly, as we move forward in this removal process, to better ensure a fair and equitable process for Camel, we wish to confirm with you the standard of proof with which the Task Force and Camel will be held to.  Noticeably, the UFLPA enumerates a clear standard of proof, "*clear and convincing evidence*," with respect to obtaining release of UFLPA-based detentions from CBP.  *See* UFLPA Sec. 3(b)(2).  However, with respect to decisions on additions and removals to the UFLPA Entity List, the UFLPA is conspicuously silent on the standard of proof.  It is our understanding, per the common law, that absent specific statutory enumeration of a standard of proof, the default standard to which the administrative entity and process will be held will be a "preponderance of evidence" standard.  *See* Trinka v. McDonough, No. CV 21-2904 (RC), 2023 WL 6160053, at *13-15 (D.D.C. Sept. 21, 2023); *see also* Rodriguez v. Dep't of Veterans Affairs, 8 F.4th 1290, 1301 (Fed Cir. 2021); *accord* Hassoun v. Searls, 968 F.3d 190, 202 (2d Cir. 2020) ("The 'preponderance of evidence' standard is the traditional standard in civil and administrative proceedings." (quoting Sea Island Broad. Corp. of S.C. v. FCC, 627 F.2d 240, 243 (D.C. Cir. 1980)); Jones ex rel. Jones v. Chater, 101 F.3d 509, 512 (7th Cir. 1996); Bender v. Clark, 744 F.2d 1424, 1429 (10th Cir. 1984).

Please confirm that the standard of proof applied to UFLPA Entity List addition and removal proceedings is a "preponderance of evidence," or whether the Task Force intends to implement a different standard of proof for these administrative proceedings.  As we stated above, while we have been and will continue to be sincere and transparent in our engagement with the Task Force, Camel is unable to do so unless it is afforded basic due process and transparency regarding the standards to which itself and the Task Force will be held.

Thank you for your time and attention to Camel's Removal Request Petition and our requests, comments, and concerns expressed in this letter.  We look forward to your timely response.

Sincerely,

Mark V. Heusel