# IN THE UNITED STATES
# COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CAMEL GROUP CO., LTD., | |
| *Plaintiff*, | Case No.: 25-00022 |
| v. | Hon. Lisa W. Wang |
| UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; FORCED LABOR ENFORCEMENT TASK FORCE; ALEJANDRO MAYORKAS, *in his official capacity as the Secretary of the Department of Homeland Security*; TROY A. MILLER, *in his official capacity as the Senior Official Performing the Duties of the Commissioner for U.S. Customs and Border Protection*; ROBERT SILVERS, *in his official capacity as Under Secretary for Office of Strategy, Policy, and Plans and Chair of the Forced Labor Enforcement Task Force*, | |
| *Defendants*. | |

### PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR THE ENTRY OF PROTECTIVE ORDER

Pursuant to USCIT Rule 7, Plaintiff Camel Group Co., Ltd. ("Camel Group" or "Plaintiff") submits the following response in opposition to Defendants' United States of America, U.S. Department of Homeland Security ("DHS"), U.S. Customs and Border Protection ("CBP"), Forced Labor Enforcement Task Force ("FLETF"), Alejandro Mayorkas, in his official capacity as the Secretary of the DHS, Troy A. Miller, in his official capacity as the Senior Official Performing the

1

Duties of the Commissioner for CBP, and Robert Silvers, in his official capacity as DHS Under Secretary for Office of Strategy, Policy, and Plans and Chair of FLETF (collectively, "Defendants") Motion for Entry of Protective Order (ECF No. 12).

I. **Introduction**

During the entirety of FLETF's administrative process in the matter involving Camel Group, including in its final decision denying Plaintiff's Petition for Removal, FLETF has only ever represented one consistent and unwavering point: The evidence of Plaintiff's alleged connection to forced labor programs in Toskun County, XUAR, China is based on "**publicly available information**." One of Plaintiff's most outspoken criticisms of FLETF's administrative process in deciding whether to list or continuing listing Camel Group on the UFLPA Entity List is that all of FLETF's decisions were made behind closed doors and without meaningful discourse with Camel Group. In fact, even after Camel Group was named to the UFLPA Entity List, Camel Group was never given any information as to the reasons it was put on that List. Despite numerous attempts requesting this information, Camel Group operated blind through the entire administrative process with respect to the reasons it was put on the List or the evidence that was considered by FLETF in making this decision. FLETF continuously refused to share any information with Camel Group as to the reasons for the Listing and only told Camel Group that the evidence against it was "publicly available information." Now, despite these prior representations, Defendants once again strive to keep information, *critical information*, from Camel Group by designating such key documents as "Confidential Information."

That is why Plaintiff was puzzled when Defendants requested consent to stipulate to a protective order that included a designation (defined as "Confidential Information")[1] that would prohibit Plaintiff's attorneys from showing this evidence to Camel Group. FLETF informed Plaintiff that its decision on Camel Group's addition to the UFLPA Entity List and denial of its removal request petition was based on "**publicly available information**." *See* ECF Nos. 5-23 and 5-24 (emphasis added). FLETF's prior statements are in direct conflict with Defendants' request for a protective order, which if granted, prohibits Plaintiff's attorneys from sharing this evidence with Camel Group; evidence previously represented as "public information." For these reasons and those described below, Plaintiff opposes Defendants' Motion for Entry of Protective Order.

## II.  Legal Standard

USCIT Rule 26(c) states that the court "may, *for good cause*, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." (emphasis added). "There is a strong presumption in favor of public access to judicial proceedings." United States v. Michel, No. CR 19-148-1 (CKK), 2019 WL 5790115, at *1 (D.D.C. Nov. 6, 2019) (internal citations omitted). "Merely claiming information is confidential does not make it so. Were that true, a party could designate anything it wanted as confidential…*Transparency — not secrecy — is the default rule*." CVB, Inc. v. United States, 681 F. Supp. 3d 1313, 1316–17 (Ct. Int'l Trade 2024) (internal citations omitted) (emphasis added). The party seeking to seal or otherwise redact what would be a judicial record carries the burden of

---

[1] Defendants have proposed the following definitions of "Confidential Information" and "Camel Confidential Information": "Confidential Information is accessible only to the parties' counsel and certain associated personnel, and the proposed protective order prohibits sharing Confidential Information with all others, including any officer, director, shareholder, or employee of Camel Group. Camel Confidential Information covers the same information identified as Confidential Information but permits dissemination of the information not just to parties' counsel and associated personnel but also to officers or directors of Camel Group. If a document or portion thereof is not sealed under either of these designations, it is publicly available." ECF No. 12, at p. 2.

