UNITED STATES COURT OF INTERNATIONAL TRADE
HONORABLE LISA W. WANG, JUDGE

| | | |
|---|---|---|
| CAMEL GROUP CO., LTD., | : | |
| | : | |
| Plaintiff, | : | Court No.  25-00022 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES ET AL., | : | PUBLIC VERSION |
| | : | |
| Defendants. | : | |

---

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR *IN CAMERA*
REVIEW AND ORDER TO UNREDACT AND RE-DESIGNATE THE
ADMINISTRATIVE RECORD**

---

BRETT SHUMATE
Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

MONICA P. TRIANA
Senior Trial Counsel
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Room 346
New York, New York 10278
Tel. (212) 264-9240 or 9230
*Attorneys for Defendants*

Date:  July 10, 2025

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

STANDARD OF REVIEW ............................................................................................. 3

ARGUMENT ................................................................................................................... 5

I.      DISCLOSING THE ATTORNEYS'-EYES-ONLY DESIGNATED INFORMATION IN THE ADMINISTRATION RECORD TO CAMEL WOULD IMPAIR LAW ENFORCEMENT EFFORTS AND IS UNNECESSARY TO CAMEL'S CASE ............................................................................ 5

    A.  The Government Has A Strong Interest In Protecting Law Enforcement Sensitive Information ......................................................................................................... 5

    B.  Plaintiff's Attempts To Discount The Government's Strong Interest In Protecting Law Enforcement Sensitive Information Are Unsupported ......................................... 9

        •  The Government's Designations Are Not Inconsistent ......................................... 9

        •  The Echeverria Declaration Supports The "Confidential" Designations ............ 13

        •  Disclosure Is Harmful To Law Enforcement Efforts............................................ 14

    C.  Plaintiff Has Identified No Interest Sufficient To Warrant Re-Designation Of The Documents As Camel Confidential ............................................................................ 15

II.     PUBLIC DISCLOSURE OF THE DOCUMENTS IS UNWARRANTED.................. 20

CONCLUSION................................................................................................................ 22

# TABLE OF AUTHORITIES

**Cases**

*Butte Cty. v. Chaudhuri*,
887 F.3d 501 (D.C. Cir. 2018) ................................................................ 18

*CVB, Inc. v. United States*,
681 F. Supp. 3d 1313 (Ct. Int'l Trade 2024) ................................... 4, 13

*D.A. v. Nielsen*,
2018 WL 3158819 (D.N.J. June 28, 2018) ............................................ 6

*Doe ex rel. Thomas v. Sutter*,
2019 WL 1429626 (S.D. Tex. Mar. 29, 2019) ...................................... 6

*In re Copley Press, Inc.*,
518 F.3d 1022 (9th Cir. 2008) .............................................................. 20

*In re Terrorist Attacks on Sept. 11, 2001*,
523 F. Supp. 3d 478, 505-506 (S.D.N.Y. 2021) .................................. 10

*In re The City of New York*,
607 F.3d 923 (2d Cir. 2010) ........................................................*passim*

*Kappos v. Hyatt*,
566 U.S. 431 (2012) .............................................................................. 18

*MacNamara v. City of New York*,
249 F.R.D. 70 (S.D.N.Y. 2008) ............................................................ 6

*Ninestar Corp. v. United States*,
716 F. Supp. 3d 1376 (Ct. Int'l Trade 2024) ................................*passim*

*People's Mojahedin of Iran v. U.S. Dept. of State*,
182 F.3d 17 (D.C. Cir. 1999) ............................................................... 16

*Reese v. Liberty*,
2019 WL 5549219 (D. Me. Oct. 25, 2019) .......................................... 19

*Wagafe v. Trump*,
334 F.R.D. 619 (W.D. Wash. 2020) ...................................................... 6

**Statutes**

19 U.S.C. § 1307 ..................................................................................... 3

19 U.S.C. § 1677 ..................................................................................... 4

The Uyghur Forced Labor Prevention Act ........................................................................*passim*

The Administrative Procedures Act ........................................................................ 17

**Rules**

USCIT Rule 5 ........................................................................................................ 4

USCIT Rule 26 .................................................................................................... 17

UNITED STATES COURT OF INTERNATIONAL TRADE
HONORABLE LISA W. WANG, JUDGE

---

CAMEL GROUP CO., LTD., : 
      Plaintiff,    :   Court No.  25-00022
  :
     v.       :
  :
UNITED STATES ET AL.,    :   PUBLIC VERSION
  :
      Defendants.    :

---

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR *IN CAMERA*
REVIEW AND ORDER TO UNREDACT AND RE-DESIGNATE THE
ADMINISTRATIVE RECORD**

  Defendants, the United States *et al.* (Government), respectfully oppose Plaintiff's, Camel

Group Co., LTD (Camel or Plaintiff), motion for *in camera* review and to unredact and re-

designate the administrative record.

