# IN THE UNITED STATES
# COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CAMEL GROUP CO., LTD., | Case No.: 25-00022 |
| *Plaintiff*, | |
| v. | Hon. Lisa W. Wang |
| UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; FORCED LABOR ENFORCEMENT TASK FORCE; ALEJANDRO MAYORKAS, *in his official capacity as the Secretary of the Department of Homeland Security*; TROY A. MILLER, *in his official capacity as the Senior Official Performing the Duties of the Commissioner for U.S. Customs and Border Protection*; ROBERT SILVERS, *in his official capacity as Under Secretary for Office of Strategy, Policy, and Plans and Chair of the Forced Labor Enforcement Task Force*, | |
| *Defendants*. | |

**PLAINTIFF'S REPLY TO GOVERNMENT'S RESPONSE TO PLAINTIFF'S MOTION FOR *IN CAMERA* REVIEW AND ORDER TO UNREDACT AND RE-DESIGNATE THE ADMINISTRATIVE RECORD**

**PUBLIC VERSION**

PUBLIC VERSION

Pursuant to the July 14th Order of this Court (ECF 40), Plaintiff Camel Group Co., Ltd. ("Camel Group" or "Plaintiff") files this reply to Defendants, United States of America, *et. al.* (collectively, "Defendants" or "Government") response (ECF 37) to Camel Group's Motion for *In Camera* Review and Order to Unredact and Re-Designate the Administrative Record (ECF 31).

I. **The FLETF Will Not Suffer "Harm" to Investigative Sources and Methods If The Documents Are Re-Designated as "Camel Confidential" or "Public"**

In the May 10, 2025 Declaration by Department of Homeland Security, Office of Strategy, Policy and Plans, Office of Trade and Economic Security Director of Trade Policy Cynthia Echeverria ("Echeverria Declaration") (ECF 37-1), Director Echeverria claims that disclosing the documents presently designated as "Confidential" [[ ▮▮▮ ]] ECF 37-1, ¶ 16 (emphasis added). The Government's assertions, however, are entirely speculative and based on hypothetical actions that it alleges may occur under Chinese law if the documents are re-designated. The Government does not point to any actual situations of this happening, and instead it provides hypothetical and anecdotal examples of how the FLETF "would" be harmed if disclosure is made to Camel Group or the general public. *See* ECF 37, at p. 12.

In support of its alleged "harm" raised in the Echeverria Declaration ¶ 16, the Government only provides unsubstantiated and self-serving statements that [[ ▮▮▮ ]] ECF 37-1, ¶ 9. These vague

2

PUBLIC VERSION

"examples" provide no detail and read more like social media posts from DHS employees rather than actual, concrete evidence of [[ ▮▮▮▮▮ ]]. More importantly, the Government points to no actual scenario where this occurred in the specific context of Camel Group or its specific listing.

The Government is asking the Court to allow its "Confidential" designations to stand based entirely on speculative harm, anecdotal "evidence," and unsubstantiated fears.[1] The Court should not allow such speculative harm to be the basis for allowing the Government to designate anything it wants as "Confidential," because, as the Government as shown, it will abuse such designations to hide from public scrutiny the information it is relying on.

## II.  The Government's "Interest" Is Tarnished By Continued Inconsistencies in its Designations

If the Government is truly interested in protecting against any harm to FLETF's investigative sources and methods, then it should have taken greater care in consistently designating documents as "Confidential."  Unfortunately, the Government's Response demonstrates more inconsistencies in its designations and a departure from its own logic that further calls into question the legitimacy of its "interest" in protecting these documents and the perceived "harm" the FLETF would suffer if they are disclosed.

The Government states that a document is designated as "Confidential" if it is a PRC-origin document *and* the FLETF relied on it in its decision. ECF 37, at p. 14.  Based on this logic, a document like the WeChat Article, Attachment G to DHS's UFLPA Entity List Package

---

[1] While the Government attempts to rely on the decision in <u>Ninestar</u> to support its designations, <u>Ninestar</u> involved not only public source documents but the existence of an actual confidential informant.  Camel Group's listing does not involve confidential sources or informants and is based entirely on information available to the general public.  As such, the same types of harm and heightened risks to FLETF sources and methods that could come from disclosure in <u>Ninestar</u> do not exist in this case.

