# IN THE UNITED STATES
# COURT OF INTERNATIONAL TRADE

CAMEL GROUP CO., LTD.,

          *Plaintiff*,

v.

UNITED STATES OF AMERICA;
DEPARTMENT OF HOMELAND
SECURITY; UNITED STATES
CUSTOMS AND BORDER
PROTECTION; FORCED LABOR
ENFORCEMENT TASK FORCE;
ALEJANDRO MAYORKAS, *in his
official capacity as the Secretary of the
Department of Homeland Security*;
TROY A. MILLER, *in his official
capacity as the Senior Official Performing
the Duties of the Commissioner for
U.S. Customs and Border Protection*;
ROBERT SILVERS, *in his official capacity
as Under Secretary for Office of Strategy,
Policy, and Plans and Chair of the Forced
Labor Enforcement Task Force*,

          *Defendants*.

Case No.:  25-00022

Hon. Lisa W. Wang

---

## PLAINTIFF'S RULE 56.1 MOTION FOR JUDGMENT ON THE AGENCY RECORD

## PUBLIC VERSION

**PUBLIC VERSION**

# IN THE UNITED STATES
# COURT OF INTERNATIONAL TRADE

CAMEL GROUP CO., LTD.,

     *Plaintiff,*

v.

UNITED STATES OF AMERICA;
DEPARTMENT OF HOMELAND
SECURITY; UNITED STATES
CUSTOMS AND BORDER
PROTECTION; FORCED LABOR
ENFORCEMENT TASK FORCE;
ALEJANDRO MAYORKAS, *in his
official capacity as the Secretary of the
Department of Homeland Security*;
TROY A. MILLER, *in his official
capacity as the Senior Official Performing
the Duties of the Commissioner for
U.S. Customs and Border Protection*;
ROBERT SILVERS, *in his official capacity
as Under Secretary for Office of Strategy,
Policy, and Plans and Chair of the Forced
Labor Enforcement Task Force*,

     *Defendants*.

Case No.: 25-00022

Hon. Lisa W. Wang

---

## PLAINTIFF'S RULE 56.1 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to USCIT R. 56.1 and the Court's June 26, 2025 Scheduling Order (ECF 34), Plaintiff Camel Co., Ltd. ("Camel") respectfully moves for disposition on its claims against Defendants United States of America, U.S. Department of Homeland Security ("DHS"), U.S. Customs and Border Protection ("CBP"), Forced Labor Enforcement Task Force ("FLETF"), Alejandro Mayorkas, in his former official capacity as the Secretary of the DHS, Troy A. Miller, in his former official capacity as the Senior Official Performing the Duties of the Commissioner for CBP, and Robert Silvers, in his former official capacity as DHS Under Secretary for Office of

**PUBLIC VERSION**

Strategy, Policy, and Plans and Chair of FLETF (collectively, "Defendants") ("Motion").  A brief

in support of this Motion and Proposed Order is provided below.

Respectfully submitted,

*/s/ Mark V. Heusel*
Mark V. Heusel
Jacob L. Clark
DICKINSON WRIGHT PLLC
350 S. Main Street, Suite 300
Ann Arbor, MI 48104
(734) 623-1908
*Attorneys for Plaintiff*

**DATE:**  September 29, 2025

# IN THE UNITED STATES
# COURT OF INTERNATIONAL TRADE

CAMEL GROUP CO., LTD.,

        *Plaintiff*,

v.

UNITED STATES OF AMERICA;
DEPARTMENT OF HOMELAND
SECURITY; UNITED STATES
CUSTOMS AND BORDER
PROTECTION; FORCED LABOR
ENFORCEMENT TASK FORCE;
ALEJANDRO MAYORKAS, *in his
official capacity as the Secretary of the
Department of Homeland Security*;
TROY A. MILLER, *in his official
capacity as the Senior Official Performing
the Duties of the Commissioner for
U.S. Customs and Border Protection*;
ROBERT SILVERS, *in his official capacity
as Under Secretary for Office of Strategy,
Policy, and Plans and Chair of the Forced
Labor Enforcement Task Force*,

        *Defendants*.

Case No.:  25-00022

Hon. Lisa W. Wang

---

## PLAINTIFF'S BRIEF IN SUPPORT OF RULE 56.1 MOTION FOR JUDGMENT ON THE AGENCY RECORD

## PUBLIC VERSION

PUBLIC VERSION

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................ i

**TABLE OF AUTHORITIES** ....................................................................................... iv

**TABLE OF ABBREVIATIONS** ................................................................................ viii

**I.  INTRODUCTION** ....................................................................................................1

**II.  FACTUAL BACKGROUND** ...................................................................................2

   **A.  Camel Background** ...........................................................................................2

   **B.  §307, FLETF, and The Uyghur Forced Labor Prevention Act** ....................3

   **C.  The SHU Reports** .............................................................................................4

   **D.  Successful Releases from CBP UFLPA-related Detentions** ...........................5

   **E.  The August 2, 2023 Listing Decision and Camel's Removal Petition**...........7

   **F.  FLETF's Conflict of Interest** ...........................................................................9

   **G.  FLETF Questions, Camel's Responses and the "Listening Session"**..........10

   **H.  FLETF's Decision on Camel's Removal Petition**........................................11

   **I.  Procedural History** .........................................................................................13

   **J.  Camel's AR** .....................................................................................................14

**III.  LEGAL STANDARD** ............................................................................................15

**IV.  RULE 56.1 STATEMENT** ......................................................................................15

   **A.  Administrative Determination to be Reviewed** ............................................15

   **B.  Issues of Law and Summary of Reasons Contesting the Administrative Determination**...................................................................................................16

      *i.*    *Is the Removal Decision "arbitrary and capricious" because it is not supported by substantial evidence?* ................................................................16

      *ii.*   *Is the Removal Decision "arbitrary and capricious" because it is not supported by an adequate, reasoned explanation?*....................................17

      *iii.*  *Did FLETF exceed its statutory authority by denying Camel's Removal Request based on the "reasonable cause to believe" standard?* .........................................17

**PUBLIC VERSION**

    *iv.*   *Did FLETF's failure to disclose its conflict of interest and actions during the administrative process harm Camel's right to due process?* ................................18

    v.   *Is vacatur the appropriate remedy?* ..................................................19

**C. Request for Court Order and Relief Sought** ................................................19

**V.  ARGUMENT** ..........................................................................................................19

  **A. FLETF's Removal Decision is Arbitrary and Capricious Because it is Not Supported by Substantial Evidence** ..................................................................19

    i.   <u>FLETF's conclusion that Camel "recruited, transported, harbored, or received" Uyghurs or any other persecuted group is not supported by substantial evidence</u> ..........................................................................................................21

        1.  *Determination that Camel participated in the Labor Transfer Program is not supported by substantial evidence* ..................................................21

        2.  *New social media reports of [[                     ]] are not evidence of participation in the Labor Transfer Program or otherwise connected to forced labor and rests on a "mistaken notion"* ..........24

    ii.  <u>FLETF's determination that Camel transferred individuals outside of XUAR is not supported by substantial evidence</u> ........................................................28

    iii. <u>FLETF's determination that the Labor Transfer Program is ongoing is not supported by substantial evidence</u> ........................................................29

  **B. FLETF's Removal Decision is Not Supported by an Adequate, Reasoned Explanation** ..........................................................................................................31

    i.   <u>FLETF failed to explain why it found Camel's evidence "not credible and unreliable"</u> ..........................................................................................................32

        1.  *FLETF failed to explain why the [[              ]], Toksun County SSHR Letter and Sina Article were "not credible and unreliable"* ............................32

        2.  *FLETF failed to explain why Camel's employee lists, declarations, internal policies, and customer letters were "not credible and unreliable"* ..................33

        3.  *FLETF failed to consider CBP's previous decisions that Camel's products were not subject to the UFLPA* ..........................................................34

PUBLIC VERSION

ii.    FLETF failed to explain why it relies on the WeChat Post, SHU Reports, and social media reports despite contradictory evidence on the record .......................35

iii.    FLETF failed to explain why it believes the Labor Transfer Program is ongoing and that Camel is still participating in the Labor Transfer Program.....................35

iv.    FLETF failed to explain why it believes Camel "recruited, transferred, or harbored" laborers "out of XUAR" .......................................................36

v.    FLETF's recitation of the UFLPA is not a "reasoned explanation"......................36

C. **FLETF Exceeded its Statutory Authority by Applying the Wrong Standard of Proof to its Removal Decision** ........................................................37

i.    The UFLPA does not specify the burden of proof for removal decisions .............37

ii.    Where a statute is silent, the APA requires at least a "preponderance of evidence" standard ..........................................................................38

iii.    The UFLPA provides a higher standard for removal decisions............................39

iv.    §307 points to a higher standard for UFLPA removal decisions...........................40

v.    A "Preponderance of Evidence" standard for UFLPA removal decisions does not conflict with Ninestar, §307 enforcement, or the purpose of the UFLPA .............41

vi.    FLETF exceeded its authority because Camel does not meet the statutory criteria ..................................................................................43

D. **FLETF's Failure to Disclose its Conflict of Interests and Actions During the Delisting process Harmed Camel's Right to Due Process** ...............................43

i.    FLETF failed to disclose and explain the conflict of interest with DHS PLCY Policy Adviser, Dr. Laura Murphy ...............................................44

ii.    FLETF's actions show that the Government never intended to provide Camel a fair process ....................................................................45

E. **The Appropriate Remedy is to Vacate the Removal Decision, Remand, and Remove Camel from the UFLPA List**................................................46

VI. **CONCLUSION** ...................................................................47

PUBLIC VERSION

## <u>TABLE OF AUTHORITIES</u>

**LAWS, STATUTES AND REGULATIONS**

15 C.F.R. § 744.11 ............................................................................................41

5 U.S.C. § 704.........................................................................................19, 20, 39

5 U.S.C. § 706 .................................................15, 24, 29, 31, 36, 37, 43, 44, 46

19 U.S.C. § 4681 ................................................................................................3

28 U.S.C. § 1581 ..............................................................................................15

*Administrative Procedures Act*, 5 U.S.C. §§ 551–559, Pub. L. 79-404, 60 Stat. 237 (1967)................................................1, 15, 17, 19, 32, 33, 38, 39, 43, 46, 47

*Freedom of Information Act*, 5 U.S.C. §§ 552, *et. seq.*, Pub. L. 89-487, 80 Stat. 250 (1967)........................................................................................................7

*Establishment of the Forced Labor Enforcement Task Force Under Section 741 of the United States-Mexico-Canada Agreement Implementation Act*, Exec. Order No. 13, 923, 85 Fed. Reg. 30, 587.............................................................................................................3

*ILO Forced Labor Convention (No. 29)*, 39 U.N.T.S. 55 (entered into force May 1, 1932) ........25

*Notice on the Addition of Entities to the Uyghur Forced Labor Prevention Act Entity List*, 87 Fed. Reg. 47777, 47778 (Aug. 4, 2022)..........................................................................3

*Notice Regarding the Uyghur Forced Labor Prevention Act Entity List*, 88 Fed. Reg. 50902, 50904 (Aug. 2, 2023) ...............................................................7, 16, 38, 40, 41

*PRC Data Security Law* (中华人民共和国数据安全法) (*Zhonghua Renmin Gongheguo Shuju Anquan Fa*), Standing Committee of the National People's Congress, adopted on June 10, 2021 and promulgated on September 1, 2021, (last access on June 15, 2025), available at https://www.gov.cn/xinwen/2021-06/11/content_5616919.htm (CN) and http://www.npc.gov.cn/englishnpc/c2759/c23934/202112/t20211209_385109.html (EN)........... 9

*Section 307 of the Tariff Act of 1930*, 19 U.S.C. § 1307, Pub. L. 106-200, 46 Stat. 689 (1930)....................................................................................3, 18, 40, 41, 42

*The Uyghur Forced Labor Prevention Act*, Pub. L. 117-78, 135 Stat. 1525 (2021)..................................... 1, 3-7, 9, 10, 13, 15-18, 26-32, 34, 36-43, 46, 47

*United States-Mexico-Canada Agreement Implementation Act*, Pub. L. No. 116-113, 134 Stat. 11 (2020)..............................................................................................3

iv

**PUBLIC VERSION**

## RULES

USCIT R. 56.1 ...................................................................................................................15

## CASES

*Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343 (D.C. Cir. 2014)...............................32, 36

*Andaman Seafood Co. v. United States*, 35 C.I.T. 451 (2011) ......................................26

*Aqua Prods., Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017)..............................31, 33, 35

*Bennett v. Spear*, 520 U.S. 154 (1997) ....................................................................20, 39

*Broadcom Corp. v. Int'l Trade Comm'n*, 28 F.4th 240 (Fed. Cir. 2022) .......................19

*Clarke v. Commodity Futures Trading Comm'n*, 74 F.4th 627 (5th Cir. 2023)...........34, 35, 37

*Commc'ns Workers of Am. Loc. 4123 ex rel. AT&T Servs., Inc. v. U.S. Sec'y of Lab.*, 518 F.Supp.3d 1342 (Ct. Int'l Trade 2021)....................................................................................22

*Circus Circus Casinos, Inc. v. NLRB*, 961 F.3d 469 (D.C. Cir. 2020) .......................20, 23, 28, 32

*CS Wind Vietnam Co. v. United States*, 832 F.3d 1367 (Fed. Cir. 2016) ................28, 36

*Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891 (2020)...............36

*Dickson v. Sec'y of Def.*, 68 F.3d 1396 (D.C. Cir. 1995) ..............................................36

*Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226 (5th Cir. 2022) ................43

*Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*, 881 F.3d 1354 (Fed. Cir. 2018) .........31

*Gov't of Argentina v. United States*, 542 F.Supp.3d 1380 (Ct. Int'l Trade 2021) ...................28, 33

*Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786 (6th Cir. 2018) ........................................39

*Husteel Co. v. United States*, 426 F.Supp.3d 1376 (Ct. Int'l Trade 2020) ...........20, 21, 22, 23, 33

*Ilunga v. Holder*, 777 F.3d 199 (4th Cir. 2015)..........................................................32

*In re Google*, 56 F.4th 1363 (Fed. Cir. 2023) .................................................22, 25, 34

*Invenergy Renewables LLC v. United States*, 476 F.Supp.3d 1323 (Ct. Int'l Trade 2020)...........46

*Kadi v. Geithner*, 42 F.Supp.3d 1 (D.D.C. 2012) ........................................................41

*Larson v. Dep't of the Army*, 260 F.3d 1350 (Fed. Cir. 2001)......................................28

**PUBLIC VERSION**

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ................................................15, 20, 32

*Luokung Tech. Corp. v. Dep't of Def.,* 538 F.Supp.3d 174 (D.D.C. 2021).......................24, 31, 43

*Michigan v. EPA*, 576 U.S. 743 (2015) ..........................................................................................29

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29 (1983).............................................................................................................................15, 31

*Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68, 85 (D.C. Cir. 2020)...........................................47

*NEXTEEL Co. v. United States*, 28 F.4th 1226 (Fed. Cir. 2022)...................................................20

*Ninestar Corp. v. United States,* 687 F. Supp. 3d 1308 (Ct. Int'l Trade 2024) ........................................................13, 26, 29, 30, 37, 38, 39, 40, 41, 42, 45

*Nippon Steel Corp. v. United States*, 458 F.3d 1345 (Fed. Cir. 2006)...........................................20

*Rodriguez v. Dep't of Veterans Affs.*, 8 F.4th 1290 (Fed. Cir. 2021)......................................38, 39

*Royal Brush Mfg., Inc. v. United States*, 75 F.4th 1250 (Fed. Cir. 2023)......................................45

*Sasol N. Am. Inc. v. NLRB*, 275 F.3d 1106 (D.C. Cir. 2002)....................................................24, 25

*Seneca Foods Corp. v. United States*, 663 F.Supp.3d 1325 (Ct. Int'l Trade 2023) .......................15

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032 (D.C. Cir. 2021) ........47

*Steadman v. S. E. C.,* 450 U.S. 91 (1981) .........................................................................15, 37, 38

*Tourus Recs., Inc. v. Drug Enf't Admin.*, 259 F.3d 731 (D.C. Cir. 2001)......................................31

*United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279 (D.C. Cir. 2019) ....................46, 47

*U.S. Steel Corp. v. United States*, 35 C.I.T. 651 (2011) ...............................................22, 25, 26, 27

*Van Trinh v. U.S. Sec'y of Agr.,* 29 C.I.T. 1058 (2005) ....................................................20, 27, 46

*Xiaomi Corp. v. Dep't of Def.*, No. CV 21-280 (RC), 2021 WL 950144 (D.D.C. Mar. 12, 2021)...............................................................................................................27, 28

*Zhejiang Mach. Imp. & Exp. Corp. v. United States*, 471 F.Supp.3d 1313 (Ct. Int'l Trade 2020)............................................................................................................20, 23