3

demonstrating that good cause exists for designating it as "confidential" and restricting access to it, with only the most compelling reasons justifying non-disclosure. *See* Hamama v. Adducci, No. 17-CV-11910, 2018 WL 5262679, at *2 (E.D. Mich. Oct. 23, 2018).

## III. Argument

In its Motion for Entry of Protective Order (ECF No. 12), Defendants claim that documents redacted as "Confidential Information" are necessary "[t]o protect the confidentiality of both internal agency documents and sources relied on by the FLETF over which the People's Republic of China has control." ECF No. 12, at p. 2. Plaintiff's concern is not focused on Defendants' internal agency documents, but rather its ability to have full access to those documents and sources relied on by FLETF in rendering its decisions. Defendants' justification that these documents should be "Confidential" to protect "sources relied on by the FLETF over which the People's Republic of China has control" allows Defendants to abuse the "Confidential" designation by claiming that anything Camel Group possesses could be controlled by the People's Republic of China, including those documents and sources FLETF has claimed are "publicly available."

Plaintiff's concerns were realized when after Defendants filed the Public Administrative Record,[2] Defendants redacted and purportedly plan to designate as "Confidential" the titles and contents of at least four documents that appear to be critical documents on which FLETF relied upon in its decisions to add Camel Group to the UFLPA Entity List and then deny its removal petition. *See* ECF No. 19, at pp. 9-10.[3] Defendants did not provide any explanation or good cause

---

[2] While the Public Administrative Record was originally filed by Defendants on March 24, 2025 (ECF No. 14), it was re-filed with updated redactions containing Camel Group's Business Confidential Information, and the original ECF No. 14 has been permanently sealed. *See* ECF No. 18.

[3] Specifically, Defendants redacted the full titles of what appears to be four critical attachments in the Second Package of documents in the Public Administrative Record (ECF No. 19), titled "Memorandum from Robert Silvers, Under Sec'y of Homeland Sec., Off. Of Strategy, Policy, & Plans, Forced Labor Enforcement Task Force Denial of Camel

4

justifying those redactions other than merely making general conclusory statements that these are either "internal agency documents" or "sources relied on by the FLETF over which the People's Republic of China has control."

Plaintiff attempted to resolve Defendants' concerns with Defendants' counsel by proposing Defendants provide Plaintiff's counsel with the unredacted titles of the documents it plans to designate as "Confidential," and allow counsel for the parties to negotiate a resolution regarding the proposed designation prior to any dispute reaching the court. Unfortunately, Defendants refused and instead moved forward with the present motion. For the reasons stated below, Defendants have not shown that good cause exists to for the proposed protective order.

   a.   *Defendants Have Not Shown Good Cause for the Proposed Protective Order*

The Court may issue a protective order only for "good cause" shown by Defendants. Defendants, however, have failed to prove its burden of demonstrating good cause for its proposed protective order and its "Confidential Information" designation. Because this designation would prevent Plaintiff's attorneys from sharing potentially relevant (and publicly available) evidence that was relied on by FLETF in making its decisions, Defendants should be compelled to explain why such information cannot be shared with the Plaintiff directly.