**<u>INTRODUCTION</u>**

  Plaintiff asks the Court to review, *in camera*, the Government's confidentiality

designations and redactions, made pursuant to the Protective Order, ECF No. 25, with respect to

eight (8) documents included in the administrative record.[1]  The Government filed a public

---

[1] The documents Plaintiff identifies are as follows:
- Doc. 2, Attachment 11, Atachment D, AR001751-1776, [[ ████████████
████████████████████████████████████████████████
████████████████████████████████████ ]] Original
and English Translation.  (Attachment D)
- Doc. 2, Attachment 11, Attachment F, AR001785-2764, [[ ████████
████████████████████████████████████████████████ ]]  (Attachment F)
- Doc. 2, Attachment 11, Attachment H, AR002784-2791, [[ ████████
████████████████████████████████████████████████.]]
(Attachment H)

version of the administrative record on April 7, 2025. ECF No. 19. Following the entry of the

Protective Order on May 21, 2025, ECF No. 25, the Government filed two versions of the

Administrative Record, one labeled "Confidential" (attorneys' eyes only[2]), ECF Nos. 26-28, and

one labeled "Camel Confidential" (meaning that certain Camel representatives are permitted to

review the documents), ECF No. 29, as those terms and those categories are defined in the

Protective Order. In the "Confidential" version of the administrative record, the vast majority of

the record was made available to Camel's attorneys (with the exception of certain personally

identifiable information of government employees). This "Confidential" version is available to

the Court and, therefore, an *in camera* submission may not be required. But, to the extent the

Court deems necessary, the Government agrees to submit a fully unredacted version to the Court

for its review on this motion at the Court's request.

The documents that are the subject of Plaintiff's motion, which are listed in footnote 1,

are all People's Republic of China (PRC) based documents over which the PRC government

exercises control, and which the Forced Labor Enforcement Task Force (FLETF) relied upon in

either its decision to add Camel to the Uyghur Forced Labor Prevention Act (UFLPA) Entity

- Doc. 2, Atachment 13, AR002935-2941, [█████████████████████████
  ███████ ] (Attachment 13)
- Doc. 2, Attachment 14, AR002942-2949, [████████████████████████████
  ██████████████████████████ ]] (Attachment 14).
- Doc. 2, Attachment 16, AR002952-2967, [███████████████████████████
  ███████ ]] (Attachment 16)
- Doc. 2, Attachment 17, AR002968-2976 [██████████████████████████
  ██████████ ] (Attachment 17)

[2] The Protective Order refers to such information as "Confidential Information." ECF No. 25 at
¶ 1. We use the phrase "attorneys' eyes only" to conform to the relevant cases (which
predominately use that phrase).

List, or in its denial of Camel's request for removal from the UFLPA Entity List.  Camel asks the Court to unseal these documents (that is, to remove the "attorneys'-eyes-only" designation) and make them available to Camel, either under a "Camel Confidential" designation, or publicly. The portions of the record that the Government continues to protect as "Confidential" are law enforcement sensitive, and their disclosure would substantially harm the Government's, in particular the FLETF's, law enforcement efforts in its application of 19 U.S.C. § 1307 (forced labor statute) and the UFLPA.  Therefore, the Government presents a strong interest in protecting the law enforcement sensitive information.  Camel presents no compelling argument as to why disclosure to the public, or to Camel, as opposed to confidential disclosure, is necessary.

The "Confidential" designation for the documents in question is proper as that designation appropriately balances the Government's concerns that disclosure to Camel itself (beyond its counsel) would undermine future investigations by providing a roadmap for evading detection and cause sources to dry up, with Camel's legitimate interest in litigating this case and its concerns over reputational harm.  Camel fails to provide a nonconclusory reason why Camel itself, whom the FLETF found reasonable cause to believe was working with the government of Xinjiang, needs this sensitive information.  The Court should therefore deny the motion to re-designate these documents as either public or "Camel Confidential."

## **STANDARD OF REVIEW**

The standard governing the disclosure of law enforcement sensitive information in litigation, as set forth by the Second Circuit in *In re The City of New York*, 607 F.3d 923, 948–49 (2d Cir. 2010), asks (1) whether the information at issue is privileged; (2) whether the party seeking the information has demonstrated a compelling need for it that outweighs the public interest against disclosure; and (3) even if the Court determines after *in camera* review that no

privilege applies, whether reasonable limitations on disclosure, such as an attorneys'-eyes-only

designation, are appropriate in light of the parties' competing interests. *Id.*

　　Camel cites the wrong legal standard, *see* Pl. Br. at 2-3, 16, relying on the analysis in

*CVB, Inc. v. United States*, 681 F. Supp. 3d 1313 (Ct. Int'l Trade 2024).  In an instance where the

Court considers whether record evidence should be disclosed, we would agree that the default

rule favors disclosure.  However, where issues of law enforcement privilege or law enforcement

sensitive information are at issue, the proper analysis is set forth in *In re The City of New York,*

607 F.3d at 948-949, and applied by this Court in *Ninestar Corp. v. United States*, 716 F. Supp.

3d 1376, 1398-99 (Ct. Int'l Trade 2024), a case also involving the FLETF's application of the

UFLPA.  In contrast, in *CVB*, the Court analyzed whether information should be considered

business proprietary under 19 U.S.C. § 1677f(b)(1)(A) (part of the antidumping and

countervailing duty statute).  The *CVB* Court upheld the International Trade Commission's (ITC)

finding of injury, but refused to re-designate information as business proprietary that the ITC

failed to properly designate in the first instance, and where the ITC failed to follow the USCIT

Rule 5(g)'s mandate with respect to bracketing of confidential information.  *CVB*, 681 F. Supp.