3

**PUBLIC VERSION**

(AR002765-AR002783), should have been marked as "Confidential" as it is a PRC-origin document and the FLETF clearly relied on it for its decision. The Government, however, designated it as "Public." The Government explains that it did so because the document was cited and separately disclosed in another non-PRC origin document, the February 2022 SHU Report (Attachment B to the UFLPA Entity List Package).[2] ECF 37, at p. 16. Presumably, the Government suggests this facts makes the document safe for a "Public" designation. *See* Id. Yet, the same Feb. 2022 SHU Report cites and separately discloses [[ ███████████████████████████████████████████████ ]] but the Government designated that document as "Confidential." Further, with respect to Attachment F (AR001785-AR002764), despite it being a non-PRC origin document, the Government states that its "Confidential" designation is supported because it contains PRC-based information that [[ ███████████████ ]] ECF 37, at p. 16. Yet, the Government ignores the fact that Attachment A (Camel Group website, AR001674-AR001675 and AR001676-AR001677), Attachment B (Feb. 2022 SHU Report; AR001678-AR001746), Attachment C (Camel Group IFC Project Information; AR001747-AR001750), and Attachment E (Spatial Results of the 2010 Census in Xinjiang;

---

[2] Laura T. Murphy et al., "Financing & Genocide, Development Finance and the Crisis in the Uyghur Region," The Atlantic Council (February 2022), which was Attachment B to DHS's UFLPA Entity List Package, AR001678-AR001746.

[3] [[ ███████████████████████████████████████████████ ]].

**PUBLIC VERSION**

AR001777-AR001784) are all non-PRC documents that are made up entirely or in part of PRC-based information and have all been designated as "Public."

With respect to Attachment 16 (AR002952-AR002967) and Attachment 17 (AR002968-AR002976), it is unclear whether the FLETF [[                    ]] and would even meet the Government's own "Confidential" criteria. [[

















]]  The manner in which the FLETF cites to these PRC-origin public source documents show that the FLETF may not [[

        ]], calling into question whether they should have been designated as "Confidential" in the first place.

These obvious inconsistencies make it difficult to follow the Government's logic as to why some PRC-origin documents, such as Attachment G (WeChat Article), which was relied on by the FLETF, are designated as "public," but others, such as Attachment D (AR001751-AR001761 (Chinese original) and AR001762-AR001776 (English translation)), Attachment H (AR002784-AR002791), Attachment 13 (AR002935-AR002941) and Attachment 14 (AR002942-AR002949), are designated as "Confidential." It also calls into question why the FLETF designated some non-PRC documents that contain PRC-based information as "Confidential" like Attachment F, but others are designated as "Public" like Attachment B. Furthermore, the Government does not appear to follow its own logic in that it designated Attachment 16 and Attachment 17 as "Confidential" despite never [[                         ]]. If the Government were

5

**PUBLIC VERSION**

truly concerned about the harm from disclosure, then the Government should have been more careful in designating documents that have identical attributes but are designated differently.

Even more significant, the Government's convenient choice of designating as "Public" only the most accusatory information about Camel Group, while withholding as "Confidential" similar information that would demonstrate to the public how porous the claims against Camel Group were, only further calls into question the Government's motives in designating records within the Administrative Record. These inconsistent designations and failure to follow its own logic calls into question whether the Government is concerned about actual harm to its investigative sources and methods, or if it just seeks to control the narrative and shield from public scrutiny the embarrassingly thin public record it used to target and punish Camel Group.

**III.    Camel Group Will Continue to Suffer Harm If the Inconsistent Designations Stand**

In response to Plaintiff's concern that the Government's inconsistent designations cause harm to Camel Group's counsel ability to communicate with their own client, the Government simply states that, [[ ███████████████████████████████████████████████████████████████████████ ]] ECF 37, at p. 16. Even this completely artificial distinction causes more problems than it solves. [[ ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ ]]

**PUBLIC VERSION**

▮▮▮

]]? The point here is that while the Government's intent is to create a clear red line rule, the "rule" actually raises more questions and discourages Camel Group's counsel as well as Camel Group from communicating with its client and customers about critical documents and facts.

Moreover, this conundrum also extends to Attachment 13 (AR002935-AR002941) and Attachment 14 (AR002942-AR002949). These documents, again, are *publicly available, PRC-origin documents* that Camel Group is capable of finding through its own efforts. What if Camel Group finds these documents and sends them to Camel Group's counsel? Can Camel Group's counsel acknowledge their existence, which could reveal that Camel Group has identified one of the FLETF's "Confidential" documents, or must Camel Group hide these facts from its own clients in order to preserve this thin veil of secrecy? These are the very real scenarios that the Government has put Camel Group and its counsel in as a result of the Government's designations, and it will undoubtedly cause harm to Camel Group's counsel's ability to discuss the evidence relied on by FLETF in its decision making with its client. This evidence is necessary to share with Camel Grout not only to prosecute this case but to evaluate what steps can be taken in seeking removal

---

[4] [[▮▮▮]]

[5] [[▮▮▮]]

**PUBLIC VERSION**

from the list in the future or responding to inquiries from U.S. Customs and Border Patrol agents. The current designations ultimately impede Camel Group's ability to receive due process and adequate representation in this matter. The Government's artificial rules on what is "Confidential" and where the line is regarding what can be disclosed puts Camel Group's counsel into a smaller and smaller box and has a chilling effect on how Camel Group's counsel can interact with its client throughout this litigation. It would also impact on how Camel Group can interact with its customers and the Government in the future. The Government's interest cannot extend so far as to allow significant harm to the due process, fair trial, and reputational rights of Camel Group. The only way to resolve these concerns is to re-designate these documents as "Public" or at least, "Camel Confidential."