**OTHER MATERIALS**

[ ███████████████████████████████████████████████████████ ] .......................24, 25, 26, 27

**PUBLIC VERSION**

PRC National Bureau of Statistics, "China Statistical Yearbook 2021," *Sec. 2-22 Population Based on Ethnic Groups and Gender*, China Statistics Press, 2021, available at https://www.stats.gov.cn/sj/ndsj/2021/indexeh.htm ...........................................................23, 24



]]....................................27

[
]]....................................24, 27

PUBLIC VERSION

## <u>TABLE OF ABBREVIATIONS</u>

Below is a list of abbreviations used in Plaintiff's Brief in Support of the Rule 56.1 Motion for Judgment on the Agency Record provided for the convenience of the reader:

| Abbreviation Used | Full Meaning |
|---|---|
| *UFLPA* | *The Uyghur Forced Labor Prevention Act*, Pub. L. No. 117-78, 135 Stat. 1525 (2021) |
| *PRC or China* | People's Republic of China |
| *XUAR* | Xinjiang Uygur Autonomous Region, PRC |
| *§307* | *Section 307 of the Tariff Act of 1930*, 19 U.S.C. § 1307, Pub. L. 106-200, 46 Stat. 689 |
| *APA* | *Administrative Procedures Act*, 5 U.S.C. §§ 551–559, Pub. L. No. 79-404, 60 Stat. 237 |
| *Camel* | Camel Group Co., Ltd. |
| *Camel Energy* | Camel Energy, Inc. |
| *Camel Renewable* | Camel Group Xinjiang Renewable Resources Co., Ltd. (骆驼集团新疆再生资源有限公司) |
| *Camel Storage Battery* | Camel Group Xinjiang Storage Battery Co., Ltd. (骆驼集团新疆蓄电池有限公司) |
| *Camel Xinjiang Entities* | Refers to Camel Renewable and Camel Storage Battery |
| *FLETF* | U.S. Forced Labor Enforcement Task Force |
| *CBP* | U.S. Customs and Border Protection |
| *CEE* | U.S. Centers of Excellence and Expertise |
| *DHS* | U.S. Department of Homeland Security |
| *DHS PLCY* | U.S. Department of Homeland Security, Office for Strategy, Policy and Plans |
| *SHU* | Sheffield Hallam University Helena Kennedy Centre for International Justice |

PUBLIC VERSION

| | |
|---|---|
| *State* | U.S. Department of State |
| *Labor* | U.S. Department of Labor |
| *Justice* | U.S. Department of Justice |
| *Commerce* | U.S. Department of Commerce |
| *USTR* | United States Trade Representative |
| *Treasury* | U.S. Department of the Treasury |
| *Listing Decision* | References FLETF' decision to add Camel to the UFLPA List and the *Notice Regarding the Uyghur Forced Labor Prevention Act Entity List*, 88 Fed. Reg. 50902, 50904 (Aug. 2, 2023), which contained the public announcement of the FLETF's decision to add Camel to the UFLPA List. |
| *Removal Decision* | FLETF's vote to deny Camel's Removal Petition and July 9th Decision Letter from U.S. Dep't of Homeland Sec., Off. of Strategy, Policy, & Plans to Mark V. Heusel, Dickinson Wright PLLC (July 9, 2024): *The Forced Labor Enforcement Task Force's Decision Regarding Camel Co., Ltd's Request for Removal from the Uyghur Forced Labor Prevention Act,* which was the formal communication and "explanation" of FLETF's decision to deny Camel's Removal Petition (AR002977-AR002979) |
| *Removal Petition* | Letter from Mark V. Heusel, Dickinson Wright PLLC, to Robert Silvers, Under Sec'y of Homeland Sec., Off. of Strategy, Policy, and Plans (November 7, 2023): *Camel Group Co. Ltd. UFLPA List Removal Request Petition (and Exhibits 1-31)* (AR000024-AR001283) |
| *FLETF Questions* | Forced Labor Enforcement Task Force, Questions to Camel Group Co. Ltd. (December 14, 2023) (AR001284-AR001287) |
| *Camel's Responses* | Letter from Mark V. Heusel, Dickinson Wright PLLC, to Robert Silvers, Under Sec'y of Homeland Sec., Off. of Strategy, Policy, and Plans (March 1, 2024): Camel Co. Ltd. Responses to FLETF Questions (with Attachments 1-10) (AR001293-AR001637) |
| *SHU Feb. 2022 Report* | Laura T. Murphy et. al., *Financing & Genocide, Development Finance and the Crisis in the Uyghur Region*, The Atlantic Council (February 2022), https://www.atlanticcouncil.org/wpcontent/uploads/2022/02/Financing__Genocide.pdf  (AR001007-AR001076; AR001678-AR001746) |
| *SHU Dec. 2022 Report* | Laura Murphy, et al., *Driving Force: Automotive Supply Chains and Forced Labor in the Uyghur Region,* Sheffield Hallam University Helena Kennedy |

**PUBLIC VERSION**

| | |
|---|---|
| | Centre for International Justice, NomoGia, December 2022, available at https://www.shu.ac.uk/helena-kennedy-centre-internationaljustice/research-and-projects/all-projects/driving-force (AR001091-AR001169) |
| *SHU May 2023 Report* | Sheffield Hallam University Helena Kennedy Centre for International Justice, "Products Made with Forced Labor in the Uyghur Region," Evidence Briefs, Issue Brief No. 3, (May 2023), https://www.shu.ac.uk/helena-kennedy-centre-international-justice/research-andprojects/all-projects/evidence-briefs (AR001170-AR001179) |
| *SHU Reports* | Collectively, the SHU Feb. 2022 Report, SHU Dec. 2022 Report, and SHU May 2023 Report |
| *Labor Transfer Program* | Notice of the Three-year Plan for the Autonomous Prefecture to Promote the Organized Transfer and Employment of Urban and Rural Surplus Labor Forces in Kashgar, Hotan Region (2017-2019)" (《自治州推进喀什和田地区城乡富余劳动力有组织转移就业三年规划 (2017-2019年)》的通知) and the activities associated with this program. |
| *Labor Transfer Program Regulations* | Regulations Associated with the Three-year Plan for the Autonomous Prefecture to Promote the Organized Transfer and Employment of Urban and Rural Surplus Labor Forces in Kashgar, Hotan Region (2017-2019) (《自治州推进喀什和田地区城乡富余劳动力有组织转移就业三年规划 (2017-2019年)》 (AR001077-AR001076) [[▮▮▮▮▮▮▮▮▮▮▮▮▮▮]] |
| *WeChat Post* | Toksun Public Employment Service Center, (《托克逊就业服务》), "Toksun County holds the handover ceremony for the urban and rural surplus labor enterprises in Kashgar and Hotan areas" (《托克逊县举行喀什、和田地区城乡富余劳动力企业上岗交接仪式》), Toksun County, XUAR Bureau of Social Security and Human Resources, WeChat (Tencent) (July 10, 2017), https://archive.ph/nC4Xt (AR001085-AR001090; AR002765-AR002783) |
| *Sina Article* | Yaxin Net (《亚心网》), "Toksun County, Xinjiang holds a handover ceremony for surplus labor entities" (《新疆托克逊县举行富余劳动力企业上岗交接仪式》), Sina News Network (《新浪新闻》), July 12, 2017, available at https://news.sina.com.cn/o/2017-07-12/doc-ifyhwehx572486.shtml (AR001194-AR0011990) [[▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮]] |
| *FOIA* | Freedom of Information Act, 5 U.S.C. §§ 552, Pub. L. No. 89-487, 80 Stat. 250 |
| *FOIA Request* | FOIA Request No. 2023-HQFO-02158 |

**PUBLIC VERSION**

| | |
|---|---|
| *AR or Public AR* | Public Administrative Record (ECF 19) |
| *CAR* | Confidential Administrative Record (ECF 26-28) |
| *Camel CAR* | Camel Confidential Administrative Record (ECF 29) |
| *Toksun SSHR* | Toksun County Bureau of Social Security and Human Resources, a local government agency affiliated Toksun County, XUAR, PRC |
| *Sept. 4 Memo* | Memorandum from Robert Silvers, Under Sec'y of Homeland Sec., Off. of Strategy, Policy, and Plans, *Forced Labor Enforcement Task Force Denial of Camel Group Co., Ltd. Request for Removal the Uyghur Forced Labor Prevention Act Entity List* (September 4, 2024) (AR000010 - AR000016) |
| *July 2024 Memo* | Memorandum from U.S. Dep't of Homeland Sec., Off. of Strategy, Policy, & Plans (July 26, 2024): *Memorandum for Forced Labor Enforcement Task Force Paper Vote on Removal Request RR23-003* (AR002980-AR002987) |
| *July 2023 Memo* | **Attachment 11:** Uyghur Forced Labor Prevention Act (UFLPA) Entity List Package 23-004 from U.S. Dep't of Homeland Sec. to Forced Labor Enforcement Task Force (AR001644 – AR001650) and Memorandum from Robert Silvers, Under Sec'y of Homeland Sec., Off. of Strategy, Policy, and Plans, *Forced Labor Enforcement Task Force Addition of Camel Group Co., Ltd. to the Uyghur Forced Labor Prevention Act Entity List* (July 26, 2023) (AR001651-AR001652) |
| *USMCA Implementation Act* | *United States-Mexico-Canada Agreement Implementation Act*, Pub. L. No. 116-113, 134 Stat. 11 (2020) |

PUBLIC VERSION

## I.    <u>INTRODUCTION</u>

"Arbitrary and capricious.".  There are no more apt words to describe FLETF's Removal Decision and UFLPA removal process.    Throughout the administrative proceedings: FLETF refused to disclose the evidence it relied on in adding Camel to the UFLPA List; FLETF refused to disclose the standards it used to evaluate Camel's removal petition, and then incorrectly applied the legal standard it had applied for the Listing Decision;   FLETF ignored contradictory evidence on the record and summarily dismissed it as "not credible and insufficient" without any explanation whatsoever;  FLETF hired the author of the reports it used against Camel as an advisor mere days after Camel submitted its Removal Petition, refused to disclose whether this person was involved in Camel's removal process, and then proceeded to rely on her insight to deny Camel's Removal Petition;  and FLETF refused to disclose Camel's AR and forced Plaintiff to unnecessarily exert time and resources to simply discover why it was added to the UFLPA List. Then, when the government finally produced the AR in this case, Defendants intentionally designated key public documents as "confidential," effectively prohibiting Plaintiff's counsel from discussing material evidence with its client and ensuring that Plaintiff's disadvantage continued through litigation.

FLETF's final decision was based on "mere speculation," its own "mistaken notions" and conclusions unsupported by substantial evidence on the record and devoid of any explanation.  The APA demands that final agency actions, like FLETF's Removal Decision, be supported by substantial evidence and a reasoned explanation.  In this case, FLETF's arbitrary and capricious delisting process and Removal Decision is plainly unlawful under the APA and should be vacated and remanded for further consideration by the court.

PUBLIC VERSION

## II.    FACTUAL BACKGROUND

### A.  Camel Background

Camel Group Co. Ltd. ("Camel") is a listed company on the Shanghai Stock Exchange (Stock No.: 601311) and offers over 400 different battery-related products for internal combustion engine and pure electric models.  Together with its subsidiaries, Camel employs more than 7,200 people in manufacturing and R&D Centers also located around the world, including in the U.S. For years, Camel, through its subsidiaries, has conducted systematic and continuous business in the U.S. by importing and selling millions of batteries and related components into the U.S. market.

Over the prior eight years, Camel's wholly-owned U.S. subsidiary, Camel Energy, Inc. ("Camel Energy"), has invested millions of dollars in a sales and logistics center in Ann Arbor, Michigan.  In February 2022, Camel Energy, through Camel, opened a manufacturing facility in Battle Creek, Michigan.  Both investments have created significant jobs in the U.S.  Prior to being listed, Camel, individually and through its U.S. subsidiaries, conducted over USD $100 million in systematic and continuous business in the U.S. market, including over USD $75 million in gross sales in 2022.  After Camel's listing, however, its business significantly declined and the company incurred millions of dollars in lost sales.

In September 2015, Camel established Camel Renewable[1] in Toksun County, XUAR. In February 2017, Camel established Camel Storage Battery[2] in Toksun County, XUAR.  Neither company began operations or hired any labor at the time of its founding because Camel Storage

---

[1] On August 30, 2024, Camel Xinjiang Renewable Resources Co., Ltd. (骆驼集团新疆再生资源有限公司) formally changed its name to "Turpan Metal Recycling Resources Co., Ltd. (吐鲁番金属再生资源有限公司)."

[2] On August 30, 2024, Camel Xinjiang Storage Battery Co., Ltd. (骆驼集团新疆蓄电池有限公司) formally changed its name to "Turpan Lead-Acid Storage Battery Co., Ltd (吐鲁番铅酸蓄电池有限公司)."

**PUBLIC VERSION**

Battery did not receive its final fire safety certifications until the second quarter of 2018, and Camel Renewable did not receive its final fire safety certifications until September 2019.

Prior to and even after the implementation of the UFLPA's rebuttable presumption by CBP under UFLPA §3(a) on June 21, 2022 (UFLPA §3(e)), Camel did not experience any issues in importing its products into the U.S.

### B. §307, FLETF, and The Uyghur Forced Labor Prevention Act

19 U.S.C. §1307 prohibits the importation of any goods or merchandise made in whole or in part by forced labor in a foreign country. To accomplish this, the USMCA Implementation Act directed the President to establish FLETF, which President Biden did through executive order on May 15, 2020. *See* 19 U.S.C. §4681(a); Exec. Order No. 13,923, 85 Fed. Reg. 30, 587.  FLETF is an inter-agency task force led by DHS PLCY.  The seven FLETF Member Agencies include: DHS, USTR, and Departments. of Labor, State, Justice, Treasury, and Commerce.

On December 23, 2021, Congress passed, and then-President Biden signed into law, the UFLPA which directs FLETF to develop a strategy for supporting enforcement of the prohibition on the importation of goods into the U.S. manufactured wholly or in part with forced labor in XUAR, PRC.  As part of that strategy, pursuant to UFLPA §2, FLETF maintains a list of entities ("UFLPA List") that it alleges, *inter alia*, are "working with the government of Xinjiang to recruit, transport, transfer, harbor or receive forced labor or Uyghurs, Kazakhs, Kyrgyz, or members of other persecuted groups out of Xinjiang." UFLPA §2(d)(2)(B)(ii).  Additions are made by a majority vote of FLETF member agencies.  Entities placed on the UFLPA List are only notified through public announcement in the Federal Register, and are not provided any information, evidence, or justification for their addition other than identifying the section of the UFLPA that the entity is allegedly violating.  *See Notice on the Addition of Entities to the Uyghur Forced Labor Prevention Act Entity List*, 87 Fed. Reg. 47777, 47778 (Aug. 4, 2022).

3

**PUBLIC VERSION**

An entity can request removal from the UFLPA List by submitting a petition with arguments and evidence showing that it "no longer meets or does not meet" the criteria for which an entity has been listed. Because FLETF refuses to inform the listed entity of the grounds for listing, an entity is left to speculate as to why it has been added to the UFLPA List. Id. During the removal proceedings, entities may request a meeting with FLETF prior to its vote on the removal request. At an unspecific time that is not defined in the UFLPA or its rules, FLETF is required to vote and advise a listed entity in writing of FLETF's decision for removal. FLETF's decision is not appealable, but a new removal request can be submitted with new evidence. Id.

As part of enforcement of the UFLPA, CBP is granted a rebuttable presumption to exclude and/or detain goods imported into the United States if it suspects the goods are mined, produced, or manufactured wholly or in part in XUAR or by an entity on the UFLPA List. UFLPA §3(a). Goods may be released by CBP if the importer of record ("IOR") submits evidence demonstrating it has complied with "FLETF supply chain guidance," cooperated with all CBP inquiries, and proven by "clear and convincing evidence" that the goods were not produced in whole or in part using forced labor from XUAR and are not subject to the UFLPA. UFLPA §3(b).

### C. The SHU Reports

Beginning in February 2022, SHU, a non-governmental organization located in Sheffield, United Kingdom, began publishing articles on alleged forced labor activities in XUAR. The allegations that FLETF solely relied on against Camel were published in three reports published by SHU. The primary author of the reports was Dr. Laura Murphy, who was SHU's Executive Director at the time. SHU's first report was published in Feb. 2022 and it alleged that Camel participated in a government sponsored Labor Transfer Program from 2017-2019 in Toksun County, XUAR. AR001007-AR001076; AR001678-AR001746. AR001070, fn. 140; AR001740, fn. 140.