Ironically, despite Defendants now taking the position that some of the evidence FLETF relied on should be designated as "Confidential Information," on May 24, 2024, FLETF explicitly stated that its decision regarding Plaintiff's inclusion on the UFLPA Entity List was based on

---

Group Co., Ltd. Request for Removal the Uyghur Forced Labor Prevention Act Entity List (September 4, 2024)," which contains FLETF's Camel Group addition and removal petition vote package, FLETF evidence, and Camel Group submissions and communications ("Second Package"). In particular, Second Package Attachments 13, 14, 16, and 17 are fully redacted and withheld from the Public Administrative Record. ECF No. 19, at pp. 9-10. Additionally, it is possible that these documents also make up the other redacted titles from Second Package, Attachment 11 ("Uyghur Forced Labor Prevention Act (UFLPA) Entity List Package 23-004 from U.S. Dep't of Homeland Sec. to Forced Labor Enforcement Task Force"), Sub-attachments D, F and H. Id., at p. 9.

5

"publicly available information." ECF No. 5, ¶ 138; ECF No. 5-23. Then again, on July 9, 2024, the FLETF stated that its decision in denying Plaintiff's removal petition was also based on "publicly available information." ECF No. 5, ¶ 146; ECF No. 5-24. In the past, this court has found that "[b]ecause this information is publicly available, it fails to qualify as confidential or business proprietary information." CVB, Inc. v. United States, 681 F. Supp. 3d 1313, 1320 (Ct. Int'l Trade 2024) (internal citation omitted) (holding that publicly available information on market trends, market share and other market data of the Chinese mattress import/export market and approximate summaries thereof could not be redacted as "confidential" by the International Trade Commission). As such, there is no good cause for public information to be kept under seal, especially when it could form the evidentiary basis for the Defendants' decision that has caused Plaintiff real harm.

Defendants further argue that the proposed protective order and "Confidential" designation "is necessary to protect the confidentiality of both internal agency documents and sources relied on by the FLETF over which the People's Republic of China has control." ECF No. 12, p. 2. In support of its position, Defendants quote the Court in Ninestar: "Disclosure of either open-source sources or internal agency documents to Plaintiff's directors and officers would be susceptible to demands by the Chinese government pursuant to China's 2021 Data Security Law and its 2021 Anti-Foreign Sanctions Law." Ninestar Co. v. United States, 716 F. Supp. 3d 1376, 1399 (Ct. Int'l Trade 2024). Defendants' argument, however, is based on a flawed understanding of Chinese law and hackneyed stereotypes.[4] For example, one of the laws cited by the court in Ninestar and now

---

[4] It is worth noting that the court in Ninestar based its conclusion on a declaration issued by the Government defendants in that case, specifically former Assistant Secretary for DHS Office of Strategy, Policy and Plans Christa Brzozowski. See Ninestar Co. v. United States, 716 F. Supp. 3d 1376 (Ct. Int'l Trade 2024), ECF No. 85-2 (Sealed)/86-2 (Public) and Slip Opinion on Motion to Unseal the CAR (July 10, 2024), at pp. 26, ECF No. 183. While Sec. Brzozowski appears to be a well-trained and professional government official, Sec. Brzozowski does not appear to have any training, background, or expertise in Chinese law.

by the Defendants to support the position that Chinese law could compel Plaintiff to disclose information in Plaintiff's possession to the Chinese government, thus harming FLETF's investigative sources and methods, is the 2021 PRC Data Security Law.  Id. *and* ECF No. 12, p. 2.  That particular law does not provide any explicit provision regarding the compelled disclosure of foreign-origin data in China, but does include restrictions on providing Chinese-origin data to foreign government agencies like the FLETF.[5]  In fact, contrary to the Defendants' position that Chinese law would hinder the FLETF's ability to investigate future unrelated proceedings, in Plaintiff's experience, the 2021 Data Security Law provided a legal framework for Camel Group to request and obtain approval to provide the Toskun County Government Letter to FLETF as part of Plaintiff's Removal Request Petition.  *See* ECF No. 5-7, at pp. 14-15.  But for this law, Camel Group may never have been able to present this information to FLETF to provide an explanation about the mistake that resulted in Camel Group's errant Listing.  Defendants' arguments regarding Chinese law threatening the viability and credibility of its sources is unfounded and are a dangerous over simplification of the complexities of Chinese law.  It is this type of exaggeration that propounds stereotypes and allows gross mischaracterizations of facts to be acted upon by the unwary. Importantly, however, Defendants cannot now say that this evidence is so confidential that it cannot even be shown to Camel Group, especially after months of explaining that all of the evidence against Camel Group is available to the public, based only on its own speculation of Chinese law.