3d 1313.  *CVB* does not consider a court's analysis of law enforcement privilege or law

enforcement sensitive information and whether publication is ever appropriate.  Its analysis,

therefore, with respect to the designation of business propriety information under the AD/CVD

statute is not applicable in this case.

## ARGUMENT

**I.    DISCLOSING THE ATTORNEYS'-EYES-ONLY DESIGNATED INFORMATION IN THE ADMINISTRATIVE RECORD TO CAMEL WOULD IMPAIR LAW ENFORCEMENT EFFORTS AND IS UNNECESSARY TO CAMEL'S CASE**

Camel seeks to unseal and have the information in the eight identified documents made available to the public, or in the alternative, to Camel. Despite the fact that its counsel has access to all of the documents identified, Camel claims that its interest in viewing the documents, in a record-review case, outweighs the Government's interest in protecting the law enforcement sensitive information. Pl. Br. at 3. For the reasons explained below, the information was properly identified as law enforcement sensitive, and an attorneys'-eyes-only designation appropriately balances Camel's interests with the Government's interests against disclosure.

### A. The Government Has A Strong Interest In Protecting Law Enforcement Sensitive Information

The court "is generally 'free to tailor [a] protective order to the circumstances presented' as it relates to the disclosure of law enforcement sensitive documents." *Ninestar*, 716 F. Supp. 3d at 1398 (quoting *In re The City of New York*, 607 F.3d at 949). Based on multiple submissions by the parties, the Court entered a protective order that included a category identified as "Confidential Information," which covers, among other things, "law enforcement sensitive information or other similarly sensitive government information, including information designated as 'for official use only.'" ECF No. 25 at ¶ 1. Pursuant to the terms of the entered Protective Order, those documents designated "Confidential" shall not be disclosed to anyone other than counsel named in the protective order, even the directors or officers of Camel. *Id.* at ¶ 6.

To start, it should be noted that almost the entirety of the administrative record has been made available to Plaintiff's counsel, with portions designated as "Confidential Information,"

and a significant portion of the record has also been made available to Camel, either because the information was made available publicly or through a "Camel Confidential" designation. *See* ECF Nos. 19 (Public), 26-28 (Confidential), 29 (Camel Confidential). Thus, Camel's concerns about its ability to litigate this case should be significantly abated as it has much of the information that the FLETF considered. As to the information that the Government is *not* willing to make available to Camel—open-source documents over which the PRC exerts control—the Court need only assess whether an attorneys'-eyes-only designation under the Protective Order appropriately balances Camel's and the Government's competing interests. *In re The City of New York*, 607 F.3d at 949. We believe that it does.

Indeed, courts often order attorneys'-eyes-only production of law enforcement sensitive information even when the information is not protected by the law enforcement privilege. *See, e.g.*, *Wagafe v. Trump*, 334 F.R.D. 619, 625 (W.D. Wash. 2020); *MacNamara v. City of New York*, 249 F.R.D. 70, 94, 96 (S.D.N.Y. 2008); *D.A. v. Nielsen*, 2018 WL 3158819, at *8 (D.N.J. June 28, 2018); *Doe ex rel. Thomas v. Sutter*, 2019 WL 1429626, at *2–*3 (S.D. Tex. Mar. 29, 2019). This Court, in a nearly identical case challenging a FLETF determination to add Ninestar Corporation and certain affiliated entities to the UFLPA Entity List, upheld an attorneys'-eyes-only designation with respect to the same category of documents. *Ninestar*, 716 F. Supp. 3d at 1399. Specifically, the *Ninestar* court upheld a "Confidential" designation, finding that "[d]isclosure of . . . open-source sources" that "would be susceptible to demands by the Chinese government pursuant to China's 2021 Data Security Law and its 2021 Anti-Foreign Sanctions Law . . . . would hamper the FLETF's investigations into the use of forced labor by other . . . entities." *Id.* Here, the attorneys'-eyes-only designation accommodates the Government's legitimate and well-founded concerns that disclosure to Camel could impede "the ability of a law

enforcement agency to conduct future investigations." *In re The City of New York*, 607 F.3d at 948 (internal citation omitted).