Lastly, the Government likes to echo the point that only these eight documents are "Confidential" while majority of the Administrative Record is "Public," and therefore this somehow does not impeded Camel Group's ability to litigate this case. ECF 37, at pp. 9-10, 25. This clearly cannot be the standard for matters as important as the one before this Court. Not only does it ignore the reality that the Government has kept secret from the public the very evidence that shows the FLETF's case against Camel Group was weak, but it creates the perception that these documents have some greater importance, as they may have in Ninestar, but not here. Further, the eight documents designated as "Confidential" are just as if not more important to Camel Group's ability to litigate this matter. These are the only documents that the FLETF has refused to disclose to Camel Group, and, as a result, are the only documents that remain undisputed in the Administrative Record. Not being able to share and discuss these documents with Camel Group will put Plaintiff at a significant disadvantage in this litigation. The fact that the majority of the Administrative Record is "Public" is irrelevant to the Government's decision to deny Camel Group and the public access to these eight documents. The validity of the designation and whether

**PUBLIC VERSION**

the Government has substantiated its legal burden to withhold such information from the public record are the only facts that matter. In this case, it appears that the Government's "interest" is more about operating in the shadows, away from public scrutiny, instead of protecting sources and methods, which *are already publicly available*.

**IV.     The Government Continues to Mischaracterize Chinese Law**

Unsurprisingly, the Government advances the same flawed analysis on Chinese law that Plaintiff pointed out to the Court in its last submission. *See* ECF 31, at pp. 17-18. However, this time, the Government takes its incorrect assessment of Chinese law even further by stating, without any support, that PRC law somehow has a notification requirement that would obligate Camel Group to proactively share materials with the Chinese government. *See* ECF 37, at pp. 17-18. Not even the Echeverria Declaration goes that far, which only points out that a PRC company may have an obligation to assist the PRC government with an investigation. Both the Echeverria Declaration and the Government fail to mention whether this obligation would be in response to a formal request, similar to a U.S. entity having an obligation to respond to a subpoena issued by the U.S. Department of Justice. The Government also provides no citation to *any* of the PRC laws it refers to and it provides no legal basis under Chinese law that would require Camel Group to provide documents to the PRC government without such a specific, formal request. Instead, Chinese laws like the PRC Data Security Law provide that the obligation only arises in specific situations, like when an entity wishes to transfer Chinese-origin data across borders to a foreign government. In those situations, the PRC entity would have an obligation to proactively report that to and obtain approval from the Chinese government. *See, e.g.,* PRC Data Security Law, Art. 36. That is clearly not the case here. The Government exaggerates Camel Group's obligations under Chinese law to imply that there is a heightened risk to these documents, but has not pointed to any specific law or mechanism where Camel Group would be required to give those documents to the

9

**PUBLIC VERSION**

PRC government without any specific demand or formal request first. If the Government truly wishes to base its position on this issue of Chinese law, it should give notice under USCIT Rule 44.1 and allow the parties to properly brief the Court on this issue of foreign law rather than relying on a self-serving declaration from someone who is not a Chinese law expert or a licensed Chinese attorney. *See* USCIT Rule 44.1.

## V. Conclusion

The Government's inconsistent designations show that it is not concerned about any real "harm" to the FLETF's investigative sources and methods, but rather that it is keen on hiding from both Camel Group and the general public the fact that FLETF relied on materials that neither implicate Camel Group in forced labor activities directly nor make any connection between Camel Group and forced labor activities in Xinjiang. The Government's evidence should face public scrutiny and Camel Group should have the right to explain to the public why the FLETF added Camel Group to the UFLPA Entity List. Therefore, Plaintiff respectfully requests this Court grants its motion (ECF 31) for an *in camera* review, and following such in camera review, order the Government to unredact and re-designate the "Confidential" documents and information as "Camel Confidential" or "Public."

Respectfully submitted,

*/s/ Mark V. Heusel*
Mark V. Heusel
Jacob L. Clark
DICKINSON WRIGHT PLLC
350 S. Main Street, Suite 300
Ann Arbor, MI 48104
(734) 623-1908
*Attorneys for Plaintiff*

**DATE:** July 18, 2025

10

**CERTIFICATION OF COMPLIANCE**

I, Mark V. Heusel, a member at the law firm Dickinson Wright PLLC, who is the lead counsel and counsel of record on behalf of Plaintiff Camel Group Co. Ltd and is responsible for Plaintiff's reply to the Government's response to Plaintiff's motion for *in camera* review and order to unredact and re-designate the administrative record, dated July 18, 2025, relying upon the word count feature of the word processing program used to prepare the reply brief, certify that this reply complies with the word count limitation pursuant to the Court's July 14th Order (ECF 40), and contains 2,852 words including footnotes.

*/s/ Mark V. Heusel*
MARK V. HEUSEL