**PUBLIC VERSION**

The SHU Feb. 2022 Report erroneously alleged that laborers were "dispatched to … Camel" and that "workers were bussed to . . . Camel," AR001711-AR001712; AR001042-AR001043. To support these allegations, SHU cited the following evidence:

i. The Labor Transfer Program Regulations.  AR001070, fn. 140; AR001740, fn. 140; [[██████████████]]; AR001077-AR001084, and

ii. A post on Wechat, the WeChat Post, published by the Toskun County SSHR. AR001070, fn. 141; AR001740, fn. 141; AR001085-AR001090; AR002765-AR002783.

The SHU Feb. 2022 Report also contained photos of the Labor Transfer Program's handover ceremony that SHU incorrectly and irresponsibly claimed depicted Camel's participation. AR000012.  Those same photos in the WeChat Post did not use SHU's captions, indicating that SHU added those captions on its own.  *Compare* AR001711-AR001712; AR001042-AR001043 *with* AR001087-AR001088; AR002767-AR002771; AR002777-AR002781.  Neither Camel's name nor any known Camel employee is shown in the photos. AR000012.

SHU made the same allegations against Camel in its SHU Dec. 2022 Report and SHU May 2023 Report.  The SHU Reports all cite the same inaccurate and misleading WeChat Post from the SHU Feb. 2022 Report.  AR001129-AR001130; AR001162; and AR001177.  The SHU Reports do not cite any other evidence of Camel's alleged participation in the Labor Transfer Program.

### D.  Successful Releases from CBP UFLPA-related Detentions

On February 16, 2023, nearly nine months after the implementation of the UFLPA and only two months after the publication of the SHU Dec. 2022 Report, Camel Energy, as the IOR for Camel's products in the U.S., received its first UFLPA-related detention notice from CBP alleging Camel's products were made in whole or in part with forced labor from XUAR. ECF 5, ¶ 57. Over the next several months, CBP continued to detain additional entries.

**PUBLIC VERSION**

Between March and June 2023, Camel Energy, through counsel, submitted thousands of pages of evidence and proactively cooperated with CBP and CEE[3] to answer questions and provide additional information regarding these detentions. AR000161-AR001004, AR001005-AR001006, and AR001328-AR001610; *see also* ECF 5-9. On July 14, 2023, CBP issued its official release notice for Camel's goods, stating that the documentation submitted by Camel Energy supports the IOR's assertion that materials used in the manufacturing for the detained entries were not sourced from the XUAR, were not subject to the UFLPA, and ordered the release of Camel's products. AR000155-AR000156. Finally, on September 13, 2023, CBP confirmed that the last entry of goods was released, stating that sufficient documentation that the shipment was not manufactured with forced labor. AR000157-AR000160.

Between February 2023 and September 2023, CBP issued a total of 82 detention and exclusion notices under the UFLPA for Camel's products. In response to each of these notices, Camel Energy demonstrated to CBP's satisfaction by "clear and convincing evidence" that Camel Energy's supply chain did not include forced labor and were not subject to the UFLPA. For two years after Plaintiff was added to the UFLPA List from August 2023-2025, Camel and Camel Energy did not experience any UFLPA-related detentions.[4][5]

---

[3] Centers of Excellence and Expertise (Centers) are industry-focused and account-based operational organizations processing post-release trade activities on behalf of US Customs and Border Protection (CBP). *See* https://www.cbp.gov/trade/centers-excellence-and-expertise-information.

[4] A more detailed description of Camel's successful history of releases can be found at AR001005-AR001006 and ECF 5-9.

[5] [ ███████████████████████████████████████ ]

PUBLIC VERSION

### E.  The August 2, 2023 Listing Decision and Camel's Removal Petition

Despite Camel's successful record in obtaining release of its products, on August 2, 2023, FLETF suddenly, publicly and without warning announced it was adding Camel to the UFLPA List pursuant to UFLPA §2(d)(2)(B)(ii), which allows FLETF to identify those entities "working with the government of Xinjiang to recruit transport, transfer, harbor or receive forced labor of Uyghurs, Kazakhs, Kyrgyz, or members of other persecuted groups out of Xinjiang." *See Notice Regarding the Uyghur Forced Labor Prevention Act Entity List*, 88 Fed. Reg. 50902, 50904 (Aug. 2, 2023).  Except for citing the text of UFLPA §2(d)(2)(B)(ii), FLETF did not provide Plaintiff with any other explanation.

Immediately thereafter, Camel's counsel contacted FLETF by letter and phone to inquire about FLETF's decision and the delisting process. AR000045-AR000046; AR000063-AR000068. Camel also submitted a FOIA Request to DHS,[6] and conducted an internal review and wide-scale open-source research to identify any possible reasons that could have led to the Listing Decision. AR000051-AR000062.  Camel even sought guidance from CBP and CEE officers, who directed Plaintiff back to the Federal Register and FLETF.  AR000047-AR000050.

It was not until August 18, 2023 that Camel's counsel received a response from FLETF's public contact, Director Cynthia Echeverria.  AR000063-AR000068.  Director Echeverria did not disclose the reasons or any other information as to why Camel was added to the UFLPA List.  Id. On August 30, 2023, Camel's counsel sent a formal letter to FLETF that, *inter alia* (AR000063-AR000068):

    a.  Expressed Camel's intention to engage with FLETF and submit a removal request; and

---

[6] The FOIA Request is currently the subject of active litigation in the U.S. District Court for the District of Columbia, Case No. 1:25-cv-00561-JMC.

**PUBLIC VERSION**

    b.  Requested FLETF to provide Camel with its AR and/or the reasons supporting its addition to the UFLPA List.

FLETF never provided a response to Camel's August 30th letter. Instead, Director Echeverria only confirmed that FLETF received Camel's Aug. 30th Letter and provided the same public information already available to Camel. ECF 5-3, at p. 23; AR000114-AR000117.

Camel then undertook an internal investigation to identify the reasons why FLETF had targeted it. It focused on the SHU Reports because it was the only known source of allegations against Camel related to forced labor. Camel's investigation revealed that in early 2017, Camel was asked to participate in the Labor Transfer Program discussed in the WeChat Post and SHU Reports *but declined to do so.* AR001182-AR001183. When the WeChat Post wrongfully identified Camel as having participated, a Camel employee immediately contacted the Toksun County SSHR to correct the erroneous WeChat Post. AR001184-AR001185. The very next day, the Sina Article was published in Yaxin News Network, syndicated through Sina News,[7] and corrected the WeChat Post by removing Camel's name as a participant in the Labor Transfer Program. Id. During its internal investigation, Camel did not identify any records of any employees hired through the Labor Transfer Program, and it did not identify any records indicating that it had received any subsidies or payments from the Labor Transfer Program. *See* AR001210-AR001213; AR001214-AR001220; AR001221-AR001227.

In support of its findings, Camel obtained the following evidence:

    a.  A declaration from the relevant Camel employee attesting to the interactions with the Toksun SSHR in 2017 (AR001180-AR001188);

---

[7] "Sina News" is a major national Chinese state-run media outlet.

PUBLIC VERSION

    b.  A formal, signed and sealed letter from the Toksun SSHR (AR001189-AR001193);[8]

    c.  The Sina Article (AR001194-AR001199);

    d.  Declarations from Camel's CFO and HR directors (AR001210-AR001213; AR001214-AR001220; and AR001221-AR001227);

    e.  Employee lists for Camel and Camel Xinjiang Entities (AR001246-AR001262);

Camel also obtained additional documents demonstrating that Camel "does not or no longer" meets the criteria under the UFLPA §2(d)(2)(B)(ii), including:

    a.  Previous CBP decision letters finding, by clear and convincing evidence, that Camel's products were not subject to the UFLPA or made with forced labor (AR000155-AR000156; AR000157-AR000160);

    b.  Sample package and documents submitted to CBP (AR000161-AR001004); and

    c.  Internal Camel supplier regulations prohibiting the use of forced labor (AR001263-AR001279).

Despite FLETF providing no information as to the reasons Camel was added to the List, Camel submitted its Removal Petition on November 7, 2023. In doing so, Camel made clear that it could only respond to the allegations in the SHU Reports, as they were the only allegations against Camel that were publicly available and that if FLETF had other evidence of Camel's alleged wrongdoing then it should be shared with Camel. AR000024, fn. 1; AR000029.

    **F. FLETF's Conflict of Interest**

Around November 8, 2023, Camel discovered that the co-author of the SHU Reports and former SHU Executive Director, Dr. Laura Murphy, was appointed as a Policy Advisor to the former Under Secretary for DHS PLCY and chair of FLETF, Robert Silvers. Because Camel

---

[8] *See* ECF 5, ⁋ 94(a), fn. 9. This document is an "official document" (公文) and is affixed with the official seal of the Toksun County SSHR, making it a binding document under Chinese law. In order to be able to submit this document to FLETF, Camel required approval from relevant Chinese government authorities pursuant to multiple Chinese laws, most notably <u>PRC Data Security Law</u>, Art. 36.

**PUBLIC VERSION**

suspected that Dr. Murphy and SHU were the sole reasons for Camel's addition to the UFLPA

List and because Dr. Murphy could undoubtedly influence FLETF's consideration of its Removal

Petition, Camel raised concerns about Dr. Murphy's involvement in a letter dated December 21,

2023 to FLETF.  AR001288-AR001291.  On January 31, 2024, FLETF provided a response but

failed to address any of Camel's concerns, instead simply re-stating the public announcement that

Dr. Murphy's role [was] as a "Policy Advisor" to DHS PLCY.  AR001292.

### G.  FLETF Questions, Camel's Responses and the "Listening Session"

On December 14, 2023, FLETF sent Camel written Questions.  AR001284-AR001287.

While a few questions related tangentially to the Removal Petition, most were nothing but a

"fishing expedition" wherein FLETF introduced new lines of inquiry that were outside the scope

of UFLPA §2(d)(2)(B)(ii) and completely detached from the Removal Petition and the evidence

presumably relied on by FLETF in listing Camel.

On December 21, 2023, Camel's counsel sent FLETF a letter (AR001288-AR001291):

    a.  Re-requesting Camel's AR and/or reasons and evidence supporting the Listing
        Decision; and

    b.  Requesting FLETF to clarify the standard of proof for *removal.*

On January 31, 2024, FLETF responded to Camel's Dec. 21st Letter, ignoring its requests

and stating it will work with Camel to set up a "virtual meeting" after reviewing Camel's responses

to FLETF Questions.  AR001292.  On March 1, 2024, Camel provided its Responses to FLETF's

Questions, including the following supporting documents, AR001293-AR00001637:

    a.  Customer letters and declarations (AR001309-AR001324);

    b.  Additional declarations from Camel employees (AR001611-AR001617);

    c.  Supplemental employee lists and production information regarding Camel's XUAR
        facilities (AR001618-AR001636); and

PUBLIC VERSION

    d.  UFLPA Response Package for Entry of its goods [DSV-75736303]] (AR001328-AR001610).

On March 22, 2024, FLETF confirmed the meeting and provided an agenda ("Agenda") and protocols governing the meeting ("Protocols").  AR001638; ECF 5-19. Camel was surprised to learn that the "meeting" was to be held virtually and structured as a "listening session to allow Camel to present or highlight information that it would like FLETF to consider." AR001638.  The Protocols prohibited audio and visual recording or press engagement, preventing a sufficient record of the meeting.  Id.

On April 2, 2024, FLETF and Camel held the "listening session."  Camel re-emphasized that in the absence of FLETF providing Camel with its AR, Camel could only address the issues it identified through its own research, *i.e.*, the allegations in the SHU Reports and the Labor Transfer Program.  ECF 5, ¶ 125.  FLETF had the opportunity to ask Camel questions, but did not care to do so.  At the end, FLETF indicated that there would be no record or transcript of the meeting, and once again failed to respond to Camel's request for its record, timing of its vote, and standard of proof. ECF 5, ¶ 129; *see also* AR001638. Following the meeting, on April 5, 2024, Camel sent a letter to FLETF stating it has nothing further to submit and requested a timeline for FLETF's vote.  AR001639-AR001640.

### H.  FLETF's Decision on Camel's Removal Petition

On May 16, 2024, Camel requested by letter an update on FLETF's vote for removal. AR001641-AR001642.  On May 24, 2024, FLETF provided a written response to Camel. FLETF stated that it would vote on Camel's Removal Petition in "30 business days."  AR001643.  For the very first time, FLETF also revealed the "basis" of the Listing Decision:

> "FLETF determined, based on *publicly available information*, that there was reasonable cause to believe Camel participated in Toksun County's government labor transfer program and that Camel received workers from Uyghur-majority areas in southern Xinjiang through a handover ceremony coordinated by the Toksun

**PUBLIC VERSION**

County government in Turpan Prefecture in Xinjiang. Given the information indicating Camel's work with the Xinjiang government to receive Uyghurs and/or members of other persecuted groups from the XUAR, FLETF determined that Camel satisfied the criteria for addition to the Section 2(d)(2)(B)(ii) list of the UFLPA, specifically that Camel *is* working with the government of the XUAR to receive Uyghurs and/or members of other persecuted groups from the XUAR." Id. (emphasis added).

FLETF did not identify which "publicly available information" it relied on. FLETF further implied, without explanation, that Camel was still "working with" the XUAR to receive forced labor.  It is noteworthy that FLETF did not allege that any workers were transferred "out of [XUAR]". This inadequate response provided no real insight as to what FLETF based its Listing Decision on or when it would vote on Camel's Removal Petition.

On July 9, 2024, FLETF issued its Removal Decision in a 3-page letter denying Camel's Removal Petition.  AR002977-AR002979.  The first two and a half pages simply restate Camel's procedural history, communications with FLETF and a summary of Camel's arguments and evidence.  Id.  Then, in two short paragraphs, FLETF stated the following:

"In reaching its conclusion, FLETF has carefully considered all of the arguments made on behalf of your clients. FLETF determined that Camel did not provide sufficient, credible information to demonstrate it did not and does not participate in Toksun County government's labor transfer programs to recruit, transfer, or receive workers from Uyghur-majority areas in southern Xinjiang.

Based on publicly available information from 2017, 2023, and 2024 illustrating continued Toksun County implementation of labor transfer schemes and Camel participation in Toksun County-sponsored labor recruitment events, FLETF has *reasonable cause to believe* that Camel is working with the Toksun County government to recruit individuals from Uyghur-majority areas who are likely Uyghurs, Kazakhs, and/or Kyrgyz. These sources therefore cast doubt on Camel's assertion that it has not employed anyone through the Labor Transfer Program." AR002979 (emphasis added).

FLETF's "reasoning" is filled with conclusory statements and devoid of any reference to actual evidence or any meaningful, reasoned explanation behind its decision.  It does not provide any analysis or explanation as to why it found Camel's evidence not "credible" and "insufficient"

**PUBLIC VERSION**

to demonstrate why Camel's Removal Petition did not meet the removal criteria under the statute. FLETF does not link its allegations to the section of the UFLPA that Camel allegedly violated (*i.e.,* FLETF did not explain why it believes Camel engaged in recruiting and transferring minorities "*out of [XUAR]*.") *See* UFLPA §2(d)(2)(B)(ii) (emphasis added). Equally concerning, FLETF implied that it applied a "reasonable cause to believe" standard in reviewing Camel's Removal Petition, the very same low standard that has been determined to only be for FLETF *listing decisions*. *See* Ninestar Corp. v. United States, 687 F.Supp.3d 1308, 1333 (Ct. Int'l Trade 2024) ("Reasonable cause is the appropriate burden of proof for *UFLPA listing decisions*") (emphasis added).

## I. Procedural History

On January 17, 2025, Camel filed its complaint in this Court. ECF 5. On March 3, 2025, the Court issued an order that Defendants must file its Answer and the AR on March 24, 2025. After being unable to agree on the necessity of a protective order despite Defendants' representations that all evidence it relied on was "publicly available information," on March 18, 2025, Defendants filed a motion for a protective order. ECF 12. On March 24th, Defendants filed its Answer (ECF 13) and the Public AR (ECF 14) and re-filed the Public AR on April 7, 2025 (ECF 19) to correct redaction issues. On April 8, Plaintiff filed its response to Defendants' motion for a protective order. ECF 20. On April 11, the Court entered an order requesting supplemental briefing on Plaintiff's motion. ECF 21. On April 21, Plaintiff filed its supplemental briefing identifying the areas of the AR it believed should not be "Confidential." ECF 22. On May 12, Defendants filed its response (ECF 23) and Plaintiff filed its reply on May 19 (ECF 24). On May 21, 2025, the Court entered the protective order, which permitted Defendants to designate information as i) "Public" (can be viewed by the general public); ii) "Camel Confidential" (can

**PUBLIC VERSION**

only be shared with parties to the litigation, including Camel); or iii) "Confidential" (attorney's eyes only, only Defendants and counsel for Plaintiff may view).