---

[5] PRC Data Security Law, Art. 2: "This law applies to data handling activities and security regulation carried out *within the [mainland] territory of the People's Republic of China*." (emphasis added).
PRC Data Security Law, Art. 36: "The competent organs of the PRC are to handle requests for the provision of data from foreign justice or law enforcement based on relevant laws and international treaties and agreements concluded or participated in by the PRC, or in accordance with the principle of reciprocity. Domestic organizations and individuals must not provide data stored within the PRC to foreign justice or law enforcement bodies without the permission of the competent organs of the PRC."

Lastly, Defendants state that the proposed protective order and "Confidential Information" designation would not hinder Plaintiff's counsel's ability to litigate this case because Plaintiff's counsel will have "full access" to the "Confidential Information" and that Camel Group's input as the client is "hardly essential." ECF No. 12, p. 3.  This argument ignores the fact that in order for Plaintiff's counsel to effectively litigate a matter based solely on the contents of the administrative record, it must be able to clarify the contents of that record with its client so it can fully understand and effectively argue points about that record to the Court.  The importance of this right is not only a hallmark of American jurisprudence, but also has real impact in this matter.  The crux of FLETF's decision to place Camel Group on the UFLPA Entity List was a government social media post in China that mistakenly identified Camel Group as participating in a labor transfer program in 2017.  But for Camel Group learning of this evidence on its own after it was placed on the UFLPA Entity List, it never would have had the opportunity to investigate the allegations and identify and explain the mistake to FLETF.  Had this evidence not been known by Camel Group, it would have been prevented from clearing its name or even engaging with FLETF at all.  The same is true for the evidence that the Defendants now seek to keep from Camel Group.  Limiting Plaintiff's counsel's ability to speak with its client and taking away counsel's ability to clarify certain items in the record where only Camel Group itself would be able to clarify puts Plaintiff's counsel at a significant disadvantage and violates Plaintiff's right to fairness, due process, and the right to defend itself against an accuser.

  b. *Plaintiff Has Attempted, in Good Faith, to Resolve Defendants' Concerns*

Prior to filing the present motion, Defendants and Plaintiff met and conferred over a series of phone calls and emails in an attempt to resolve the disagreement over the scope of the Defendants' proposed protective order.  During those discussions, Plaintiff attempted, in good

faith, to propose alternatives to the protective order that would allow the parties to avoid costly and time-consuming litigation on motions to unseal the record[6] while also accommodating the Defendants' interest in protecting certain information by resolving any dispute on the designation of a particular document prior to the dispute reaching the court. In fact, in the case XYZ Corp. v. United States, the Court of International Trade and CBP, a named defendant in the present case, agreed to this exact type of proposal in the past. *See* XYZ Corp. v. United States, 264 F. Supp. 3d 1348, 1350 (Ct. Int'l Trade 2017) *citing* Amended Protective Order ¶ 9, July 19, 2017, ECF No. 75.[7] Defendants have not presented any reason why that specific model should not be followed here. It would conserve precious judicial resources and time, and also allow the Defendants to fully and effectively litigate its concerns regarding the designations of "confidential" information.

    *c.* *Comparisons to Ninestar on this Issue are Misguided*

Defendants attempt to compare this case and Camel Group's situation to Ninestar, even going so far as to propose a protective order modeled almost completely on the fourth amended protective order entered in Ninestar. However, the facts in this case and the allegations against Camel Group are not comparable to Ninestar.[8] In Ninestar, the administrative record contained

---

[6] For example, in the Ninestar case, Ninestar was forced to move the court multiple times to unseal the record based on its protective order (a protective order that Defendants models the current proposed protective order on). It resulted in multiple hearings, four amended protective orders, and months of litigation. Camel Group's purpose in its alternative proposal is to avoid all of this motion practice and allow the parties to resolve confidentiality designations between themselves prior to involving the court.