The Government has a strong interest in maintaining a "Confidential" designation here. Again, the documents at issue are open-source documents over which the PRC government has control, and which the FLETF relied upon in either listing Camel on the UFLPA Entity List or as further support for its denial of Camel's request for removal from the UFLPA Entity List.  Ex. A (Declaration of Cynthia Echeverria (Echeverria Decl.)) at ¶¶ 8-9.  As Cynthia Echeverria, Director of Trade Policy in the Office of Trade and Economic Security, Office of Strategy, Policy, and Plans, Department of Homeland Security, explains in her attached sworn declaration, "[i]f disclosed, the information [that the FLETF has designated as law enforcement sensitive, including the eight documents Camel identifies herein] would reveal the FLETF's sources, methods, and significant insights into how it conducts investigations." *Id.* at ¶ 8.  "[T]he compilation of this information reveals how the FLETF researches and develops recommendations for the UFLPA Entity List" and its disclosure "particularly when . . . taken as a whole, would provide a roadmap to companies and the PRC on how to continue to engage in forced labor," *id.* at ¶ 7, "evade FLETF investigations and undermine [its] mission." *Id.* at ¶ 8.

Disclosure to a Chinese company is particularly problematic because of the laws under which they operate.  As Ms. Echeverria noted, "PRC laws require PRC companies to assist and support state-sponsored intelligence activities" and "requir[e] companies to comply with Chinese demands for data relevant to the UFLPA." *Id.* at ¶ 15.  In particular, Ms. Echeverria identifies the PRC National Intelligence Law (2017), the 2021 Data Security Law, and the Anti-Foreign Sanctions Law.  The PRC National Intelligence Law, for example, requires citizens to "support, assist and cooperate with national intelligence efforts." *Id.*  The 2021 Data Security Law gives

the state significant authority "over [both] the collection and use of data in the PRC," particularly when it comes to restrictive measures imposed by foreign governments in the areas of trade or foreign investment. *Id.* Finally, the Anti-Foreign Sanctions Law prohibits actions which assist in the implementation of sanctions by foreign governments that are restrictive. *Id.* Therefore, companies are required to comply with demands from the PRC for data that is relevant to the UFLPA. *Id.*

Thus, "the PRC maintains significant control over PRC-based companies and information deemed useful to the state is at significant risk of being turned over" to the PRC under these laws. *Id.* Disclosure of the law enforcement sensitive information, therefore, even to Camel, would likely result in the disclosure to the PRC that a foreign entity relied on the information. This would [[████████████████████████████████████████████ ████████████████████████████]] *Id.* at ¶ 16. Moreover, it would [[████████████ ████████████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████]] *Id.*

Therefore, the FLETF's investigatory efforts can be harmed just by disclosing the information relied upon because [[████████████████████████████ ████████████████]] *Id.* at ¶ 9. Notably, [[████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████ ████████████████████]] *Id.*

It is undisputed that Plaintiff "is a company organized and existing under the laws of the People's Republic of China," ECF No. 5 (Complaint) at ¶ 19, and would consequently be subject

to the PRC laws discussed above.  The documents identified by Plaintiff were relied upon by the FLETF to add Camel to the UFLPA Entity List and are "PRC-based sources and are vulnerable to the PRC's control of information."  Ex. A. (Echeverria Decl.) at ¶¶ 11-13.  As Ms. Echeverria stated, "[t]he specific identification and disclosure of these documents would create the risk that [[█████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████]] *Id.* at ¶ 9.

Again, this Court in *Ninestar* upheld the Government's confidentiality designations for precisely the reasons articulated here, finding that "[d]isclosure of . . . open-source sources" that "would be susceptible to demands by the Chinese government pursuant to China's 2021 Data Security Law and its 2021 Anti-Foreign Sanctions Law . . . . would hamper the FLETF's investigations into the use of forced labor by other . . . entities."  *Ninestar*, 716 F. Supp. 3d at 1399.

The Government, therefore, has a strong interest in preventing Plaintiff from accessing this limited pool of law enforcement sensitive information, and the material should remain designated as "Confidential."

## B.  Plaintiff's Attempts To Discount The Government's Strong Interest In Protecting Law Enforcement Sensitive Information Are Unsupported

Plaintiff makes a number of arguments in an effort to discount the Government's strong interest in protecting the law enforcement sensitive information designated as "Confidential."  None of those arguments are compelling.

- **The Government's Designations Are Not Inconsistent**

First, Plaintiff identifies what it deems "multiple problems" with the Government's designations that purportedly demonstrate "the arbitrariness, inconsistence, and baselessness of these designations."  Pl. Br. at 6.  There are no inconsistencies in the Government's designations; and, even if there were, it would not warrant disclosure of the identified documents to Plaintiff.

Plaintiff first notes that [[████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████ ]] Pl. Br. at 7.

Although, on its face, this may appear inconsistent, it is not.

As stated above, the documents at issue were marked as "Confidential" because they are

PRC-based open-source documents over which the PRC government has control, *and* which the

FLETF relied upon either in its original decision to add Camel to the UFLPA Entity List or in its

denial of Camel's request for removal from the UFLPA Entity List.  The compilation of

documents reveals law enforcement techniques, and provides a roadmap to companies and the

PRC as to the U.S. Government's enforcement efforts, which would undermine efforts by the

FLETF.  *See* Ex. A. (Echeverria Decl.) at ¶¶ 7-8; *see e.g., In re Terrorist Attacks on Sept. 11,*

*2001*, 523 F. Supp. 3d 478, 505-506 (S.D.N.Y. 2021) (noting that Courts have upheld claims of

privilege even for information that alone may seem harmless, but in the aggregate, may pose a

danger if disclosed.)  Because they were relied on by the FLETF, disclosure of that information

to a Chinese entity, like Camel, would require disclosure to the PRC government, which, [[████████

████████████████████████████████████████████

████████████████████ ]] *Id.* at ¶ 9.