On May 28-29, Defendants filed the CAR (ECF 26-28) and the Camel CAR (ECF 29). After reviewing the CAR, on June 18, 2025, Plaintiff filed a motion for an *in-camera* review and order to unredact and re-designate the CAR. ECF 31. On July 10, Defendants filed its response opposing Plaintiff's motion (ECF 37 and 38), and on July 18, 2025, Plaintiff filed its reply (ECF 41 and 42). On September 9, 2025, the Court denied Plaintiff's motion. ECF 43.

### J. Camel's AR

There are three versions of the AR: i) Public AR (ECF 19); ii) Camel CAR (ECF 29); and iii) CAR (ECF 26-28), all with a Bates Range of AR000001-AR002987. The AR contains three packages of documents. A full index outlining the AR is attached as **Attachment A**. Below is a brief summary of the AR. The first document package is FLETF's Standard Operating Procedures (AR000001-AR000009). The second document package consists of the Sept. 4 Memo, a September 4, 2024 memorandum from FLETF Chair Robert Silverson its denial of Camel's Removal Petition (AR000010-AR000016) and Attachments 1-18 (AR00017-AR002979). Attachments 1-18 contain the documents submitted during the delisting process and their exhibits, such as Camel's Removal Petition (AR000024-AR001283) and Responses to FLETF Questions (AR001293-AR001637), as well as decision/pre-decision memos and FLETF vote packages, evidence relied on by the FLETF, and the Decision Letter (AR002977-AR002979). The third package is the July 2024 Memo, a July 26, 2024 Deliberative/Pre-decisional "Memorandum for the [FLETF] Paper Vote on Removal Request RR23-003." AR002980-AR002987. It appears to be a document that was circulated to a FLETF ahead of its vote on the Removal Petition; however, the document is curiously dated almost three weeks after the July 9th Decision Letter.

PUBLIC VERSION

## III.    LEGAL STANDARD

A court may review, set aside, and hold an agency action unlawful for, *inter alia*, being "arbitrary and capricious," contrary to a constitutional right, in excess of statutory authority, or without due process.  5 U.S.C. §706.  A motion for judgment under Rule 56.1 is made "solely on the basis of the record made before an agency."  USCIT R. 56.1(a).  "Where jurisdiction exists under §1581(i), this court must apply 'the standard of review set forth by the Administrative Procedure Act' and will 'hold unlawful and set aside [agency] action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  Seneca Foods Corp. v. United States, 663 F.Supp.3d 1325, 1335 (Ct. Int'l Trade 2023).  In an agency action that denotes sanctions, as in this case, the agency (FLETF), as the proponent of the decision, has the burden of proof to support it with "substantial evidence".  Steadman v. S.E.C., 450 U.S. 91, 98 (1981) (internal citations omitted).

An agency action is arbitrary and capricious when the agency has "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency," or made a decision that is "otherwise not in accordance with the law." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 41, 43 (1983).  Under the APA, the Court may not defer to the agency's interpretation and must exercise independent judgment when determining whether an agency has acted arbitrarily or capriciously or otherwise outside its statutory authority.  Loper Bright Enters. v. Raimondo, 603 U.S. 369, 413 (2024).

## IV.    RULE 56.1 STATEMENT

### A.  Administrative Determination to be Reviewed

Camel challenges FLETF's Removal Decision, specifically FLETF's July 9, 2024 determination denying Camel's request for removal from the UFLPA List, UFLPA §2(d)(2)(B)(ii),

PUBLIC VERSION

submitted pursuant to the administrative process identified in *Notice Regarding the Uyghur Forced Labor Prevention Act Entity List,* 88 Fed. Reg. 50902, 50904 (Aug. 2, 2023).

### B. Issues of Law and Summary of Reasons Contesting Administrative Determination

> *i)  Is the Removal Decision "arbitrary and capricious" because it is not supported by substantial evidence?*

FLETF's Removal Decision is not supported by substantial evidence.  First, FLETF's finding that Camel participated in the Labor Transfer Program is based on the SHU Reports and an erroneous WeChat Post, which was corrected by the "later-in-time" Sina Article and corroborated by statements sworn under penalty of law by Camel's employees and the author of the WeChat Post relied on by the FLETF.  The SHU Reports do not even mention the Sina Article.  FLETF simply brushed this evidence aside as "insufficient" without any explanation.  When confronted with contradictory evidence, the AR shows that FLETF desperately went rummaging for anything it could use in the face of the contradictory evidence on the record.  Defendants now attempt to claim that newly discovered social media articles are further evidence supporting its conclusion that Camel not only participated, but continues to participate in the Labor Transfer Program or other forced labor activities.  Had FLETF done any semblance of its own investigation, and not simply relied on the fallacious SHU Reports, it would have found that this "evidence" is wholly unrelated to the Labor Transfer Program or forced labor, and does not target "Uyghurs, Kazakhs, Kyrgyz or members of other persecuted groups."  Further, FLETF failed to provide any evidence to support a finding that Camel transferred individuals "*out of Xinjiang*" as required under UFLPA §2(d)(2)(B)(ii) (emphasis added), meaning that Camel does not even meet the statutory requirements for UFLPA sanctions.

FLETF based its Removal Decision on only a handful of public articles that not only have been debunked by evidence on the record but also do not make any connection to reasonably

**PUBLIC VERSION**

support a conclusion that Camel participated or continues to participate in the Labor Transfer Program or forced labor activities.  FLETF's mere speculation, conclusory statements, and its own assumptions and mistaken notions about the evidence on the record causes it to come to its conclusion, none of which can be considered "substantial evidence."

> ii) *Is the Removal Decision "arbitrary and capricious" because it is not supported by an adequate, reasoned explanation?*

FLETF's Removal Decision is wholly conclusory and completely devoid of any adequate, reasoned explanation in violation of the APA.  FLETF failed to explain why it found Camel's evidence not credible yet found its own evidence credible despite multiple contradictory documents on the record.  FLETF simply dismissed Plaintiff's evidence through conclusory statements and without any analysis whatsoever. It is as if the Removal Decision was preordained and the facts were managed to arrive at the conclusions. FLETF failed to explain why it did not consider CBP's own conclusions that Camel's products were not subject to the UFLPA or made with forced labor in XUAR, and how it arrived at its conclusion that this would not preclude further UFLPA enforcement against Plaintiff.  Lastly, FLETF did not even attempt to explain or link consideration of the UFLPA §2(d)(2)(B)(ii) statutory requirement that laborers be transferred "out of Xinjiang," utterly failing to provide any explanation as to how evidence in the CAR supported a conclusion that Camel transferred anyone "out of Xinjiang."  FLETF's lack of reasoned analysis on credibility, failure to consider contradictory evidence on the record, and failure to link, let alone explain any link, of the evidence to the statutory requirements causes fatal defects in the FLETF's Removal Decision that require vacatur.

> iii) *Did FLETF exceed its statutory authority by denying Camel's Removal Request based on the "reasonable cause to believe" standard?*

In arriving at the Removal Decision, FLETF exceeded its statutory authority by applying the same, low "reasonable cause to believe" standard for UFLPA listing decisions to the

17

PUBLIC VERSION

deliberative process of voting on a removal from the UFLPA List. The UFLPA is silent on the applicable standard for removal requests, and the statute, congressional intent, and §307 all point to a higher standard for removal decisions, which unlike the listing decision, is the final agency action under the UFLPA. Where a statute is silent, the default standard is by a "preponderance of the evidence." This is especially true given the nature of the removal process, which involves submission of arguments and contradictory evidence, opportunity for agency questions, and an administrative hearing. This standard is consistent with §307, prior case law, and UFLPA's purpose to strengthen §307.

> iv) *Did FLETF's failure to disclose its conflict of interest and actions during the administrative process harm Camel's right to due process?*

Camel is a company with sufficient contacts in the U.S. through its subsidiary Camel Energy to allow it to enjoy constitutional protections, including a right to due process when deprived of its liberty or property. FLETF, however, repeatedly violated this right, significantly harming Camel's due process and prejudicing their ability to fairly adjudicate its case. FLETF hired the very author of the evidence against Camel as its "Policy Advisor" and then refused to disclose any details to Camel. FLETF refused to provide Camel with any information prior to this litigation explaining the Listing Decision, despite multiple requests, putting Camel at a disadvantage during the delisting process and forcing Camel to waste resources through litigation to obtain its record. Lastly, FLETF's actions throughout the delisting process proved that it had no interest in providing Camel a fair procedure by turning its delisting process into a "fishing expedition" and refusing to create a record of its "Listening Session." FLETF's actions and refusal to disclose its conflict of interest violated Camel's due process.

PUBLIC VERSION

        *v)  Is vacatur the appropriate remedy?*

Vacatur of the Removal Decision is the appropriate remedy.  Vacatur is the default remedy for unlawful agency decisions.  In only rare cases when vacatur is especially disruptive is remand without vacatur appropriate. This is not present here.  Vacatur only impacts Camel's goods and reputation, and no one else.  Moreover, given the number of defects in the Removal Decision and FLETF's prior actions, FLETF cannot remedy its decision without vacatur and strict instructions from the Court on remand.

### C.  Request for Court Order and Relief Sought

Plaintiff requests this Court grant this Motion, declare that Defendants acted in violation of the APA and its Removal Decision is unlawful, order that FLETF's Removal Decision be vacated and remanded to FLETF to re-consider Camel's Removal Petition with instructions from the Court to immediately remove Camel from the UFLPA List.

## V.  <u>ARGUMENT</u>

The July 9th Removal Decision is reviewable as a final agency decision because it is FLETF's final determination of Camel's rights and obligations, and FLETF stated that its Removal Decision is not appealable through the agency process.  5 U.S.C. §704; AR002979.  The Removal Decision is unlawful, in violation of the APA, and should be set aside because it is not supported by substantial evidence, and FLETF did not provide a reasoned opinion supporting its decisions, exceeded its statutory authority, and harmed Camel's due process rights by conducting a "kangaroo court" style delisting process.

### A.  FLETF's Removal Decision is Arbitrary and Capricious Because it is Not Supported by Substantial Evidence

A final agency decision is "arbitrary and capricious" if it is not supported by substantial evidence.  <u>Broadcom Corp. v. Int'l Trade Comm'n</u>, 28 F.4th 240, 249 (Fed. Cir. 2022).  "Substantial

**PUBLIC VERSION**

evidence must do more than create a suspicion" that the facts supporting the agency determination exist. Nippon Steel Corp. v. United States, 458 F.3d 1345, 1351 (Fed. Cir. 2006). Substantial evidence can only support an agency's conclusion if "a reasonable mind might accept the evidence as sufficient to support the finding." Zhejiang Mach. Imp. & Exp. Corp. v. United States, 471 F.Supp.3d 1313, 1326 (Ct. Int'l Trade 2020) (citation omitted). The record relied on by the agency "must evince substantial evidence to confirm or refute relevant issues encountered during the course of the investigation, and if an investigation does not pass a threshold of reasonable inquiry, the record is unsupported by substantial evidence." Van Trinh v. U.S. Sec'y of Agr., 29 C.I.T. 1058, 1074 (2005).

An agency must consider the record as a whole, including contradictory evidence, otherwise its decision "is not supported by substantial evidence." Husteel Co. v. United States, 426 F.Supp.3d 1376, 1393 (Ct. Int'l Trade 2020), *aff'd sub nom.* Hyundai Steel Co. v. United States, 19 F.4th 1346 (Fed. Cir. 2021). An agency decision lacks substantial evidence if it relies on "[m]ere specula[tion]." NEXTEEL Co. v. United States, 28 F.4th 1226, 1236 (Fed. Cir. 2022). An agency decision that relies "explicitly on a mistaken notion" or "unsupported assertions" is unsupported by substantial evidence. Circus Circus Casinos, Inc. v. NLRB, 961 F.3d 469, 485 (D.C. Cir. 2020). Importantly, the Court does not need to defer to FLETF's interpretation of the record or its reasons and should make its own independent judgment about whether FLETF's decision was supported by "substantial evidence." Loper Bright Enters., 603 U.S. at 413.

The Removal Decision is a "final agency decision" and not appealable. *See* 5 U.S.C. §704; Bennett v. Spear, 520 U.S. 154 (1997) (a final agency decision "mark[s] the consummation of the agency's decision making process" and "the action [is] one by which the rights or obligations have been determined, or from which legal consequences will flow"). As such, it must be supported by "substantial evidence" showing i) Camel was working and continues to work with the XUAR

**PUBLIC VERSION**

Government to ""recruit, transport, harbor, or receive" Uyghurs or any other persecuted group; ii) "out of" XUAR; and iii) the Labor Transfer Program and Camels' involvement therein is ongoing.

      i)  <u>FLETF's conclusion that Camel "recruited, transported, harbored, or received" Uyghurs or any other persecuted group is not supported by substantial evidence</u>

          *1.  Determination that Camel participated in the Labor Transfer Program is not supported by substantial evidence*

FLETF's conclusion that Camel participated in the Labor Transfer Program is based on the erroneous belief that Camel participated in a July 2017 Handover Ceremony. The evidence for this conclusion relied on by FLETF was the publicly available SHU Reports and an erroneous WeChat Post. FLETF's interpretation of this evidence, however, ignores contradictory evidence, relies on its own assumptions, and rests on a misinterpretation of the evidence in the CAR.

First, before Camel even submitted its Removal Petition, FLETF was already in possession of contradictory evidence on the record that it ignored. The allegations against Camel in the SHU Reports rest solely on a WeChat Post published on July 10, 2017 by the Toksun County SSHR, which names Camel as a participant in the Handover Ceremony. [[█████████████

████████████████████████████████████████████████

██████████████████████████████████ ████████████

██████████████████████████████

██████]]. <u>Husteel Co.</u>, 426 F.Supp.3d at 1393 (an agency must consider the record as a whole, *including contradictory evidence*, otherwise its decision "is not supported by substantial evidence") (emphasis added). The SHU Reports also contain photos that it wrongly claimed showed Camel present and taking laborers at the Handover Ceremony. Even FLETF admitted that the photos in the SHU Reports do not show any Camel participant, further calling into question the veracity of the WeChat Post FLETF relied on. AR000012. As such, at the time of the Listing

**PUBLIC VERSION**

Decision, FLETF was in possession of information that contradicted its conclusion, ignored it, and chose to move forward with the Listing Decision anyways.  In re Google, 56 F.4th 1363, 1369 (Fed. Cir. 2023) (an agency decision that relies "explicitly on a mistaken notion" or "unsupported assertions" is unsupported by substantial evidence).

Second, when FLETF was provided with more contradictory evidence, FLETF ignored and summarily dismissed that evidence without any consideration.  Husteel Co., 426 F.Supp.3d at 1393.  Camel submitted sworn affidavits from a Camel employee and former GM for Camel's Xinjiang entities [[███████████]] who confirmed that while Toksun SSHR reached out about Camel's participation in the Labor Transfer Program, Camel declined and asked the Toksun SSHR to correct the WeChat Post.  AR001183-AR001186.  Camel also submitted a sworn, official letter from the Toksun SSHR[9] corroborating that Camel did not participate, and identifying the Sina Article as an update to the WeChat Post.  Id.; see also AR001189-AR001193.  Finally, Camel submitted affidavits from its other employees attesting to the fact that it did not receive any laborers or subsidies from this program.  AR000013; AR001200-AR001227.  Yet FLETF summarily dismissed these documents as "not credible" without any explanation, instead only saying it would "behoove" Camel and Toksun SSHR to prepare such materials.  AR000013.   FLETF never "grapple[d] with these contradictions" and summarily dismissed this evidence without asking Camel to further substantiate its evidence.  Commc'ns Workers of Am. Loc. 4123 ex rel. AT&T Servs., Inc. v. U.S. Sec'y of Lab., 518 F.Supp.3d 1342, 1356 (Ct. Int'l Trade 2021).  FLETF's conclusions were not based on "substantial evidence" but rather assumptive stereotypes and convenient politically acceptable themes.  U.S. Steel Corp. v. United States, 35 C.I.T. 651, 656 (2011) ("assumption is not substantial evidence").

---

[9] See Supra, fn. 8.

**PUBLIC VERSION**

FLETF also questions why no contemporaneous written records were made at the time of [[         ]] and Toksun SSHR's communications, as if to imply that Camel should have been aware that 5 years in the future, the U.S. would pass a law specifically concerning forced labor in XUAR. AR000012. This is not a serious consideration of Camel's evidence, and instead appears more like a conclusory finding based on opinion. This is especially so because FLETF does not give *any* weight to the fact that these documents were sworn under oath and penalty of perjury under U.S. and Chinese laws. Circus Circus Casinos, Inc., 961 F.3d at 484 (findings on credibility "are not immune from judicial scrutiny and must be…reasonably explained"). Moreover, FLETF claimed without any evidence that the Sina Article was not a correction to the WeChat Post despite the Toksun SSHR certificate stating otherwise. *Compare* AR000012 *with* AR001190. FLETF's Removal Decision cannot be based on "substantial evidence" because it so obviously ignores this contradictory evidence on the record. Husteel Co., 426 F.Supp.3d at 1393. When looking at the totality of this evidence, it is hard to see how a reasonable mind can come to the same conclusion as the FLETF. *See* Zhejiang Mach. Imp. & Exp. Corp.,471 F.Supp.3d at 1326.