[7] The exact language of the Amended Protective Order in the case XYZ Corp. v. United States is: "In the event the receiving party disagrees with the producing party's designation of confidentiality, whether as to particular information or document, the receiving party shall so advise the producing party in writing, and the producing party shall thereupon have twenty (20) days in which to withdraw the claim to confidentiality or otherwise resolve the disagreement, or move the Court to resolve the disagreement. During the pendency of any such motion the receiving party will not disclose the information or documentation that is the subject of said motion." XYZ Corp. v. United States, 264 F. Supp. 3d 1348, 1350 (Ct. Int'l Trade 2017) citing Amended Protective Order ¶ 9, July 19, 2017, ECF No. 75.

[8] Note that this also does not take into account another key difference in Ninestar versus Camel Group, namely that Camel Group has already gone through the administrative removal process prior to initiating this litigation.

9

highly sensitive law enforcement information pertaining to a confidential informant who helped provide the information used by FLETF to sanction Ninestar. No such sensitive evidence exists in this case. FLETF represented to Camel Group in writing on multiple occasions that its decision to add Camel Group to the UFLPA Entity List and then deny its removal petition was based on "publicly available information." *See* ECF Nos. 5-23 and 5-24. Defendants have not at any point indicated the existence of a confidential informant, or any other similar highly-sensitive evidence, that would have caused Plaintiff to believe any such confidentiality designations are necessary. Given that the evidence relied on by FLETF involved "publicly available information," Defendants cannot establish good cause to justify such a broad sweeping protective order.[9]

Defendants reliance on Ninestar is further misguided because Camel Group has sufficient contacts in the United States to enjoy the protections of due process. With respect to Ninestar's constitutional due process rights to view information in the administrative record, the court found that Ninestar was a "foreign compan(y) with insufficient contacts in the United States to accrue constitutional rights." Ninestar, *Slip Opinion on Motion to Unseal the CAR* (July 10, 2024), at pp. 27, ECF No. 183. Camel Group, on the other hand, does have sufficient contacts and should be afforded due process here. "[F]oreign organizations that have 'entered the territory of the United States and connections with this country…are entitled to the protections of the Constitution." Nat'l Council of Resistance of Iran v. Dept. of State, 251 F.3d 192, 203 (D.C. Cir. 2001). Camel Group conducts millions of dollars of transactions in the United States either directly as an exporter or through its wholly-owned U.S. subsidiary, Camel Energy, Inc., which is also significantly

---

[9] Plaintiff wishes to further emphasize that its concern is related to the four documents redacted and purportedly to be labeled as "Confidential" in the Public Administrative Record (*see* ECF No. 19, at pp. 9-10). To the extent Defendants can show that these documents do not relate to the "publicly available information" and/or evidence used by the FLETF in its decision to either add Camel Group to the UFLPA Entity List and/or deny its petition for removal, Plaintiff would not object to a "Confidential" designation.

10

impacted by the Listing decisions. This includes continued and systematic business and contacts within the United States that continue today. In fact, Camel Group and its subsidiaries have been financially damaged in the U.S. due to the loss of contracts with U.S. companies because of the Listing. Camel Group, unlike Ninestar, has established sufficient contacts and should be afforded the same due process as any other United States organization. This includes with respect to having full access to the record and evidence that FLETF used to sanction Camel Group, and the unfettered opportunity to effectively argue its points regarding the review of the agency record.

## IV.     Conclusion and Request for Relief

For the reasons described more fully in this Response, Plaintiff respectfully submit that Defendants have not shown good cause to justify their proposed and overly broad protective order. Therefore, Plaintiff requests that the Court deny Defendants' Motion for Entry of Protective Order.

Respectfully submitted,

**DICKINSON WRIGHT PLLC**

*/s/ Mark V. Heusel*
Mark V. Heusel
Jacob L. Clark
DICKINSON WRIGHT PLLC
350 S. Main Street, Suite 300
Ann Arbor, MI 48104
(734) 623-1908
*Attorneys for Plaintiff*

**DATE:** April 8, 2025