It is true that [[████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████ ]]  Camel's

submissions were all designated "Camel Confidential" as a precautionary measure to protect any

information therein that Camel may consider business confidential.  If, upon review, Camel

agrees that no business confidential information is included in its submissions to the FLETF,

those submissions, and the attachments, can be de-designated and filed publicly.  For

[[████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████ ]]

     Importantly, Plaintiff fails to identify why this, or any claimed "inconsistency," weighs

against the Government's interests, or factors into Camel's compelling interest to see the same

documents it already has.  Indeed, even if the Court were to disagree with the Government's

designation of [[████████████████ ]]—and make those documents public—this would not

support Camel's assertion that the other documents identified in this motion should be revealed

to Camel, as the compelling interest in protecting the law enforcement designation remains.

     Plaintiff claims that "it should not be the case that FLETF can . . . prohibit Camel Group

from learning the small yet critical detail that [[████████████████████████

████████████████████████████████████████ ]]

Pl. Br. at 7.  But what Camel ignores is the crucial factor that the U.S. government relied on

certain documents in its listing decision which is precisely the reason for the "Confidential"

designation.  Camel's desire to know this fact does not negate an otherwise compelling interest

supporting this designation.  And, the purported "confusion" the Government's designations

have caused Camel's counsel, Pl. Br. at 7-8; 13-14, while doubtful, is likewise not compelling. To clear up any confusion, [[ ███████████████████████████████████████████ ]]

Plaintiff next points out that Attachment G to DHS's UFLPA Entity List Package, AR002765-2783, also a PRC-based open-source document, was *not* marked "Confidential." Pl. Br. at 8. This fact is irrelevant to the instant motion and whether the eight identified documents are, in fact, "Confidential." Attachment G was separately disclosed within another non-PRC-based document that supports the listing decision, an article published by the Atlantic Council, Laura T. Murphy et al., *Financing & Genocide, Development Finance and the Crisis in the Uyghur Region*, The Atlantic Council (February 2022), which was Attachment B to DHS's UFLPA Entity List Package. AR001678-1746. The Atlantic Council is a U.S.-based nonpartisan organization that reports on matters of international affairs. Within Attachment B, the Atlantic Council identified Camel Group as one of the entities participating in labor transfer programs facilitated by the Toksun Government, a fact to which the article cites to Attachment G for support. *See* AR001711; 1740. Thus, the fact that Attachment G was disclosed simply does not negate the basis for withholding the documents at issue here.

And, Attachment F, referenced at Pl. Br. at 8, contains PRC-based information that, [[ ██████████████████████████████ .]] As the declaration of Ms. Echeverria states, [[ ███████████████████████████████████████████████ ]] Ex. A. (Echeverria Decl.) at ¶ 9.

Plaintiff fails to identify any basis to question the Government's compelling interest in maintaining the confidentiality of the law enforcement sensitive information that is the subject of the instant motion.

- **The Echeverria Declaration Supports The "Confidential" Designations**

Second, Plaintiff challenges the analysis in the declaration of Cynthia Echeverria that supports the "Confidential" designations, claiming that it is "flawed." Pl. Br. at 9. However, Plaintiff simply misunderstands the analysis therein. Indeed, the declaration very clearly explains how PRC open-source documents are vulnerable to the PRC government's control of information. As stated above, and in the declaration itself, the various PRC laws, such as the Anti-Foreign Sanctions Law, PRC National Intelligence Law, and Data Security Law, "require PRC companies to assist and support state-sponsored intelligence activities." Ex. A (Echeverria Decl.) at ¶ 15. That is, Camel would be required to notify the PRC government of information relied upon by the U.S. Government in implementing foreign sanctions. This, coupled with the fact that the PRC government [[ ███████████████████████████████████

██████████████████████████████ ]] further supports the "Confidential" designation. *Id.* at ¶ 9. That the PRC government can seek to exert its control over U.S. entities, or other non-PRC entities, Pl. Br. at 9, even if true, is not relevant to, nor does it diminish in any way [[ █

████████████████████████████ ]][3] Likewise, that Plaintiff was able to utilize the Data Security Law to its benefit, Pl. Br. at 10, does not negate the Government's

---

[3] Camel references the Government's Supplemental Brief in Support of its Motion for a Protective Order and the discussion of the USA Today article that is mentioned in *CVB*, 681 F. Supp. 3d 1313. However, a U.S. based news organization, like USA Today, is less susceptible to the control of the PRC government than PRC-origin sources. As noted in the Echeverria Declaration, the PRC government [[ ████████████████████████

███████████████████ ]] Ex. A. (Echeverria Decl.) at ¶ 9.

compelling justification in confidentiality, nor does it support any compelling interest by Camel that would require disclosure.