Finally, FLETF claims that Camel's Xinjiang facilities did in fact begin hiring in 2017 and early 2018, implying that Camel was hiring from the Labor Transfer Program. AR000013. In support of this allegation, FLETF points to Camel's Removal Petition Ex. 30 (AR001246-AR001262), which is a list of Camel Xinjiang employees and the date of their hire. FLETF, however, ignores that the employees Camel hired for its Xinjiang entities in 2017 and 2018 were all of Han ethnicity[10] and were not Uyghur or any other persecuted minority. *See* AR001246-AR001262. FLETF ignored or did not understand this contradictory evidence.

---

[10] China's most recently available national census statistics from 2021 place Han ethnicity at 91% of China's total population and are specifically not an ethnic group included in the UFLPA. PRC

**PUBLIC VERSION**

FLETF ignored contradictory evidence on the record to arrive at its conclusion that Camel allegedly participated in the Labor Transfer Program, and made its decision based on mistaken notions and its own unsubstantiated assumptions regarding the evidence. Sasol N. Am. Inc. v. NLRB, 275 F.3d 1106, 1112–13 (D.C. Cir. 2002) ("substantial evidence" cannot "rest explicitly on a mistaken notion."). Even viewed in a light most favorable to FLETF, when taking the record as a whole, none of the evidence in the CAR "compel the conclusion" that Plaintiff participated in the Labor Transfer Program. Luokung Tech. Corp. v. Dep't of Def., 538 F.Supp.3d 174, 189 (D.D.C. 2021) (when taking the record and industry as a whole, the public source articles do not "compel" agency's conclusion connecting entity to PRC military). Thus, the Removal Decision is unlawful and unsupported by "substantial evidence." 5 U.S.C. §706(2)(A).

> 2. *New social media reports of [[███████████ ██████████ ]] are not evidence of participation in the Labor Transfer Program or otherwise connected to forced labor and rests on a "mistaken notion"*

After reviewing Camel's Removal Petition and rebuttal evidence, FLETF appears to have scoured the Internet for anything remotely related to Toksun County, Camel, and labor events to support its conclusion. This resulted in Attachment 13 [[████████████████████████ ████████████████████████████████████████ ████████████████ ]] and Attachment 14 [[██████ ████████████████████████████████████████ ████████████████████ ]]. These materials were clearly discovered after the Listing Decision and even after Camel submitted its Removal Petition and Responses because FLETF does not cite them until its July 2024 Memo following the Removal Decision (AR002985-

---

National Bureau of Statistics, "China Statistical Yearbook 2021," *Sec. 2-22 Population Based on Ethnic Groups and Gender*, China Statistics Press, 2021, available at https://www.stats.gov.cn/sj/ndsj/2021/indexeh.htm

PUBLIC VERSION

AR002987).  More importantly, neither article supports FLETF's conclusion and is based entirely

on FLETF's "mistaken notion," "assumptions," and "unsupported assertions," none of which can

be considered "substantial evidence."  In re Google, 56 F.4th at 1369; U.S. Steel Corp., 35 C.I.T.

at 656; Sasol N. Am. Inc., 275 F.3d at 1112–13.



Attachment 13[11] is [[███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████]] See ILO Forced Labor Convention (No. 29), Art. 2, 39 U.N.T.S. 55

(entered into force May 1, 1932).  This stands in stark contrast to the photos in the WeChat Post,

which FLETF admitted did not include Camel (AR000012), and depicts only males lining up and

participating what appears to be group chants, oaths, and songs before being led off behind a

company sign.  AR002765-AR002771/AR002775-AR002781.  These differences show the [[███

██]] referenced in Attachment 13 is unlikely associated with the Labor Transfer Program or forced

labor in general.

[[███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

---

[11] It is worth noting that Attachments 13 and 14 were designated as "Confidential," which means Plaintiff's counsel was not able to consult with its own client regarding the veracity of the accusations contained in these documents. As a result, Plaintiff's counsel is only able to argue points regarding these documents based on its own research and understanding surrounding these articles and its use in the CAR.

**PUBLIC VERSION**

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████ ]]  Importantly, Attachment 13 does not connect Camel to the Labor Transfer Program and

does not provide any support for the conclusion that this [[██████ ]] was in any way connected to

state-sponsored forced labor in XUAR.  FLETF simply made its own baseless assumptions on the

location of this [[██████ ]], which cannot be "substantial evidence" of Camel's involvement in

forced labor activities. U.S. Steel Corp., 35 C.I.T. at 656.

The Sept. 4 Memo attempts to link Attachment 13 to forced labor by providing an

intentionally [[██████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████ ]] Andaman Seafood Co. v. United States, 35 C.I.T. 451, 454 (2011) (an agency must

consider the record as a whole, including evidence that "fairly detracts from the substantiality of

the evidence").  Moreover, this event took place in 2017, so even if FLETF is correct, this pre-

UFLPA enactment behavior cannot be the basis for FLETF's conclusion because the UFLPA

cannot apply retroactively.  Ninestar Corp., 687 F.Supp. 3d. at 1335-1336.  This selective

translation and lack of attention to contradictory facts shows that FLETF was cherry-picking and

---

[12] It is noteworthy that Defendants designated this footnote as "Confidential," effectively
concealing this fact from the public.

**PUBLIC VERSION**

modifying its evidence based on its own assumptions, which cannot be considered "substantial evidence." <u>U.S. Steel Corp.</u>, 35 C.I.T. at 656.

Attachment 14[13] is a [[]][14] Key elements of the UFLPA involving the targeting of specific minority groups in XUAR are not present in [[          ]]. FLETF simply concluded that [[          ] was connected to forced labor without any investigation into this material. <u>Van Trinh</u>, 29 C.I.T. at 1074 (agency should make a reasonable inquiry in its investigation).

Taken together, Attachment 13 and Attachment 14 do not support the conclusion that Camel participated in the Labor Transfer Program or otherwise worked with the XUAR government to recruit, transfer, harbor or hire forced labor out of XUAR. <u>Xiaomi Corp. v. Dep't of Def.</u>, No. CV 21-280 (RC), 2021 WL 950144, at *8 (D.D.C. Mar. 12, 2021) (finding that two public source documents were not "substantial evidence" when considered in context of the

---

[13] *See Supra*, fn. 11.

[14] ]]

PUBLIC VERSION

plaintiff and industry).   This conclusion is based on FLETF's own assumptions about these documents, which created a "mistaken notion" on which FLETFs rests its decision. <u>Circus Circus Casinos, Inc.</u>, 961 F.3d at 485.   FLETF did not do any actual investigation into these documents and instead just relied on its own speculation.  <u>Gov't of Argentina v. United States</u>, 542 F.Supp.3d 1380, 1396 (Ct. Int'l Trade 2021) (an agency cannot base its conclusions on speculation) (citations omitted).  This is not "substantial evidence" and FLETF cannot discount contradictory evidence based on its own "incorrect assumptions."   <u>Larson v. Dep't of the Army</u>, 260 F.3d 1350, 1354, 1356 (Fed. Cir. 2001) (not substantial evidence where judge made an "incorrect assumption" that caused the judge to "discount" other evidence).

  ii) <u>FLETF's determination that Camel transferred individuals "out of XUAR" is not supported by substantial evidence</u>

  In order to satisfy the UFLPA listing burden, an entity must be working with the PRC government to "recruit, transport, transfer, harbor, or received" forced labor of Uyghurs and other persecuted minorities *out of XUAR*.  UFLPA §2(d)(2)(B)(ii) (emphasis added). Therefore, FLETF must have substantial evidence that shows laborers were taken "out of XUAR."  Here, FLETF does not even attempt to argue that Camel transferred anyone "out of XUAR." Instead, the focus is solely on alleged recruitment in Toksun County for Camel's Xinjiang entities. As such, FLETF "failed to adhere to the plain meaning of the statute."  <u>Xiaomi Corp.</u>, 2021 WL 950144 at *7 (agency exceeded its authority when it failed to adhere to the plain meaning of the statute).   FLETF does not allege and evidence in the CAR does not support that Camel recruited any workers for positions in its facilities in Hubei or anywhere else in China or around the world.  <u>CS Wind Vietnam Co. v. United States</u>, 832 F.3d 1367, 1376 (Fed. Cir. 2016) (an agency's "explanation must reasonably tie the determination under review to the governing statutory standard and to the record evidence by indicating what statutory interpretations the agency is adopting and what facts

28

**PUBLIC VERSION**

the agency is finding").  A key element of UFLPA §2(d)(2)(B)(ii) is not satisfied and the Removal

Decision is unlawful.  5 U.S.C. §706(2)(A).

       iii) <u>FLETF's determination that the Labor Transfer Program is ongoing is
        not supported by substantial evidence</u>

In order for FLETF to support the Removal Decision, there must be substantial evidence

showing that the Labor Transfer Program is ongoing[15] and that Camel is still participating.  *See*

<u>Ninestar Corp., 687</u> F.Supp. 3d. at 1335-1336 (finding that Government Defendants do not dispute

that the UFLPA is solely prospective and only covers actions that occurred post-enactment).  The

FLETF's evidence in the CAR fails to substantiate that illegal conduct is ongoing.

After being confronted with Camel's contradictory evidence that the Labor Transfer

Program ended in 2019, FLETF admitted that the Labor Transfer Program "conceivably ended"

and embarked on "additional research."  AR000014.  FLETF now points to [[             

]] FLETF only found that Toksun

County continued to engage in "labor transfers" without specifying whether it was related to the

specific Labor Transfer Program or forced labor in general.  AR000014.  Attachment 16 goes well

---

[15] It is worth a reminder that Camel's Removal Petition and Removal Decision were limited to the
single Labor Transfer Program Camel identified, which FLETF never disputed.  Upon seeing
contradictory evidence that completely challenges its conclusion, FLETF cannot now go back to
try and change its allegations to encompass other programs.  <u>Michigan v. EPA</u>, 576 U.S. 743
(2015) (accepting government's arguments involving pre-enactment behavior ""contradict[s] the
foundational principle of administrative law that a court may uphold agency action only on the
grounds that the agency invoked when it took the action")

**PUBLIC VERSION**

beyond the scope of a single Labor Transfer Program, and it is unlikely that all labor transfer programs in Toksun County are associated with forced labor (something FLETF does not go so far to allege).  Attachment 16 is unreliable at best to support FLETF's conclusion that the Labor Transfer Program is ongoing.

More clear proof that the Labor Transfer Program has concluded is the Labor Transfer Program Regulations themselves, which indicate the program only runs from 2017-2019. AR001077-AR001084.  Conveniently, [[



]] *See* <u>Ninestar Corp., 687</u> F.Supp.3d. at 1335-1336.

Lastly, while Camel denies ever having participated in the Labor Transfer Program, even if Camel was somehow involved in 2017, the evidence in the CAR does not support a conclusion that it is "still participating".  FLETF similarly uses [[                                              ]] as evidence that the Labor Transfer Program is ongoing or that Camel is somehow participating in forced labor activities.  First, as explained above, Camel cannot continue to participate in something that even the FLETF admits may have concluded. AR000014.  Second, FLETF did not provide any evidence linking the allegations in Attachments 13 and 14 to the Labor Transfer Program or forced labor in general.  *See Supra*, Sec. (V)(A)(i) and (iii).  FLETF appears to conclude that *any* labor program, job fair, or employment event in Toksun County is automatically associated with forced labor. *See* AR000014-AR000015.  This ignores the complexity of the region and tells companies that employing anyone in any form in XUAR puts

**PUBLIC VERSION**

them at risk of sanctions under the UFLPA.  An unintended consequence of this would be that it discourages businesses from engaging in XUAR, which could further reduce the number of private corporate stakeholders willing to work with FLETF to provide insight into the issue of forced labor in XUAR and address it in the supply chain. This does not serve the goals of the UFLPA.

FLETF's conclusion that the Labor Transfer Program is ongoing or that Plaintiff participated in any sanctionable conduct following the enactment of the UFLPA is once again built on a flawed interpretation of its own evidence and ignorance of contradictory evidence on the record.  FLETF has not provided any "more than a mere scintilla of evidence" to support its conclusion, which cannot be considered "substantial evidence." Elbit Sys. of Am., LLC v. Thales Visionix, Inc., 881 F.3d 1354, 1356 (Fed. Cir. 2018).  As such, FLETF's Removal Decision is unlawful.  5 U.S.C. §706(2)(A).

### B. FLETF's Removal Decision is Not Supported by an Adequate, Reasoned Explanation

Not only is FLETF's Removal Decision not supported by substantial evidence, but its cursory half page "explanation" is devoid of any adequate, reasoned explanation. Luokung Tech. Corp., 538 F.Supp.3d at 190 (when a court finds that there is a lack of "substantial evidence" supporting an agency decision, it is unlikely that a "rational connection" will exist in the form of a reasoned explanation).  "A 'fundamental' requirement of administrative law is that an agency 'set forth its reasons' for decision; an agency's failure to do so constitutes arbitrary and capricious agency action." Tourus Recs., Inc. v. Drug Enf't Admin., 259 F.3d 731, 737 (D.C. Cir. 2001).  Neither courts nor litigants may "supply a reasoned basis for the agency's action that the agency itself has not given." Motor Vehicle Mfrs. Ass'n., 463 U.S. at 43. "[A]n agency must explain why it decides any question the way it does.   "That obligation means that the agency must 'articulate a satisfactory explanation' of its reasoning; it may not simply provide a conclusion." Aqua Prods.,

**PUBLIC VERSION**

Inc. v. Matal, 872 F.3d 1290, 1325 (Fed. Cir. 2017).  Conclusory statements and recitation of the statue without further explanation plainly fails the APA's arbitrary and capricious standard. Amerijet Int'l, Inc. v. Pistole, 753 F.3d 1343, 1350 (D.C. Cir. 2014) ("[C]onclusory statements will not do; an agency's statement must be one of reasoning").  Moreover, findings on credibility "are not immune from judicial scrutiny and must be…reasonably explained."  Circus Circus Casinos, Inc., 961 F.3d at 484.  The Court does not need to defer to FLETF's interpretation of the record or its reasons, and should make its own independent judgment about whether FLETF's decision was "reasonably explained."  Loper Bright Enters., 603 U.S. at 413.

> i) <u>FLETF failed to explain why it found Camel's evidence "not credible and unreliable"</u>

> > 1. *FLETF failed to explain why the [[* ▮▮▮▮ *]], Toksun County SSHR Letter and Sina Article were "not credible and unreliable"*

FLETF's Listing Decision was originally premised on the SHU Reports and WeChat Post that incorrectly reported Camel as participating in the Labor Transfer Program.  Camel quickly identified FLETF's "mistaken notion" and submitted three contradictory evidentiary items, two of which were statements sworn under penalty of law in US and China to verify its authenticity and veracity:  i) [[▮▮]] Declaration (AR001180-AR001188), ii) Toksun County SSHR Letter (AR001189-AR001193) and iii) the Sina Article (AR001194-AR001199).  However, FLETF summarily dismissed each as "not credible" and insufficient to demonstrate Camel does not meet the criteria in the UFLPA without providing "specific, cogent reasons" or any "reasonable explanation."  AR002979; Ilunga v Holder, 777 F.3d 199, 206(4th Cir. 2015) (an agency decision without "specific, cogent reasons" is unlawful).  Equally concerning is that FLETF [[▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮]].

**PUBLIC VERSION**

FLETF surmises only that it would "behoove" Plaintiff and the Chinese government to prepare such documents. AR000013. This is the very definition of baseless stereotyping without foundation. *See* Gov't of Argentina, 542 F.Supp.3d at 1396. FLETF also implies that because [[███████]] did not take notes of his conversation from 8 years ago that this somehow cuts against his credibility. This type of reasoning is the epitome of a "conclusory" and "speculative" statement. FLETF provides no insight as to why this information is not "credible" and it never asked questioned this evidence during the removal process. Instead, FLETF convenient falls back to a discriminatory trope that Camel and Toksun County must be in cahoots. FLETF cannot ignore "relevant factors bearing on credibility determinations." Circus Circus, 961 F.3d at 486. This type of "all conclusion and no reasoning" explanation plainly fails the APA's requirement for a "reasoned explanation." Aqua Prods., Inc., 872 F.3d at 1325.