- **Disclosure Is Harmful To Law Enforcement Efforts**

Finally, Plaintiff claims, without support, that "[t]he Government has not articulated any demonstrable harm or impairment to the FLETF's law enforcement and investigation efforts . . . ." Pl. Br. at 10-11. Despite not having the entirety of the Echeverria Declaration until this filing, much of the explanation articulated herein was previously unredacted and provided to Plaintiff with our prior submission. *See* ECF No. 23-1. And, the Government's basis for the designations was explained in our supplemental submission in support of our motion for a protective order and again in this brief. *See supra*; *see also* ECF No. 23.

Curiously, instead of addressing the Government's analysis and the control exerted over PRC-based sources by the PRC government, Plaintiff cites this Court's decision in *Ninestar* for the fact that agencies "routinely rely on public and open-source information." *Ninestar*, 716 F. Supp. 3d at 1397; Pl. Br. at 10-11. This is true. However, Plaintiff ignores the fact that the Court's decision in *Ninestar* (challenging the FLETF's decision to add Ninestar and its subsidiaries to the UFLPA Entity List), read in its entirety, is highly instructive as to whether disclosure, in this case, would be harmful to the FLETF's law enforcement efforts. The *Ninestar* court dealt with nearly identical confidentiality designations and includes nearly identical categories of documents—PRC-based open-source documents relied on by the FLETF. The *Ninestar* court held that "disclosure of . . . public records," like the ones at issue here, "*will reveal* the FLETF's deliberative process and judgment." *Ninestar*, 716 F. Supp. 3d at 1397 (emphasis added). Moreover, consistent with the facts here, the *Ninestar* court noted that "Defendants in the . . . declaration discuss sealed evidence that strongly suggests that disclosure

of this case's open-source record information presents a heightening circumvention risk . . . . Because public disclosure of the sealed material would, if disclosed, lead to circumvention of the FLETF's law enforcement efforts [the information designated] . . . is properly designated as LES." *Id.* The same analysis—and result—should apply.[4]

In sum, Plaintiff has done nothing to discount the strong law enforcement interest the Government has in protecting the information at issue. Disclosure of the documents designated "Confidential" to the public or to Camel would surely "impair the FLETF's law enforcement and investigative efforts." *See* Pl. Br. at 10.

### C. Plaintiff Has Identified No Interest Sufficient To Warrant Re-Designation Of The Documents As Camel Confidential

Camel failed to identify any interest that would outweigh the Government's interest in protecting the law enforcement sensitive information identified. Despite the inflammatory language peppered throughout its brief—characterizing the FLETF's evidence as "flimsy," and "razor-thin" (arguments going to the merits of the case), Pl. Br. at 6, and claiming the Government's designations to be "arbitrar[y] and inconsistent[]" and "misleading," *Id*. at 3, 6, (which they are not) Plaintiff loses sight of what is at issue here, whether Camel's interests outweigh the Government's interests in protecting these law enforcement sensitive documents. They do not. Camel's counsel has access to all of the documents in their entirety and can make arguments in support of Camel's challenge in this record-review case. And, even if Camel itself does not have the precise documents, a significant amount of information was provided to Camel

---

[4] That there are Congressional reports, cited in note 7 to Plaintiff's submission, identifying human rights violations in the Xinjiang region does not factor into whether the FLETF designates information as "Confidential." Pl. Br. at 9, 10-11. Those documents, while important and relevant to the discussion of human rights violations in China, are not specific to the FLETF's investigation of a particular entity in the region. And, the reports themselves are not PRC-origin documents subject to the control of the PRC government.

and the public in the unredacted portions of the UFLPA Entity Package memorandum, AR001644-1650, as well as in the memoranda related to FLETF's denial of Camel's removal request, AR000010-16; AR002980-2897, and the public documents attached thereto.

Plaintiff notes, in support of its claim, that it is afforded the protections of due process, and that the "Confidential" designation somehow violates those rights. Pl. Br. at 10-11. Plaintiff is wrong, and, in any event, cites no support for these assertions, instead referencing a prior submission to the Court. *See* Pl. Br. at 11. Like the plaintiff in *Ninestar,* Plaintiff here is a foreign corporation with no constitutional rights in the United States. *Ninestar*, 716 F. Supp. 3d at 1399. Indeed, the D.C. Circuit in *People's Mojahedin of Iran v. U.S. Dept. of State*, 182 F.3d 17, 22 (D.C. Cir. 1999) held that "[a] foreign entity without property or presence in this country has no constitutional rights, under the due process clause or otherwise." *Id.*[5] Camel has identified no "property or presence" in the United States that would provide Camel with any more rights than it was already afforded. *See id.* Moreover, Plaintiff has not identified how this "Confidential" designation, which courts have used in other contexts, would violate any rights, if Plaintiff had them. *See In re The City of New York*, 607 F.3d at 935 (noting that attorneys'-eyes-only designations are routine in certain circumstances); USCIT R. 26(c)(1)(G) ("The court may, for good cause, issue an order to protect a party or person . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be

---

[5] Camel does not articulate in this submission why it believes it has constitutional rights in the United States, instead referencing a submission made on April 8, 2025. Although these arguments need not be addressed here, Plaintiff, a foreign corporation, lacks the necessary "property or presence in this country" to be afforded constitutional rights. *People's Mojahedin of Iran*, 182 F.3d at 22. Selling its merchandise in the United States either directly or through a U.S. subsidiary is insufficient. *See* ECF No. 20 at 10-11.

revealed only in a specified way . . ."); *see supra* at 6 (identifying examples of courts applying an attorneys'-eyes-only designation).