> 2. *FLETF failed to explain why Camel's employee lists, declarations, internal policies, and customer letters were "not credible and unreliable"*

FLETF was provided with employee lists, declarations, internal policies, and customer letters that provided substantial evidence that Camel did not participate in the Labor Transfer Program. FLETF, however, dismissed all of this as simply "not credible and insufficient" without any explanation. AR002979. In its decisional and pre-decisional memos, FLETF's staffers merely mention the employee declarations, policies and customer letters as having been submitted, but they never provide any explanation as to how it considered this evidence or why it was not credible or determinative. Husteel Co., 426 F.Supp.3d at 1393. It is only with respect to the employee lists that FLETF provided any explanation in its Sept. 4 Memo, where it claimed they showed employees being hired at Camel's Xinjiang facilities pre-2018 and 2017. AR000013. FLETF's staffers failed to mention that all of these employees were Han Chinese and are not Uyghur or any other persecuted minority. *See, e.g.,* AR001228-AR001262, AR001618-AR001631. FLETF's

**PUBLIC VERSION**

assumption is based on a clearly mistaken understanding of this evidence. *See* In re Google, 56 F.4th at 1369 (Fed. Cir. 2023).

> 3. *FLETF failed to consider CBP's previous decisions that Camel's products were not subject to the UFLPA*

As part of its Removal Petition and Responses, Camel submitted previous July and September 2023 CBP decisions where CBP found by "clear and convincing evidence" that Camel Energy's imports of Plaintiff's goods were not made with forced labor or manufactured in whole or in part in XUAR. AR000155-AR000156 (July 2023 CBP Decision); AR000157-AR000160 (Sept. 2023 CBP Decision); AR000161-AR001004 (CBP Sample Package [███████████ ██████ ]]); AR001328-AR001610 (CBP Sample Package [[███████████████ ]]). In fact, CBP provided FLETF with a note in May 2024 confirming that Plaintiff's products were "not within the purview of the UFLPA" and was "not produced in whole or in part in the XUAR." AR002934.[16]

Despite these decisions and CBP's separate confirmation, FLETF impermissibly dismissed all of this "without any explanation whatsoever." Clarke v. Commodity Futures Trading Comm'n, 74 F.4th 627, 641 (5th Cir. 2023) (an agency decision without any explanation whatsoever is unlawful). Nowhere in its Removal Decision did FLETF discuss whether it considered these CBP decisions and why they were not relevant. Instead, FLETF relegates this critical evidence to a *footnote* in a decisional memo in the CAR, where FLETF staffers summarily dismiss the evidence by stating "CBP assessments of individual entries by a Camel subsidiary do not preclude or restrict the FLETF" from determining an entity's placement on the UFLPA List. AR000011, fn. 1. This

---

[16] Despite CBP's note claiming that it did not review whether forced labor was present in the supply chain, CBP said the opposite in its decision letters concluding that no forced labor was used in manufacturing Camel's products. *See* AR000155-AR000156 (July 2023 CBP Decision) and AR000157-AR000160 (Sept. 2023 CBP Decision) *and compare* AR002934.

**PUBLIC VERSION**

"all conclusion" statement cannot be considered a reasoned explanation.  Aqua Prods., Inc., 872 F.3d at 1325.

> ii) FLETF failed to explain why it relies on the WeChat Post, SHU Reports, and social media reports despite contradictory evidence on the record

At the time of the Listing Decision, FLETF was in possession of the [[███████

████████████████████████████████████████████████████████████

████████████████████ ]].  AR002784-AR002865.  Following Plaintiff's Removal Petition, FLETF was in possession of statements sworn under penalty of US and Chinese law by the author of the WeChat Post and Camel employees.  The [[████]] Declaration (AR00180-AR001188) and Toksun SSHR Letter (AR001189-AR001193) provided first-hand explanations, including from the author of the WeChat Post, as to why the Sina Article discredits the WeChat Post.  The Sina Article removed Camel's name as a participant from the program.  Id.  FLETF admitted that the photos and captions in the SHU Reports were wrong and did not depict anyone from Camel.  AR000012.  The government's own people (CBP) were telling FLETF that Camel had previously met a "clear and convincing evidence" standard showing that they are not subject to the UFLPA.  AR002934.  Yet in the face of all this contradictory evidence demonstrating the unreliability of the WeChat Post and SHU Reports, FLETF pushed it all aside as "not credible and insufficient" without providing any explanation "whatsoever" to arrive at its preferred conclusion.  Clarke, 74 F.4th at 641.

> iii) FLETF failed to explain why it believes the Labor Transfer Program is ongoing and that Camel is still participating in the Labor Transfer Program

In the Removal Decision, FLETF makes a conclusory statement without any explanation that it believes Camel continues to participate in "labor recruitment events," but provides no explanation or link as to whether such programs are tied to the Labor Transfer Program or forced

**PUBLIC VERSION**

labor.  The CAR reveals that FLETF relied on [[██████████████████████████]]
to come to this conclusion, but do not tie these events to the Labor Transfer Program, forced labor, or UFLPA statutory requirements.  <u>CS Wind Vietnam Co</u>, 832 F.3d at 1376.  Instead, FLETF relies on its own assumptions and speculation to interpret the evidence in the CAR, and "did not defend its actions" as to why it chose to do so.  <u>Dep't of Homeland Sec. v. Regents of the Univ. of California</u>, 140 S. Ct. 1891, 1909 (2020) ("An agency must defend its actions based on the reasons it gave when it acted").  FLETF's conclusory statement in its Removal Decision is not a reasoned explanation and is unlawful.  5 U.S.C. §706(2)(A); <u>Amerijet Int'l, Inc.</u>, 753 F.3d at 1350.

      iv)  <u>FLETF failed to explain why it believes Camel "recruited, transferred, or harbored" laborers "out of XUAR"</u>

The text of UFLPA §2(d)(2)(B)(ii) requires that an entity "recruit, transfer, or harbor" laborers "out of XUAR".  There is no evidence that Camel transferred or recruited anyone from the Labor Transfer Program "out of XUAR," and importantly, FLETF and the evidence in the CAR do not dispute otherwise. *See Supra*, Sec. V(A)(ii).  Instead, the only accusations made here are with respect to recruitment at Camel's Xinjiang facilities.  <u>Id</u>.  FLETF do not even attempt to link the evidence on the CAR to laborers who were transferred "out of XUAR," instead focusing on Camel's local recruitment in Xinjiang. FELTF utterly failed to explain this finding and "did not even attempt to link" it to statutory requirements.  <u>Cayuga Nation v. United States</u>, 594 F.Supp.3d 64, 77 (D.D.C. 2022) (vacating an agency decision that "did not even attempt to link" consideration of improper factors to statutory requirements).

      v)  <u>FLETF's recitation of the UFLPA is not a "reasoned explanation"</u>

FLETF offers no other meaningful explanation other than to regurgitate the text of UFLPA 2(d)(2)(B)(ii) in two of the three total paragraphs of the Removal Decision where FLETF offers any reasoning behind its decision. <u>Dickson v. Sec'y of Def.</u>, 68 F.3d 1396, 1405 (D.C. Cir. 1995)

PUBLIC VERSION

("When an agency merely parrots the language of a statute without providing an account of how it reached its results, it has not adequately explained the basis for its decision").  Decisions like the FLETF's Removal Decision must be set aside for "merely parrot[ing] the language of the statute" without explanation and being "premised on reasoning that fails to account for 'relevant factors,'" and "evinces a 'clear error of judgment.'"  Id.; see also Clarke, 74 F.4th at 641.

### C. FLETF Exceeded its Statutory Authority by Applying the Wrong Standard of Proof to its Removal Decision

FLETF wrongly applied the "reasonable cause to believe" standard to the Removal Decision.  This is evidenced by FLETF's conclusion in its July 9th Decision Letter that "[b]ased on publicly available information from 2017, 2023, and 2024…FLETF has *reasonable cause to believe* that Camel is working with the Toksun County government" to recruit "Uyghurs, Kazakhs, and/or Kyrgyz" workers from the XUAR.  AR02979 (emphasis added).  Given the lack of substantial evidence on the record, FLETF can only come to its conclusion to deny Camel's Removal Petition if it applied the same low standard it uses for listing decisions.  FLETF exceeded its authority by wrongly applying a "reasonable cause to believe" standard to Camel's Removal Petition.  Absent clear statutory authority, a higher "preponderance of evidence" standard is the minimum standard that should apply to UFLPA removal decisions.  *See*, Steadman, 450 U.S. at 98 (finding that an agency, as the proponent of an order, has the burden of proof and that an agency may only impose sanctions based on "substantial evidence"). Therefore, this Court should "hold unlawful and set aside" the Removal Decision.  5 U.S.C. §706(2)(C).

### i) The UFLPA does not specify the burden of proof for removal decisions

While the court in Ninestar Corp. applied a "reasonable cause to believe" standard to UFLPA *listing decisions*, this is distinguishable from the present case which contemplates a *removal decision*.  *See* Ninestar Corp., 687 F. Supp. at 1333 ("Reasonable cause is the appropriate

**PUBLIC VERSION**

burden of proof for UFLPA *listing decisions*.") (emphasis added).  In the present case, FLETF wrongly applied the same "reasonable cause to believe" standard to its Removal Decision.  "The UFLPA does not specify a burden of proof for FLETF when it determines whether an entity has engaged in culpable conduct warranting addition to the Entity List."  Ninestar Corp., 687 F.Supp.3d at 1332.  Similarly, the Federal Register does not specify the standard of proof for FLETF to apply to its removal decisions and only says an entity should "provide information that demonstrates that the entity no longer meets or does not meet" the criteria under UFLPA §2(d)(2)(B)(ii).  *See, e.g.,* 88 Fed. Reg. 50902 (Aug. 2, 2023).  Thus, the UFLPA does not specify the burden of proof for removal decisions.

ii)  Where a statute is silent, the APA requires at least a "preponderance of evidence" standard

In absence of a specific burden of proof, a "[p]reponderance of the evidence has long been recognized as the traditional burden of proof in civil administrative proceedings" and for formal, final agency adjudications.  Ninestar Corp., 687 F.Supp.3d 1332 *citing* Rodriguez v. Dep't of Veterans Affs., 8 F.4th 1290, 1299, 1301 (Fed. Cir. 2021); Steadman, 450 U.S. at 101, 102 (finding that the preponderance of the evidence "is the traditional standard in civil and administrative proceedings").  Only exceptional circumstances warrant a lower burden of proof, which are rare, not present here, and typically require specific statutory language. *See* Rodriguez, 8 F.4th at 1301.[17]  While a listing decision is an "informal agency action" where FLETF may apply a "reasonable cause to believe" standard (Ninestar Corp., 687 F.Supp.3d at 1332, 1333), a *removal decision* is a final, "formal agency action" that requires a "preponderance of evidence" as the

---

[17] The court in Ninestar Corp. appears to imply that a foreign entity's right to express statutory rights regarding burdens and standards of proof hinges on whether it has established minimum contacts to enjoy constitutional rights.  Ninestar Corp., 687 F. Supp. 3d 1334, fn. 21. Camel has established such contacts through its subsidiary, Camel Energy, and enjoys such constitutional rights. *See Supra*, Sec. (V)(D).

**PUBLIC VERSION**

minimum standard of proof. "The APA distinguishes between formal adjudications, which must follow a set of 'trial-type procedures,' including 'notice of 'the matters of fact and law asserted,' an opportunity for 'the submission and consideration of facts [and] arguments,' and an opportunity to submit 'proposed findings and conclusions' or 'exceptions,'' and informal adjudications, which 'do not include such elements.'" <u>Hicks v. Comm'r of Soc. Sec.</u>, 909 F.3d 786, 804 (6th Cir. 2018) (citation omitted). The Removal Decision fits the traits of a "formal adjudication."

Plaintiff received notice of the Listing Decision and proactively engaged with the FLETF to begin the removal process. Camel submitted facts, proposed findings and conclusions, arguments, and evidence to FLETF. FLETF considered the evidence and arguments, and asked questions about these submissions. Camel participated in a hearing with members of FLETF present. And, in its Removal Decision, FLETF indicated that this was a "final agency decision" and not appealable. *See* 5 U.S.C. §704; <u>Bennett</u>, 520 U.S. 154.

Compare this to a UFLPA listing decision, where none of the above elements are present. The Removal Decision goes well past a simple listing designation that lacks the accused entity's involvement. It involves a complete administrative adjudicative process where evidence and arguments are submitted, and a hearing is held. Additionally, the UFLPA does not specify a lower burden of proof for removal decisions. <u>Rodriguez,</u> 8 F.4th at 1301. All of these factors point to the conclusion that UFLPA removal decisions are final, "formal agency decisions" that require at least a "preponderance of evidence" standard, and FLETF erred by not applying the higher standard to its Removal Decision.

iii) <u>The UFLPA provides a higher standard for s removal decision</u>

The UFLPA provides a higher standard of proof for post-listing decisions like removal decisions. Under UFLPA §3(a), CBP may detain goods of listed entities by applying a "presumption" that such goods are "mined, produced, or manufactured" in whole or in part in

39

**PUBLIC VERSION**

XUAR using forced labor. Once CBP issues a UFLPA detention notice, then the IOR will have the opportunity to respond by submitting evidence to rebut CBP's presumption. UFLPA §3(c). If CBP finds by "clear and convincing evidence" that the IOR's submissions complied with CBP's guidance and the goods were not made with forced labor in XUAR, then CBP shall release the goods. UFLPA §3(b). Camel Energy has successfully rebutted CBP's presumption by "clear and convincing evidence" on multiple occasions. *See* AR000155-AR000156; AR000157-AR000160; AR002934. UFLPA §3's heightened standard suggests that Congress intended to raise the standard of proof for all post-listing actions, including removal decisions.

iv) <u>§307 points to a higher standard for UFLPA removal decisions</u>

In determining the appropriate standard, the court should not confine itself to only the statute but should analyze it "against the backdrop of existing law," which in the case of the UFLPA is §307. <u>Ninestar Corp.</u>, 687 F.Supp.3d 1333, 1361 (§307 and the UFLPA "do not operate independently of each other"). §307 enforcement begins with an initial CBP investigation of goods based on a "reason to believe" that the goods were made using forced labor. 19 CFR §12.42(a). Next, CBP issues a WRO based on its "reasonable but not conclusive" belief, which allows an embargo of the goods to take effect. 19 CFR §12.42(e). Finally, after the importing entity has an opportunity to submit evidence and arguments, CBP makes a formal determination based on a "preponderance of evidence" standard. 19 CFR §12.42(b) and (f).

While the court in <u>Ninestar Corp.</u> found that a UFLPA listing decision is more analogous to CBP's issuance of a WRO (<u>Ninestar Corp.</u>, 687 F.Supp.3d at 1333-1334), a UFLPA removal decision is closer to CBP's formal determination based on a "preponderance of evidence" after an entity has had an opportunity to submit arguments and evidence under §307. 19 CFR §12.42(b) and (f) *and compare* 88 Fed. Reg. at 50904 (Aug. 2, 2023). At the time of a UFLPA removal decision, the listed entity has already had an opportunity to submit arguments and evidence,

40

**PUBLIC VERSION**

FLETF has had a chance to question those submissions, and a closed hearing has been held. Further, §307 specifically enumerates that the initial investigation and WRO stages have a lower standard of proof that increases slightly at each stage, while the formal determination following submission and consideration of opposing evidence and arguments is based on a much higher "preponderance of evidence" standard.  19 CFR §12.42(b) and (f); Ninestar Corp., 687 F.Supp.3d 1333.  Nothing in the UFLPA expressly authorizes a lower standard of proof with respect to removal decisions, and removal decisions require the submission and consideration of opposing arguments and evidence.  88 Fed. Reg. at 50904 (Aug. 2, 2023).   Thus, removal decisions under the UFLPA should have a heightened standard of proof of at least a "preponderance of evidence."

> v)  A "Preponderance of Evidence" standard for UFLPA removal decisions does not conflict with Ninestar, §307 enforcement, or the purpose of the UFLPA

Finding that a "preponderance of evidence" standard is the appropriate standard of proof applicable to UFLPA removal decisions does not conflict with Ninestar Corp., §307, or the purpose and congressional intent in adopting the UFLPA.  Ninestar Corp. is clearly limited to UFLPA *listing decisions*, so finding that the UFLPA provides a higher standard for *removal decisions* does not contradict that holding.  Additionally, in settling on a "reasonable cause" standard for listing decisions, the court in Ninestar Corp. cited to cases where an agency simply listed an entity without any adjudication process or a specific statutory exception that allowed for a lower standard. Ninestar Corp., 687 F.Supp. 3d. at 1334, fn. 21 *citing* Kadi v. Geithner, 42 F.Supp.3d 1 (D.D.C. 2012) (reasonable belief standard upheld when the Office of Foreign Assets Control designated a party as a specially designated global terrorist) and 15 C.F.R. §744.11 (statute explicitly authorizing the BIS entity listings based on a reasonable cause to believe).  These cases are more like UFLPA *listing* decisions, and requiring a "preponderance" standard for removal decisions would not impact those cases either.