As the Court in *Ninestar* noted, and as applies here, "there appears to be no authority compelling a level of disclosure to the client greater than what is provided here"—an attorneys'-eyes-only disclosure.  716 F.Supp.3d at 1399.  Not only is Camel a foreign corporation, like the plaintiff in *Ninestar*, but the Administrative Procedures Act (APA), under which this case is brought, "does not appear to demand a particular level of disclosure to the client as opposed to counsel."  *Id.*  This Court, like the *Ninestar* court, properly "tailor[ed] the protective order to the circumstances presented," *In re The City of New York*, 607 F.3d at 949, which included a "Confidential," attorneys'-eyes-only designation.  *See also Ninestar*, 716 F. Supp. 3d at 1399. As noted above, Courts have applied attorneys'-eyes-only designations in other circumstances. *See supra* at 6.

However, this is not a constitutional issue.  Instead, the issue is whether Camel's interest in the information outweighs the strong interest the FLETF has in protecting it, and whether an attorneys'-eyes-only designation under the Protective Order appropriately balances Camel's and the Government's competing interests.  Indeed, in the face of these weighty government interests, Plaintiff's primary argument is that "[r]e-designating the 'Confidential' documents is necessary for Camel Group's counsel to litigate the action."  Pl. Br. at 11-14.  The Protective Order, and the attorneys'-eyes-only designation contained therein, strikes the appropriate balance.  It accommodates the Government's legitimate and well-founded concerns that disclosure to Camel could impede legitimate law enforcement efforts, *see* Ex. A. (Echeverria Decl.), with Camel's interest.

Plaintiff's counsel, in arguing for disclosure to Camel, claims that it would be able to obtain additional information to further explain evidence in those documents. Pl. Br. at 12-14. That additional information, however, could not be considered in this case. Indeed, "[u]nder the APA, judicial review of an agency decision is typically limited to the administrative record." *Kappos v. Hyatt*, 566 U.S. 431, 438 (2012). In fact, "there is no blanket obligation" even at the agency level "to allow the submission of rebuttal evidence" in informal adjudications. *Butte Cty. v. Chaudhuri*, 887 F.3d 501, 506 (D.C. Cir. 2018). Here, the administrative proceedings have concluded, and as Judge Katzmann noted, in addressing a nearly identical issue in *Ninestar*, "under this court's review for arbitrary and capricious action on an agency record, Plaintiff's counsel's request for client input is hardly essential when the client's input would largely constitute evidence from outside the record." *Ninestar*, 716 F. Supp. 3d at 1399, note 16.

Plaintiff's specific arguments on this point highlight the concern Judge Katzmann raised about extra-record evidence. Specifically, Plaintiff references [[



.]] Pl. Br. at 12. Plaintiff claims that [[

]] that is referenced in other public parts of the record. *Id.* Plaintiff's counsel claims that it must be able to share this information with Camel [[

]]. *Id.*

This additional information Camel would seek from its client [[                    ]] would necessarily involve evidence *outside* of the administrative record. As Judge Katzmann noted, this Court cannot review extra-record evidence in its consideration of whether the determination, based on the record, was arbitrary and capricious. *Ninestar*, 716 F. Supp. 3d at

1399, note 16. Similarly, Plaintiff's desire to [[████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████ ]], Pl. Br. at 11-12, would likewise involve evidence from outside the record which

cannot be considered in this case.

      Even if the need for rebuttal evidence could be a compelling interest in this record review

action, the fact that the FLETF considered Camel's participation in job fairs was made public in

the memoranda related to the FLETF's denial of Camel's removal request, AR000014,

AR002985. Specifically, the memorandum, much of which was filed publicly, notes that

"Camel Group had recruited and received [[████████]] through a state sponsored *job fair* for

surplus laborers operated by Toksun County government. (Attachment 14). Uyghurs, Kazakh,

or Kyrgyz villagers appear to have attended the fair. . . ." AR000014 (emphasis added); *see also*

AR002985. Camel, therefore, has all the information it needs to assist in its defense of the case

on that issue. And, even if it did not already know of the job fairs, Camel knows better than

anyone its operations, its workforce, any recruitment efforts (including participation in labor

transfer programs or job fairs), and the conditions on the ground in the PRC. Camel can provide

its counsel with information that would tend to negate the FLETF's conclusion—if any such

information exists. *See, e.g.*, *Reese v. Liberty*, 2019 WL 5549219, at *5 (D. Me. Oct. 25, 2019)

(concluding that the plaintiff in an excessive-force case had "not demonstrated a compelling

need to obtain or view" sensitive internal prison policies designated attorneys' eyes only "to

participate meaningfully in his case," given that plaintiff's counsel could consult with the

plaintiff "about his recollection of what transpired"). It need not hear the details of every

allegation in order to participate in the defense of its case.