**PUBLIC VERSION**

Moreover, a "preponderance" standard for removal decisions still avoids the "illogical asymmetry" where the Government can more easily obtain a §307 embargo than one under the UFLPA. *See* <u>Ninestar Corp.</u>, 687 F.Supp.3d 1333. Listing decisions under the UFLPA, like WRO embargos, are still subject to a "reasonable cause" burden of proof and do not conflict with or otherwise prevent the application of the higher "preponderance" standard to a removal decision. This ensures "effective enforcement of [§307]" through the UFLPA listing decisions while affording the appropriate default standard of proof for removal decisions. *See* <u>Id</u>., at 1334.

Lastly, applying a higher "preponderance" standard does not conflict with the goals of the UFLPA or Congress's intent behind the UFLPA. The goals of the UFLPA include "effective enforcement" of §307 and "strengthen the prohibition against the importation of goods made with forced labor" in the XUAR. UFLPA §1(1). Representatives Georgy Meeks, Andy Barr, and Jim McGovern have all made statements indicating Congress's intent behind the UFLPA, namely to combat the lack of transparency by the Chinese government in XUAR and promote awareness for consumers. *See* 167 Cong. Rec. H7804-02 (Dec. 21, 2021) and 212 Cong. Rec. H7499 (Dec. 8, 2021). A "preponderance" standard does not conflict with these goals in two ways. First, the concern regarding FLETF's ability at the listing stage would not be impaired. FLETF would not be burdened to "rule out" a listed entity's "explanation for suspicious facts" at the listing stage, which comes later during the removal stage after an entity has been given a chance to make submissions. This still allows FLETF to use a "reasonable cause" standard at the listing stage to promote effective enforcement of §307, while also staying in line with the long tradition of a "preponderance" default standard of proof for final, formal agency actions.

**PUBLIC VERSION**

vi) <u>FLETF exceeded its authority because Camel does not meet the statutory criteria</u>

In addition to applying the wrong standard, FLETF exceeded its authority when it did not remove Camel because it is undisputed on the record that Camel did not transfer laborers "out of XUAR". UFLPA §2(d)(2)(B)(ii). There is no evidence that Camel transferred or recruited anyone from the Labor Transfer Program "out of XUAR," and importantly, FLETF's Removal Decision and the evidence in the CAR do not dispute otherwise. *See Supra*, Sec. V(A)(ii) and (B)(iv). Instead, the only accusations made here are with respect to recruitment to Camel's Xinjiang facilities. <u>Id</u>. On its face, Camel does not meet the plain requirements of the UFLPA. <u>Luokung Tech. Corp.</u>, 538 F.Supp.3d at 191 (D.D.C. 2021) (holding an agency exceeded its authority when it listed an entity without meeting the statutory criteria). As such, FLETF exceeded its authority in violation of the APA and the Removal Decision is unlawful. 5 U.S.C. §706(2)(C).

### D. FLETF's Failure to Disclose its Conflict of Interest and Other Actions During the Delisting Process Harmed Camel's Rights

Camel possesses Fifth Amendment due process rights because it has "minimum contacts" with the United States. *See* <u>Douglass v. Nippon Yusen Kabushiki Kaisha</u>, 46 F.4th 226, 232-233, 238 (5th Cir. 2022). Camel has established "minimum contacts" through its wholly-owned U.S. subsidiary, Camel Energy. Through Camel Energy, Camel has invested several millions of dollars in a sales and logistics center in Ann Arbor, Michigan, creating multiple local jobs in the area. In February 2022, Camel Energy, through Camel, opened a manufacturing facility in Battle Creek, Michigan, creating numerous local jobs. Camel, individually and through its U.S. subsidiaries, conducted over USD $100 million in systematic and continuous business in the U.S. market, including over USD $75 million in gross sales in 2022, although that has been drastically impacted today as a result of the Listing Decision. Camel's actions have made it an indispensable part of the US automotive supply chain, supporting US business and consumers nation-wide. Based on

**PUBLIC VERSION**

these facts, Camel has established "minimum contacts" and is entitled to Constitutional due process protections. Unfortunately, FLETF trampled on Camel's rights throughout the delisting process, causing its Removal Decision to be unlawful.  5 U.S.C. §§706(2)(B) and/or (D).

      i)   <u>FLETF failed to disclose and explain the conflict of interest with DHS PLCY Policy Adviser, Dr. Laura Murphy</u>

Dr. Laura Murphy is the lead author of the SHU Reports and at least one personalized "unpublished resource guide" regarding Uyghur naming conventions that FLETF admittedly relied on in its Listing and Removal Decisions. AR000014-AR000015; AR001678-AR001746; AR002950-AR002951.  Yet only three days after Camel submitted its Removal Petition, DHS PLCY hired Dr. Murphy as a "Policy Advisor." AR001290.  The person that manufactured and published the evidence against Camel was now the same person advising on the adjudication of Camel's Removal Petition.   When Camel asked FLETF about this clear conflict of interest (AR001290-AR001291), FLETF replied by only re-stating the same publicly available information of her appointment (AR001292).  FLETF did not state whether Dr. Murphy would be firewalled from the decision on Camel's Removal Petition and did not state what role Dr. Murphy would play, if any, in Camel's delisting process.  Troublingly, CAR shows that Dr. Murphy may have been deeply involved as evidenced by a personalized unpublished resource guide on Uyghur naming conventions that FLETF relied on in its conclusion that Camel participated in state-sponsored recruitment events involving Uyghur minorities.  AR000014, fn. 4.

Camel remains concerned that Dr. Murphy improperly influenced FLETF's Removal Decision and that FLETF gave undue weight to her participation, without considering that her previous work may prejudice her influence in the removal process. This certainly could have caused FLETF to ignore or discredit Camel's evidence that called into question the SHU Reports

**PUBLIC VERSION**

that she authored. FLETF has done nothing to deny or meaningfully address these very real concerns that harmed Camel's due process rights.

      ii)   <u>FLETF's actions show that the Government never intended to provide Camel a fair process</u>

Camel's due process rights were further harmed the minute FLETF issued the Listing Decision without *any* explanation. Plaintiff exhorted FLETF to provide an explanation as to the Listing Decision so that Camel could meaningfully participate in the delisting proceedings, but FLETF refused. Still, Plaintiff made the bold decision to submit its Removal Petition based only on its own investigation. This knowledge gap was FLETF's "original sin" as it forced Camel into a process without any real understanding of the evidence against it or the standards used to weigh such evidence. This put Camel at a significant disadvantage throughout the delisting process in violation of its right to due process. *See* <u>Royal Brush Mfg., Inc. v. United States</u>, 75 F.4th 1250, 1262 (Fed. Cir. 2023) (CBP denying plaintiff access to information the agency relied on for its final agency decision was a violation of plaintiff's due process rights). In no other legal proceeding in America is that considered due process.

It was not until May 28, 2025 (nearly two years after the Listing Decision and one year after the Removal Decision) that Camel finally learned of the basis of FLETF's Removal Decision only after filing for litigation and this Court ordering Defendants to produce the AR. ECF 11; *See* <u>Ninestar Corp.</u>, 687 F.Supp.3d 1308, at fn. 15 ("Requiring that the parties litigate a final agency decision in order to gain knowledge of and access to the agency's rationale wastes judicial resources and delays corrective agency action that would otherwise be addressed by the agency in the first instance"). This has ensured that FLETF's unfair knowledge advantage from the delisting process continues into litigation, as Plaintiff's counsel was unable to ask its own client questions concerning key evidence in this case.

PUBLIC VERSION

Moreover, FLETF's actions during the delisting process demonstrate that FLETF never intended it to be "fair" or support the goals of the UFLPA.  FLETF clearly intended to use the delisting process as a "fishing expedition" to obtain intelligence about Camel.  FLETF made this motivation clear in its FLETF Questions when it asked about completely irrelevant topics including: i) Camel's connections with Xinjiang Production and Construction Corp which is covered under UFLPA §2(d)(2)(B)(v) (AR001295, Question 1), ii) the construction of Camel's Xinjiang facilities (AR001303, Question 16), iii) security and data policies at Plaintiffs' Hubei facility nearly 7,500 miles away from XUAR (AR001304-AR001305, Questions 19 and 20), and iv) Camel's business confidential information concerning production, production capacity, and supply chain mapping in XUAR. (AR001305-AR001306, Questions 21, 22, and 24).  This is hardly a "reasonable inquiry" into Camel's Removal Petition. Van Trinh, 29 C.I.T. at 1074. Then, during the Apr. 2, 2024 "Listening Session," FLETF did not ask any questions or respond to Camel's requests and expressly stated in its "Meeting Protocols" it would not create a record or transcript of a hearing.  AR001638.  Only an agency wholly uninterested in transparency and adhering to proper procedure and due process behaves in such a way.

Such a "procedurally flawed process" combined with its lack of substantial evidence, *ultra vires* actions, and "inadequately explained decision" causes FLETF's Removal Decision to be unlawful.  Invenergy Renewables LLC v. United States, 476 F.Supp.3d 1323, 1353 (Ct. Int'l Trade 2020); 5 U.S.C. §§706(2)(A), (B), (C), and/or (D).

### E.  The Appropriate Remedy is to Vacate the Removal Decision, Remand, and Remove Camel from the UFLPA List

The default remedy in an APA case is to "vacate" an unlawful agency action.  United Steel v. Mine Safety & Health Admin., 925 F.3d 1279, 1287 (D.C. Cir. 2019); *see also* 5 U.S.C. §706. Remand without vacatur of an agency decision is only appropriate in exceptional cases where an

PUBLIC VERSION

agency is likely to remedy a deficiency on remand and vacatur would be especially disruptive. United Steel, 925 F.3d at 1287. In this case, vacatur of the Removal Decision prior to remand is appropriate. FLETF is unlikely to remedy the deficiencies in the Removal Decision without it, and vacatur will not impact any party beyond Plaintiff.

There is virtually no possibility that FLETF can remedy the defects identified in the Removal Decision without vacatur and strict instructions from this Court. Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs, 985 F.3d 1032, 1051 (D.C. Cir. 2021) (finding that remand is only appropriate where "there is a significant possibility that the agency may find an adequate explanation for its actions on remand."). FLETF predicated its allegations entirely on "mere speculation," its own assumptions, "clear errors of judgment," and "mistaken notions" of the evidence, and failed to provide any "sliver" of a reasoned explanation. FLETF could only arrive at its decision through application of the wrong standards and ignoring contradictory evidence on the record. It is highly unlikely that FLETF will be able to remedy such significant defects.

Vacatur would not be disruptive to any entity, as it only impacts Camel's goods and Camel's reputation and no one else. Remand without vacatur is only appropriate where the disruption of vacatur would significantly outweigh the "practical difficulties and regulatory uncertainty" that generally comes with it. Nat. Res. Def. Council v. Wheeler, 955 F.3d 68, 85 (D.C. Cir. 2020). There would be virtually no disruption in this case if the UFLPA embargo on Camel's goods were vacated, as the only goods impacted are Camel's products.

## VI.    CONCLUSION

For the reasons described herein, Plaintiff respectfully requests this Court grant this Motion, declare that Defendants acted in violation of the APA and its Removal Decision is unlawful, order that FLETF's Removal Decision be vacated and remanded to FLETF to re-

**PUBLIC VERSION**

consider Camel's Removal Petition in light of this Court's opinion, and immediately remove Camel from the UFLPA List.

                              Respectfully submitted,

                              */s/ Mark V. Heusel*
                              Mark V. Heusel
                              Jacob L. Clark
                              DICKINSON WRIGHT PLLC
                              350 S. Main Street, Suite 300
                              Ann Arbor, MI 48104
                              (734) 623-1908
                              *Attorneys for Plaintiff*

**DATE:**  September 29, 2025

**PUBLIC VERSION**

<u>**CERTIFICATION OF COMPLIANCE**</u>

I, Mark V. Heusel, a member at the law firm Dickinson Wright PLLC, who is the lead counsel and counsel of record on behalf of Plaintiff Camel Group Co. Ltd and is responsible for Plaintiff's Brief in Support of Rule 56.1 Motion for Judgment on the Agency Record, dated September 29, 2025, relying upon the word count feature of the word processing program used to prepare the brief, certify that this document complies with the word count limitation ordered by this Court in ECF 46, and contains 14,986 words including footnotes, headings, and quotations, and excluding those parts exempted by Standard Chambers Procedure 2(B)(1)(c).

*/s/ Mark V. Heusel*

MARK V. HEUSEL

# IN THE UNITED STATES
# COURT OF INTERNATIONAL TRADE

CAMEL GROUP CO., LTD.,

        *Plaintiff*,

v.

UNITED STATES OF AMERICA;
DEPARTMENT OF HOMELAND
SECURITY; UNITED STATES
CUSTOMS AND BORDER
PROTECTION; FORCED LABOR
ENFORCEMENT TASK FORCE;
ALEJANDRO MAYORKAS, *in his
official capacity as the Secretary of the
Department of Homeland Security*;
TROY A. MILLER, *in his official
capacity as the Senior Official Performing
the Duties of the Commissioner for
U.S. Customs and Border Protection*;
ROBERT SILVERS, *in his official capacity
as Under Secretary for Office of Strategy,
Policy, and Plans and Chair of the Forced
Labor Enforcement Task Force*,

        *Defendants*.

Case No.:  25-00022

Hon. Lisa W. Wang

---

## [PROPOSED] ORDER

Upon consideration of Plaintiff's Rule 56.1 Motion for Judgment on the Agency Record ("Motion") and the parties' subsequent briefings, it is here by **ORDERED** that Plaintiff's Motion is **GRANTED**.

**IT IS DECLARED** that FLETF's decision to deny Plaintiff's request for removal from the UFLPA List was unlawful, 5 U.S.C § 706; and it is

**ORDERED** that FLETF's decision to deny Plaintiff's UFLPA List Removal Request Petition is **VACATED** and **REMANDED** for further consideration consistent with this Court's Order; and

**PUBLIC VERSION**

**IT IS FURTHER ORDERED** that when reconsidering Plaintiff's Removal Petition, FLETF issue a decision and take any other actions consistent with the UFLPA and this Order to remove Plaintiff from the UFLPA List.

**THIS IS A FINAL ORDER AND JUDGMENT AND CLOSES THIS CASE.**

**SO ORDERED.**

_____
The Honorable Judge Lisa W. Wang
United States Court of International Trade

Dated:_____

# IN THE UNITED STATES
# COURT OF INTERNATIONAL TRADE

CAMEL GROUP CO., LTD.,

      *Plaintiff*,

v.

UNITED STATES OF AMERICA;
DEPARTMENT OF HOMELAND
SECURITY; UNITED STATES
CUSTOMS AND BORDER
PROTECTION; FORCED LABOR
ENFORCEMENT TASK FORCE;
ALEJANDRO MAYORKAS, *in his
official capacity as the Secretary of the
Department of Homeland Security*;
TROY A. MILLER, *in his official
capacity as the Senior Official Performing
the Duties of the Commissioner for
U.S. Customs and Border Protection*;
ROBERT SILVERS, *in his official capacity
as Under Secretary for Office of Strategy,
Policy, and Plans and Chair of the Forced
Labor Enforcement Task Force*,

      *Defendants*.