Plaintiff further argues that the FLETF improperly translated Attachment 14. Pl. Br. at 12-13, note 8. But, any argument with respect to translations in the record is just that, an argument, and Camel's ability to defend its case is not in any way hindered because counsel cannot discuss that information with its client. Indeed, these are arguments that counsel can, and likely will, make before the Court when the parties submit motions for judgment on the agency record. That Camel, itself, has not reviewed the documents does not change that.

*    *    *

Therefore, the documents discussed above were properly identified as law enforcement sensitive, and an attorneys'-eyes-only designation appropriately balances Camel's interests with the Government's interests against disclosure.

## II. PUBLIC DISCLOSURE OF THE DOCUMENTS IS UNWARRANTED

The Court should also decline to make any of the information at issue available to the public. Disclosure of the record to the public would hamper the FLETF's law enforcement efforts by providing the public with the sources that the FLETF considers and thus a handbook for evading detection. *See In re Copley Press, Inc.*, 518 F.3d 1022, 1029 (9th Cir. 2008) (concluding that public disclosure was not warranted because it could endanger people). Although there is a preference to public disclosure with respect to agency action, the Government has established that the information at issue here is law enforcement sensitive and that a "Confidential," attorneys'-eyes-only designation is necessary. Moreover, Camel has failed to demonstrate a compelling need for this sensitive information to be disclosed beyond the attorneys for Camel.

Plaintiff claims that it "will suffer economic and reputational harm as a result of the 'confidential' designation." Pl. Br. at 14. Plaintiff further claims that these designations

20

"mislead[]" Camel's potential customers and the public into believing the FLETF, and prevents Camel from defending itself "with its own customers and the Court of public opinion." *Id.* These arguments do not support further disclosure to either Camel or the public. Indeed, the harm to Camel's reputation, if any, comes from the evidence that supports its inclusion on the UFLPA Entity List, not from the fact that certain law enforcement sensitive information has not been disclosed to Camel or the public. Notably, Plaintiff cites to no authority holding that a litigant's interest in rehabilitating its reputation overrides the Government's interest in protecting law enforcement sensitive information from public disclosure.

And, as explained above, there is nothing misleading, nor inconsistent, about the FLETF's designations in the administrative record. Moreover, the "Confidential" designation does nothing to prevent Camel, and its attorneys, from "meaningfully defending itself" in this record-review case. Pl. Br. at 14;[6] *see supra* at 19-20. The majority of the documents are public, and those documents that are designated as "Confidential" are PRC-origin open-source documents relied on by the FLETF. The public's perception of the evidence, however, is simply not relevant for assessing whether the protected information is law enforcement sensitive, and how to properly balance those interests with Camel's and the public's. Finally, that other agencies "have published investigative reports" using what Plaintiff characterizes as "similar"

---

[6] Plaintiff claims that, during the *Ninestar* litigation, "the Government itself implied public disclosure may be warranted where an entity provided 'evidence to the FLETF through its de-listing procedure – or to the public, for that matter.'" Pl. Br. at 15 (quoting *Ninestar Corp. v. United States*, 23-00182, ECF No. 86 at 17). Plaintiff takes this quote completely out of context. The Government made the statement in response to plaintiff's claim of reputational harm, noting that Ninestar was free to provide whatever information it wished, either in a request for removal or to the public. The Government did *not* state, imply or insinuate that if a request for removal is made, all documents relied on by the FLETF would become public. That the FLETF did not publicly disclose law enforcement sensitive information is certainly not "designed to prevent the public from learning of the flimsy basis and arbitrary and capricious process." Pl. Br. at 15. Plaintiff simply mischaracterizes the record and the proper confidentiality designations.

documents is likewise not relevant to this analysis or to the law enforcement interest at issue here.  Pl. Br. at 15.

Camel has, therefore, failed to demonstrate a compelling need for this sensitive information to be disclosed beyond the attorneys for Camel.

## **CONCLUSION**

For these reasons, we respectfully request that the Court deny Plaintiff's motion.

Respectfully submitted,

BRETT SHUMATE
Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

By:    /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE

/s/ Monica P. Triana
MONICA P. TRIANA
Senior Trial Counsel
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Room 346
New York, New York 10278
Tel. (212) 264-9240 or 9230
Date:  July 10, 2025          *Attorneys for Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Monica P. Triana, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the Government's memorandum in opposition to plaintiff's motion for *in camera* review and order to unredact and re-designate the administrative record, dated July 10, 2025, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 6,608 words.

/s/ MONICA P. TRIANA
MONICA P. TRIANA