Case No.:  25-00022

Hon. Lisa W. Wang

---

## PLAINTIFF'S BRIEF IN SUPPORT OF RULE 56.1 MOTION FOR JUDGMENT ON THE AGENCY RECORD

## PUBLIC VERSION

# ATTACHMENT A

## PUBLIC ADMINISTRATIVE RECORD INDEX
## ECF 19, at pp. 4-10

**Camel Group v. U.S. – Administrative Record Index**

| | Document | Bates Number |
|---|---|---|
| 1. | U.S. Dep't of Homeland Sec., Off. of Strategy, Policy, & Plans, *Forced Labor Enforcement Task Force Standard Operating Procedures, Uyghur Forced Labor Prevention Act Entity List* (July 2022). | AR000001 - AR000009 |
| 2. | Memorandum from Robert Silvers, Under Sec'y of Homeland Sec., Off. of Strategy, Policy, and Plans, *Forced Labor Enforcement Task Force Denial of Camel Group Co., Ltd. Request for Removal the Uyghur Forced Labor Prevention Act Entity List* (September 4, 2024). | AR000010 - AR000016 |
| | **Attachment 1:** Forced Labor Enforcement Task Force, Member Agency Votes on Removal of Camel Group Co., Ltd. From the UFLPA Entity List. | AR000017 - AR000023 |
| | **Attachment 2:** Letter from Mark V. Heusel, Dickinson Wright PLLC, to Robert Silvers, Under Sec'y of Homeland Sec., Off. of Strategy, Policy, and Plans (November 7, 2023): *Camel Group Co. Ltd. UFLPA Entity List Removal Request Petition* (with attachments). | AR000024 - AR000044 |
| | • *Exhibit 1* – Email from Jacob L. Clark, Dickinson Wright PLLC, to Cynthia Echeverria, U.S. Dep't of Homeland Sec., Off. of Strategy, Policy, & Plans, Director of Trade Policy, Office of Trade and Economic Security via FLETF's public contact address (August 3, 2023). | AR000045 - AR000046 |
| | • *Exhibit 2* – Email from Mark V. Heusel to ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, U.S. Customs & Border Prot. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ (August 8-9, 2023). | AR000047 - AR000050 |
| | • *Exhibit 3* – Letter from Mark V. Heusel, Dickinson Wright PLLC, to U.S. Dep't of Homeland Sec., Privacy Off. (August 18, 2023): *Camel Group Co. Ltd. Freedom of Information Act Request* (with attachments). | AR000051 - AR000062 |
| | • *Exhibit 4* – Email from Jacob L. Clark, Dickinson Wright PLLC, to Cynthia Echeverria, U.S. Dep't of Homeland Sec., Off. of Strategy, Policy, & Plans, Director of Trade Policy, Office of Trade and Economic Security via FLETF's public contact address (with attachments) (August 30, 2023). | AR000063 - AR000113 |
| | • Exhibit 5 – Email from Cynthia Echeverria, U.S. Dep't of Homeland Sec., Off. of Strategy, Policy, & Plans, Director of Trade Policy, Office of Trade and Economic Security via FLETF's public contact address to Jacob Clark, Dickinson Wright PLLC (September 7, 2023). | AR000114 - AR000117 |
| | • *Exhibit 6* – Camel Xinjiang Renewable Co. Ltd. Qichacha Corporate Record. | AR000118 - AR000121 |
| | • *Exhibit 7* – Camel Xinjiang Renewable Co. Ltd. Business License. | AR000122 - AR000125 |
| | • *Exhibit 8* – PRC Fire Prevention Law. | AR000126 - AR000137 |

| | | |
|---|---|---|
| • *Exhibit 9* – Camel Xinjiang Renewable Co. Ltd. Fire Inspection Certificate. | AR000138 - AR000142 | |
| • *Exhibit 10* – Camel Xinjiang Battery Co. Ltd. Qichacha Corporate Record. | AR000143 - AR000146 | |
| • *Exhibit 11* – Camel Xinjiang Battery Co. Ltd. Business License. | AR000147 - AR000150 | |
| • *Exhibit 12* – Camel Xinjiang Battery Co. Ltd. Fire Inspection Certificate. | AR000151 - AR000154 | |
| • *Exhibit 13* – Letter from U.S. Customs & Border Prot. to Camel Energy, Inc. (July 14, 2023). | AR000155 - AR000156 | |
| • *Exhibit 14* – Email from U.S. Customs & Border Prot. to Mark V. Heusel, Dickinson Wright PLLC (September 13, 2023): *UFLPA Response Package* ▮▮▮▮▮▮▮▮. | AR000157 - AR000160 | |
| • *Exhibit 15* – Letter from Mark V. Heusel, Dickinson Wright PLLC, to U.S. Customs & Border Prot. (with attachments) (May 4, 2023). | AR000161 - AR001004 | |
| • *Exhibit 16* – Timeline of Interactions Between Camel Group, Camel Energy and CBP With Respect to UFLPA-Related Detentions. | AR001005 - AR001006 | |
| • *Exhibit 17* – Laura T. Murphy, Kendyl Salcito, & Nyrola Elimä, "Financing & Genocide: Development Finance and the Crisis in the Uyghur Region," Sheffield Hallam University Helena Kennedy Centre for International Justice, Atlantic Council, DFRLab, and NomoGaia February 2022, https://www.shu.ac.uk/helena-kennedy-centre-international-justice/research-and-projects/all-projects/financing-and-genocide. | AR001007 - AR001076 | |
| • *Exhibit 18* – Regulations Associated with the Three-year Plan for the Autonomous Prefecture to Promote the Organized Transfer and Employment of Urban and Rural Surplus Labor Forces in Kashgar, Hotan Region (2017-2019) (《自治州推进喀什和田地区城乡富余劳动力有组织转移就业三年规划(2017-2019年)》) | AR001077 - AR001084 | |
| • *Exhibit 19* – Toksun Public Employment Service Center (托克逊就业服务中心) (formerly Public Employment Bureau of Toksun County), "Toksun County holds the handover ceremony for the urban and rural surplus labor enterprises in Kashgar and Hotan areas" (托克逊县举行喀什、和田地区城乡富余劳动力企业上岗交接仪式), Toksun Public Employment Service Center Official Account, WeChat (Tencent) (July 10, 2017), https://archive.ph/nC4Xt; and | AR001085 - AR001090 | |

| | | |
|---|---|---|
| | https://mp.weixin.qq.com/s?src=11&timestamp=1626799213&ver=3202&signature=UdXHio*A4s-X8WUB4*k5KWO4TT-d2*ZwQoR4TlkWSmWPLsrYT8sexrkYontyqNU*rmZoZmpE1Oukuy3Dsw*8RwS2-YJfLWl7dKK-kx5sVFDBrPoeruSl7PyNAcI3qvic&new=1. | |
| | • *Exhibit 20* – Laura Murphy, et al., "Driving Force: Automotive Supply Chains and Forced Labor in the Uyghur Region," Sheffield Hallam University Helena Kennedy Centre for International Justice, NomoGia, December 2022, available at https://www.shu.ac.uk/helena-kennedy-centre-international-justice/research-and-projects/all-projects/driving-force. | AR001091 - AR001169 |
| | • *Exhibit 21* – Sheffield Hallam University Helena Kennedy Centre for International Justice, "Products Made with Forced Labor in the Uyghur Region," Evidence Briefs, Issue Brief No. 3, (May 2023), https://www.shu.ac.uk/helena-kennedy-centre-international-justice/research-and-projects/all-projects/evidence-briefs | AR001170 - AR001179 |
| | • *Exhibit 22* – Declaration of ▮▮▮▮▮. | AR001180 - AR001188 |
| | • *Exhibit 23* – August 29, 2023 Letter from Toksun County Bureau of Social Security and Human Resources. | AR001189 - AR001193 |
| | • *Exhibit 24* – Yaxin Net (亚心网), "Toksun County, Xinjiang holds a handover ceremony for surplus labor entities" (新疆托克逊县举行富余劳动力企业上岗交接仪式), Sina News Network (新浪新闻), July 12, 2017, available at https://news.sina.com.cn/o/2017-07-12/doc-ifyhwehx572486.shtml. | AR001194 - AR001199 |
| | • *Exhibit 25* – Declaration of ▮▮▮. | AR001200 - AR001209 |
| | • *Exhibit 26* – Declaration of ▮▮▮. | AR001210 - AR001213 |
| | • *Exhibit 27* – Declaration of ▮▮▮. | AR001214 - AR001220 |
| | • *Exhibit 28* – Declaration of ▮▮▮. | AR001221 - AR001227 |
| | • *Exhibit 29* – Camel Group Co. Ltd. Employee List. | AR001228 - AR001245 |

| | | |
|---|---|---|
| • *Exhibit 30* – Camel Xinjiang Renewable Co. Ltd. and Camel Xinjiang Battery Co. Ltd. Employee Lists. | AR001246 - AR001262 | |
| • *Exhibit 31* – Camel Group Co. Ltd. Management Regulations on Supplier Social Responsibility and Sustainable Development. | AR001263 - AR001279 | |
| • Exhibit List. | AR001280 - AR001283 | |
| **Attachment 3:** Forced Labor Enforcement Task Force, Questions to Camel Group Co. Ltd. (December 14, 2023). | AR001284 - AR001287 | |
| **Attachment 4:** Letter from Mark V. Heusel, Dickinson Wright PLLC, to Robert Silvers, Under Sec'y of Homeland Sec., Off. of Strategy, Policy, and Plans (December 21, 2023): *Camel Group Co. Ltd. Removal Request Petition Reply.* | AR001288 - AR001291 | |
| **Attachment 5:** Email from Cynthia Echeverria, U.S. Dep't of Homeland Sec., Off. of Strategy, Policy, & Plans, Director of Trade Policy, Office of Trade and Economic Security to Mark V. Heusel and Jacob L. Clark, Dickinson Wright PLLC (January 31, 2024). | AR001292 | |
| **Attachment 6:** Letter from Mark V. Heusel, Dickinson Wright PLLC, to Robert Silvers, Under Sec'y of Homeland Sec., Off. of Strategy, Policy, and Plans (March 1, 2024): *Camel Group Co. Ltd. Responses to FLETF Questions* (with attachments). | AR001293 - AR001308 | |
| • *Attachment 1* – August 2, 2023 Camel Group Battery Trading Co. Ltd. Explanatory Statement Regarding Camel Group Co. Ltd. Being Listed by the U.S. Department of Homeland Security | AR001309 - AR001313 | |
| • *Attachment 2* – August 5, 2023 Camel Group Co. Ltd. Notice Regarding Company Being Listed by the U.S. Department of Homeland Security" | AR001314 - AR001317 | |
| • *Attachment 3* – August 7, 2023 Camel Group Battery Trading Co., Ltd. Customer Letter | AR001318 - AR001321 | |
| • *Attachment 4* – August 24, 2023 Camel Group Battery Trading Co., Ltd. Declaration of Trade Compliance | AR001322 - AR001324 | |
| • *Attachment 5* – Camel Group Co. Ltd. UFLPA List Removal Request Petition Exhibit 15 Sample UFLPA Response Package submitted by Camel Energy, Inc. to CBP Excerpt of Pages 417-418 | AR001325 - AR001327 | |
| • *Attachment 6* – Camel UFLPA Response Package ▮▮▮▮▮▮ | AR001328 - AR001610 | |
| • *Attachment 7* – Camel Group ▮▮▮▮▮ Second Declaration | AR001611 - AR001613 | |

| | |
|---|---|
| • *Attachment 8* – Camel Group ▮▮▮▮▮ Second Declaration | AR001614 - AR001617 |
| • *Attachment 9* – Supplement to Exhibit 30 – Supplement to Employee Lists for Camel Xinjiang Renewable Co. Ltd. and Camel Xinjiang Battery Co. Ltd. | AR001618 - AR001631 |
| • *Attachment 10* – Production Category of Key Positions for Camel Xinjiang Renewable Co. Ltd. and Camel Xinjiang Battery Co. Ltd. | AR001632 - AR001636 |
| • Attachment List. | AR001637 |
| **Attachment 7:** Forced Labor Enforcement Task Force, Meeting on Camel Group Co. Ltd. Request to be Removed from the Uyghur Forced Labor Prevention Act Entity List: Protocols. | AR001638 |
| **Attachment 8:** Letter from Mark V. Heusel, Dickinson Wright PLLC, to Robert Silvers, Under Sec'y of Homeland Sec., Off. of Strategy, Policy, and Plans (April 5, 2024): *Camel Group Co. Ltd. – FLETF April 2, 2024 Removal Petition Request Meeting Follow Up.* | AR001639 - AR001640 |
| **Attachment 9:** Letter from Mark V. Heusel, Dickinson Wright PLLC, to Robert Silvers, Under Sec'y of Homeland Sec., Off. of Strategy, Policy, and Plans (May 16, 2024): *Concerns Regarding Camel Group Co. Ltd.'s UFLPA Entity List Removal Request Petition Process.* | AR001641 - AR001642 |
| **Attachment 10:** Forced Labor Enforcement Task Force Response to Camel Group (May 24, 2024) | AR001643 |
| **Attachment 11:** Uyghur Forced Labor Prevention Act (UFLPA) Entity List Package 23-004 from U.S. Dep't of Homeland Sec. to Forced Labor Enforcement Task Force. | AR001644 - AR001650 |
| • Memorandum from Robert Silvers, Under Sec'y of Homeland Sec., Off. of Strategy, Policy, and Plans, *Forced Labor Enforcement Task Force Addition of Camel Group Co., Ltd. to the Uyghur Forced Labor Prevention Act Entity List* (July 26, 2023) | AR001651 - AR001652 |
| • Forced Labor Enforcement Task Force, Member Agency Votes on Addition of Camel Group Co., Ltd. to the UFLPA Entity List. | AR001653 - AR001659 |
| • Camel Energy U.S. website, https://www.camelenergyus.com (April 4, 2023). | AR001660 - AR001673 |
| • Attachment A (original): Camel Group., Ltd. website, https://www.chinacamel.com/ (last visited April 4, 2023). | AR001674 - AR001675 |
| • Attachment A (English translation): Camel Group., Ltd. website, https://www.chinacamel.com/ (last visited April 4, 2023). | AR001676 - AR001677 |
| • Attachment B: Laura T. Murphy et. al., Financing & Genocide, Development Finance and the Crisis in the Uyghur Region, The Atlantic Council (February 2022), https://www.atlanticcouncil.org/wp-content/uploads/2022/02/Financing__Genocide.pdf. | AR001678 - AR001746 |

| | | |
|---|---|---|
| | • Attachment C: "Camel Group" (Sponsor/Cost/Location tab), IFC Project Information & Data Portal, Online; and "Camel Group" (IFC-41128)," https://disclosures.ifc.org/project-detail/SII/41128/camelgroup. (last visited March 23, 2023.) | AR001747 - AR001750 |
| | • Attachment D (original): ███████████████████████████████████████████████████ (last visited April 4, 2023) | AR001751 - AR001761 |
| | • Attachment D (English translation): ███████████████████████████████████████████████████ (last visited April 4, 2023). | AR001762 - AR001776 |
| | • Attachment E: Stanley Toops, *Spatial Results of the 2010 Census in Xinjiang, Asia Dialogue*, University of Nottingham's Asia Research Institute (March 7, 2016), https://theasiadialogue.com/2016/03/07/spatial-results-of-the-2010-census-in-xinjiang (last visited May 4, 2023). | AR001777 - AR001784 |
| | • Attachment F: ████████████████████████████████████ | AR001785 - AR002764 |
| | • Attachments G (original): Li Neng, "Toksun County held a handover ceremony for enterprises with surplus labor in urban and rural areas in Kashgar and Hotan, Weixin," July 10, 2017, https://archive.ph/nC4Xt. | AR002765 - AR002773 |
| | • Attachment G (English translation) Li Neng, "Toksun County held a handover ceremony for enterprises with surplus labor in urban and rural areas in Kashgar and Hotan, Weixin," July 10, 2017, https://archive.ph/nC4Xt. | AR002774 - AR002783 |
| | • Attachment H: ██████████████████████████████████████ | AR002784 - AR002791 |
| | • Attachment I: International Finance Corporation, World Bank Group, "Performance Standard 7," https://www.ifc.org/wps/wcm/connect/topics_ext_content/ifc_external_corporate_site/sustainability-at-ifc/policiesstandards/performance-standards/ps7 (last visited May 5, 2023). | AR002792 - AR002865 |

| | | |
|---|---|---|
| | • Attachment J: U.S. Dep't of Homeland Sec., Off. of Strategy, Policy, & Plans, *Strategy to Prevent the Importation of Goods Mined, Produced, or Manufactured with Forced Labor in the People's Republic of China* (June 17, 2022), https://www.dhs.gov/uflpa-strategy. | AR002866 - AR002933 |
| | **Attachment 12:** Memorandum from U.S. Customs & Border Prot., Note to File on Camel Energy Entry (May 3, 2024). | AR002934 |
| | **Attachment 13:** ████████████████ (October 23, 2017). | AR002935 - AR002941 |
| | **Attachment 14:** ████████████████ (March 4, 2023). | AR002942 - AR002949 |
| | **Attachment 15:** Murphy, L. (2023). Chinese Transliteration of Uyghur (And Other Ethnic Minority) Names [Unpublished resource guide]. Professor of Human Rights and Contemporary Slavery, Helena Kennedy Centre for International Justice, Sheffield Hallam University. | AR002950 - AR002951 |
| | **Attachment 16:** ████████████████ (June 9, 2024). | AR002952 - AR002967 |
| | **Attachment 17:** ████████████████ | AR002968 - AR002976 |
| | **Attachment 18:** Letter from U.S. Dep't of Homeland Sec., Off. of Strategy, Policy, & Plans to Mark V. Heusel, Dickinson Wright PLLC (July 9, 2024): *The Forced Labor Enforcement Task Force's Decision Regarding Camel Group Co., Ltd's Request for Removal from the Uyghur Forced Labor Prevention Act Entity List.* | AR002977 - AR002979 |
| 3. | Memorandum from U.S. Dep't of Homeland Sec., Off. of Strategy, Policy, & Plans (July 26, 2024): *Memorandum for Forced Labor Enforcement Task Force Paper Vote on Removal Request RR23-003.* | AR002980 - AR002987 |